**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**SECURITIES AND EXCHANGE COMMISSION,**

      **Plaintiff,**

**v.**

**SHANNON WESTHEAD,**
**ALEC VAGNOZZI,**
**PISCES INCOME FUND, LLC,**
**PISCES INCOME FUND PARALLEL, LLC,**
**ALBERT VAGNOZZI,**
**CAPRICORN INCOME FUND I, LLC,**
**CAPRICORN INCOME FUND PARALLEL, LLC,**
**MICHAEL TIERNEY,**
**MERCHANT SERVICES INCOME FUND, LLC,**
**And MERCHANT SERVICES**
**INCOME FUND PARALLEL, LLC,**

      **Defendants.**

_____

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") alleges:

**I. INTRODUCTION**

1.    This case concerns the unregistered Complete Business Solutions Group ("CBSG") securities offering, which raised more than $500 million from investors nationwide through a network of so-called "Agent Fund Managers" who operated their own securities offerings in an orchestrated effort to funnel investor money to CBSG in exchange for CBSG promissory notes.

2.    Defendants Shannon Westhead ("Westhead"), Alec Vagnozzi, Albert Vagnozzi, and Michael Tierney ("Tierney") were Agent Fund Managers until July 2020, when the SEC filed an enforcement action against CBSG and others for violating the registration and anti-fraud

provisions of the federal securities laws, resulting in a Temporary Restraining Order and the appointment of a Receiver over CBSG.

3.      Specifically, from no later than September 2019 through at least March 2020, Defendants Westhead and Alec Vagnozzi operated the Agent Fund Pisces Income Fund, LLC ("Pisces"), which they formed for the purpose of raising investor money for the unregistered CBSG offering. Through Pisces, Westhead and Alec Vagnozzi raised more than $15 million for CBSG through the offer and sale of Pisces promissory notes to at least 80 investors, and then funneled the investors' money to CBSG for the purchase of CBSG promissory notes issued to Pisces.

4.      Similarly, from no later than May 2018 through at least March 2020, Defendant Albert Vagnozzi operated the Agent Fund Capricorn Income Fund I, LLC ("Capricorn"), which Albert Vagnozzi formed for the purpose of raising investor funds for the unregistered CBSG offering.  Through Capricorn, Albert Vagnozzi raised more than $18 million from at least 110 investors and then funneled the investors' money to CBSG for the purchase of CBSG promissory notes issued to Capricorn.

5.      Likewise, from no later than January 2019 through at least March 2020, Defendant Tierney Tierney operated Merchant Services Income Fund, LLC ("MSI"), which Tierney formed for the purpose of raising investor funds for the unregistered CBSG offering.  Through MSI, Tierney raised more than $32 million from at least 70 investors and then funneled the investors' money to CBSG for the purchase of CBSG promissory notes issued to MSI.

6.      In exchange for raising investor money in the unregistered CBSG offering, CBSG compensated the Defendants by paying them transaction-based compensation based on a percentage of every dollar the Defendants funneled to CBSG for the purchase of CBSG notes.

7.      To lure investors, Defendants made a series of misrepresentations and omissions to investors, including touting CBSG's success while omitting to disclose the criminal record of

CBSG's principal, Joseph LaForte, who had two felony convictions, and failing to disclose regulatory actions against CBSG by Pennsylvania, Texas, and New Jersey state securities regulators.

8.      In April 2020, Westhead, Alec Vagnozzi, Albert Vagnozzi, and Tierney formed new Agent Funds.  Specifically, Westhead and Alec Vagnozzi formed Defendant Pisces Income Fund Parallel, LLC ("Pisces Parallel"), Albert Vagnozzi formed Defendant Capricorn Income Fund Parallel ("Capricorn Parallel"), and Tierney formed Defendant Merchant Services Income Fund Parallel, LLC ("MSI Parallel") (collectively, the "Parallel Agent Funds").

9.      In March 2020, Westhead, Alec Vagnozzi, Albert Vagnozzi, and Tierney notified investors that because of the Covid-19 pandemic, CBSG would default on the notes CBSG had issued to the Agent Funds.  Westhead, Alec Vagnozzi, Albert Vagnozzi, and Tierney offered their existing investors promissory notes issued by the Parallel Agent Funds, which would replace the promissory notes Pisces, Capricorn, and MSI had issued to investors. Under the Parallel Agent Funds' notes, investors received lower investment returns.  Nearly all investors participated in the Parallel Agent Fund offerings.

10.     As a result of the conduct alleged in the Complaint, all Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c)]; and Defendants Westhead, Alec Vagnozzi, Albert Vagnozzi, and Tierney also violated Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240 10b-5], and Section 15(a) of the Exchange Act [15 USC  § 78q(a)].

## II. DEFENDANTS AND RELEVANT ENTITY

### A. Defendants

11.     **Westhead**, age 29, is a resident of Medford, New Jersey.  From no later than July 2017 until June 2020, Westhead was an executive assistant at A Better Financial Plan and, from September 2019 until at least March 2020, Westhead co-owned and co-managed Pisces with Alec Vagnozzi.  Westhead has never been registered with the Commission in any capacity.

12.     **Alec Vagnozzi**, age 27, resides in Collegeville, Pennsylvania.  From September 2019 until at least March 2020, he co-owned and co-managed Pisces with Westhead.  Alec Vagnozzi held a series 65 license that expired in November 2021.

13.     **Pisces** is a Delaware Limited Liability Company formed in September 2019 and located in King of Prussia, Pennsylvania.  Westhead and Alec Vagnozzi co-owned and co-managed Pisces at all times.  Westhead and Alec Vagnozzi formed Pisces for the purpose of raising funds from investors for the purchase of CBSG notes in the unregistered CBSG offering.  Pisces has never been registered with the Commission in any capacity.

14.     **Pisces Parallel** is a Delaware Limited Liability Company formed in May 2020 and located in Collegeville, Pennsylvania. Westhead and Alec Vagnozzi owned and managed Pisces Parallel.  Westhead and Alec Vagnozzi formed Pisces Parallel for the purpose of offering Pisces investors promissory notes in Pisces Parallel and obtaining new CBSG notes in the unregistered CBSG offering.  In April 2020, Pisces Parallel offered exchange notes to the Pisces investors, offering a lower interest rate and longer maturity period.  Pisces Parallel has never been registered with the Commission in any capacity.

15.     **Albert Vagnozzi**, age 56, resides in Collegeville, Pennsylvania.  From May 2018 through present, Albert Vagnozzi has co-owned and managed Capricorn.  Albert Vagnozzi holds

Series 7 and 66 licenses and was associated with two Commission-registered broker-dealers from June 2013 to October 2014.  He is currently associated with investment advisory firm.

16.     **Capricorn** is a Delaware Limited Liability Company formed in May 2018 and located in Media, Pennsylvania.  Albert Vagnozzi co-owned and co-managed Capricorn, and formed Capricorn for the purpose of raising funds from investors for the purchase of CBSG notes in the unregistered CBSG offering.  Capricorn has never been registered with the Commission in any capacity.

17.     **Capricorn Parallel** is a Delaware Limited Liability Company formed in May 2020 and located in Media, Pennsylvania. Albert Vagnozzi co-owned and co-managed Capricorn Parallel.  Albert Vagnozzi formed Pisces Parallel for the purpose of offering Capricorn investors promissory notes in Capricorn Parallel and obtaining new CBSG notes in the unregistered CBSG offering. Capricorn Parallel has never been registered with the Commission in any capacity.

18.     **Tierney**, age 40 resides in Southampton, Pennsylvania.  From 2019 through present, he has managed MSI.  Tierney held Series 7, 63, and 65 licenses that are no longer active, and was associated with a Commission-registered broker-dealer from December 2013 to October 2016. Tierney has not been registered in any capacity with the Commission since at least November 2016

19.     **MSI fund** is a Delaware Limited Liability Company formed in June 2018 and located in King of Prussia, Pennsylvania.  Tierney owned and managed MSI.  Tierney formed MSI for the purpose of raising funds from investors for the purchase of CBSG notes in the unregistered CBSG offering.  MSI has never been registered with the Commission in any capacity.

20.     **MSI Parallel** is a Delaware Limited Liability Company formed in May 2020 and located in Richboro, Pennsylvania. Tierney owned and managed MSI Parallel.  Tierney formed MSI Parallel for the purpose of offering MSI investors promissory notes in MSI Parallel and

obtaining new CBSG notes in the unregistered CBSG offering.  MSI Parallel has never been registered with the Commission in any capacity.

## B.  <u>Relevant Entity</u>

21.   **CBSG** is a Delaware company formed in October 2011 that was in the business of making short-term loans, or what CBSG called "merchant cash advances," to small businesses. CBSG was headquartered in Palm Beach Gardens, Florida beginning no later than 2017.  On July 31, 2020, the Commission filed an enforcement action against CBSG for violating the registration and anti-fraud provisions of the federal securities laws, resulting in a Temporary Restraining Order and the appointment of a Receiver. *SEC v. Complete Business Solutions Group, et al.,* No. 9:20-cv-81205 (S.D. Fla. 2020) (the "CBSG Action"). CBSG remains in a Receivership.

22.    In 2018, the Commonwealth of Pennsylvania, acting through the Department of Banking and Securities, Bureau of Securities Compliance and Examinations ("Bureau"), conducted an investigation of certain securities-related activities of Par Funding. Based on the results of its investigation, the Bureau concluded that Par Funding violated the Pennsylvania Securities Act of 1972, 70 P .S. § 1-301.  On November 28, 2018, Par Funding consented to entry of an Order by the Pennsylvania Department of Banking and Securities imposing a $499,000 administrative assessment for violations of the Pennsylvania Securities Act through the use of an unregistered agent to offer and sell Par Funding promissory notes in Pennsylvania. *Pennsylvania Dep't of Banking and Securities v. Complete Business Solutions Group, Inc. d/b/a Par Funding* (18-0098-SEC-CAO) (the "Pennsylvania Regulatory Action").

23.    On December 27, 2018, the New Jersey Bureau of Securities issued a Cease and Desist Order against CBSG, based on CBSG's sale of unregistered securities in New Jersey and use of unregistered agents, in violation of the New Jersey securities laws. *In re the Matter of*

*Complete Business Solutions Group, Inc. and Complete Business Solutions Group, Inc. d/b/a Par Funding* (the "New Jersey Regulatory Action").

24.     In February 2020, the Texas State Securities Board issued an Emergency Cease and Desist Order against CBSG and others, alleging fraud and registration violations. *In the Matter of Senior Asset Protection, Inc. dba Encore Financial Solutions, Merchant Growth & Income Funding, LLC, ABetterFinancialPlan.com, LLC aka ABetterFinancialPlan, Complete Business Solutions Group, Inc. dba Par Funding, Gary Neal Beasley and Perry Abbonizio* (ENF-CDO-20-1798) (the "Texas Regulatory Action").  The Texas Regulatory Action alleged that all of the respondents engaged in fraud based on their failure to disclose to investors the Pennsylvania and New Jersey Orders against CBSG and court actions filed against CBSG based on its lending practices.

25.     In May 2023, an indictment in the Eastern District of Pennsylvania was unsealed against CBSG and its principals 26.   Joseph LaForte, a/k/a Joe Mack, a/k/a Joe Macki, a/k/a Joe McElhone ("LaForte"), Lisa McElhone, Jose Cole Barleta, and James LaForte, charging CBSG and its principals with participating in a conspiracy to commit wire fraud and securities fraud in connection with funds that were raised from investors in CBSG and its affiliates (the "2023 Criminal Case").  The 2023 Criminal Case remains pending.

26.     LaForteis currently incarcerated in Philadelphia, Pennsylvania.  LaForte co-founded CBSG with his spouse, Lisa McElhone, and used the aliases Joe Mack, Joe Macki, and Joe McElhone to conceal his prior criminal convictions.  Throughout the operation of CBSG, LaForte claimed to be the owner of CBSG and ran the day-to-day operations. LaForte acted as the *de facto* CEO of CBSG and was introduced to some investors as CBSG's President.  Throughout the existence of CBSG, until July 2020, La Forte also served as Par Funding's Director of Sales through his employment with Recruiting and Marketing Resources.

27.     On October 4, 2006, LaForte was convicted of state charges in New York for grand larceny and money laundering, and on November 8, 2007 he was sentenced to three to ten years in prison and to pay restitution in the amount of $14.1 million.

28.     In 2009, LaForte pled guilty to federal criminal charges in the District of New Jersey for conspiracy to operate an illegal gambling business. He was released from jail in February 2011 and founded Par Funding with his wife, Lisa McElhone, shortly thereafter while on supervised release.

29.     On August 2020, La Forte was charged in the Eastern District of Pennsylvania with possession of a firearm and ammunition by a convicted felon. This case remains pending.

30.     In the May 2023 Criminal Case, La Forte is charged with conspiracy to commit wire fraud and securities fraud in connection with CBSG, including concealing La Forte's true role as the person operating CBSG and his significant criminal history from investors, and conspiring to participate in the extortionate collection of credit, defrauding the Commonwealth of Pennsylvania out of approximately $1.2 million of state taxes, committing perjury during depositions in federal lawsuits against CBSG, and engaging in obstruction of justice, witness tampering, and retaliation in connection with the February 2023 physical assault of counsel for CBSG's Receiver. This case is pending trial.

### III.  JURISDICTION AND VENUE

31.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 21(d), 21(e), and Section 27 of the Exchange Act[15 U.S.C. §§ 78u(d), 78u(e), and 78aa].  This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because the Defendants engaged in acts and transactions in the Southern District of Florida that constitute violations of the Securities Act and the Exchange Act.  The Defendants participated in

the unregistered CBSG securities offering, and CBSG's sole office was located in in the Southern District of Florida. The Defendants funneled investor money to CBSG's bank accounts maintained by banks located in in the Southern District of Florida for the purchase of CBSG notes in the unregistered CBSG offering.  Further, Albert Vagnozzi, Capricorn, Capricorn Parallel, Tierney, MSI, and MSI Parallel offered promissory notes to investors located in in the Southern District of Florida.

32.     In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV.  **THE DEFENDANTS' VIOLATIVE CONDUCT**

### A.  **The Unregistered CBSG Securities Offering**

33.     From no later than August 1, 2012 until July 2020, CBSG was in the business of funding short-term loans to small-sized businesses, which CBSG refers to as "merchant cash advances" ("Loans" or "MCAs").

34.     During that same time period, CBSG offered and sold securities in the form of promissory notes through an unregistered securities offering for which no registrations exemption applied.

35.     From no later than August 1, 2012 until July 7, 2020, CBSG raised in excess of $500 million from investors located nationwide through the offer and sale of promissory notes.

36.     To solicit and raise money from investors, CBSG utilized a network of individuals and investment funds located nationwide.

37.     Throughout the duration of its offering, CBSG engaged in the general solicitation of investors.

38.     In 2018, the Commonwealth of Pennsylvania, acting through the Department of Banking and Securities, Bureau of Securities Compliance and Examinations ("Bureau"), conducted an investigation of certain securities-related activities of CBSG.

39.     After investigation, the Bureau concluded that CBSG violated the Pennsylvania Securities Act of 1972, 70 P.S. § 1-301 ("Pennsylvania Securities Act").

40.     On November 28, 2018, CBSG consented to entry of an Order by the Pennsylvania Department of Banking and Securities in the Pennsylvania Regulatory Action.

41.     The Order imposed a $499,000 administrative assessment for violations of the Pennsylvania Securities Act through the use of an unregistered agent to offer and sell CBSG promissory notes in Pennsylvania.

42.     In the Consent Order, executed by Joseph Cole Barleta on behalf of CBSG, CBSG agreed that it would sell CBSG notes only to investors who were accredited and that as of February 2018, CBSG would no longer pay any compensation to any person in connection with CBSG's sale of its promissory notes.

43.     To conceal its practice of compensating agents in connection with the offer and sale of CBSG promissory notes, CBSG began having it sales agents create their own funds ("Agent Funds") to raise money for the unregistered CBSG offering.

44.     From no later than January 2019 through at least March 2020, CBSG raised new investor money for the purchase of CBSG promissory notes in the unregistered CBSG offering, by utilizing more than 35 Agent Funds located nationwide.

45.     Through this orchestrated effort, the Agent Funds, including Pisces, Capricorn, and MSI, issued their own promissory notes to investors and then pooled and funneled the investor money to CBSG twice per month in exchange for promissory notes issued by CBSG to the Agent Fund that had funneled the investor money to CBSG.

46.     CBSG compensated the Agent Funds (including Pisces, Capricorn, and MSI) and their managers (including Westhead, Alec Vagnozzi, Albert Vagnozzi, and Tierney) by issuing notes to the Agent Funds that provided higher interest returns than the notes the Agent Fund notes provided to investors.

47.     The "spread" between the CBSG interest rate paid to the Agent Funds and the interest rate the Agent Funds then passed down to their investors was the compensation CBSG paid to the Agent Funds and their Managers in exchange for raising investor money in the unregistered CBSG offering.

48.     The Agent Funds, including Pisces, Capricorn, MSI, Pisces Parallel, Capricorn Parallel, and MSI Parallel, were to use the balance of the funds received from CBSG to pay the individual investors their investment returns under the Pisces, Capricorn, MSI, Pisces Parallel, Capricorn Parallel, and MSI Parallel notes.

49.     No registration statement was filed with the Commission or was in effect at the time of the CBSG offering and no exemptions from registration were applicable to the CBSG offering.

**B.  Albert Vagnozi and Capricorn's Fraudulent Conduct and
Participation in the Unregistered CBSG Offering**

50.     In May 2018, Albert Vagnozzi formed Capricorn for the purpose of raising investor funds for CBSG through the offer and sale of Capricorn promissory notes, and then funneling the investor funds to CBSG in exchange for CBSG promissory notes issued to Capricorn.

51.     From no later than May 2018 until at least March 2020, Albert Vagnozzi offered and sold the Capricorn promissory notes, which were securities.

52.     The Capricorn promissory notes provided for a 12% or 14% return to investors depending on the amounts invested and the rate negotiated by Albert Vagnozzi, with the return of principal returned to investors at the conclusion of 12 months.

53.     Albert Vagnozzi executed the Capricorn promissory notes on behalf of Capricorn.

54.     From no later than May 2018 through approximately April 2020, Albert Vagnozzi solicited investors through telephone calls, emails, and/or in-person meetings so that Capricorn could continue raising money to funnel to CBSG by participation in CBSG's unregistered offering.

55.     From no later than May 2018 through at least January 2020, Albert Vagnozzi provided investors with private placement memoranda ("PPMs") and subscription agreements, either through the mail or during in-person meetings.

56.     The PPM for Capricorn, originally dated March 28, 2018, stated that the investment involved "a high degree of risk" and that Capricorn "is an early stage company that has been organized to operate as a lending company to merchant cash advance businesses."

57.     While soliciting investors, Albert Vagnozzi falsely told investors and prospective investors that the offerings complied with the securities laws and that the PPM contained all the information a person would want to know in order to make an informed investment decision.

58.     While soliciting investors, Albert Vagnozzi knew that Capricorn only invested in CBSG promissory notes, but the PPM omitted this information and instead told investors that Capricorn invested in merchant cash advance businesses generally.

59.     From May 2018 until at least March 2020, during in-person and telephone communications with investors, Albert Vagnozzi and Capricorn touted CBSG's track record as a leader in the MCA industry, but failed to disclose CBSG's regulatory history.

60.     Albert Vagnozzi knew about the Pennsylvania Regulatory Action by December 2018.

61.     Albert Vagnozzi knew about the New Jersey Regulatory Action and Texas Regulatory Action by no later than April 2020.

62.     In March 2019, Albert Vagnozzi solicited investors located in Renton, Washington with initials B.B. and D.K. to invest in Capricorn through emails and phone calls and touted CBSG's track record as a leader in the MCA industry, but failed to disclose the Pennsylvania Regulatory Action.

63.     On March 25, 2019 B.B. invested $100,000 in Capricorn by wiring funds to Capricorn in exchange for a Capricorn promissory note Albert Vagnozzi executed on behalf of Capricorn.

64.     Similarly, on October 25, 2019, investors B.B. and D.K. invested $100,000 in Capricorn by wiring funds to Capricorn in exchange for a Capricorn promissory note, which Albert Vagnozzi executed on behalf of Capricorn.

65.     At no time did Albert Vagnozzi disclose to B.B. or D.K. the Pennsylvania Regulatory Action.

66.     From no later than May 2018 until at least March 2020, Albert Vagnozzi and Capricorn raised at least $18.5 million from more than 110 investors, including investors located in Jupiter, Florida.

67.     From no later than May 2018 until at least March 2020, Albert Vagnozzi and Capricorn funneled at least $18.5 of investor funds to CBSG in exchange for CBSG promissory notes issued to Capricorn that provided CBSG would pay Capricorn 18 percent interest at the conclusion of a 12-month period.

68.     CBSG compensated Albert Vagnozzi and Capricorn for raising investor funds, by paying Albert Vagnozzi and Capricorn 4 percent or 6 percent interest on each dollar Albert Vagnozzi and Capricorn raised for the purchase of CBSG notes in the unregistered CBSG offering.

69.     Specifically, CBSG paid Albert Vagnozzi and Capricorn 18 percent interest per month on the investor funds Albert Vagnozzi and Capricorn funneled to CBSG for the purchase of CBSG notes in the unregistered CBSG offering.

70.     Albert Vagnozzi and Capricorn then used those funds from CBSG to pay the Capricorn investors 12 percent to 14 percent of the amount invested, and Albert Vagnozzi and Capricorn retained the remaining 4 percent to 6 percent as their compensation for raising investor funds in the unregistered CBSG offering.

71.     From May 2018 until March 2020, CBSG paid Capricorn $3.96 million, Capricorn paid its investors $2.75 million of this amount and the balance ($1.1 million) was Capricorn's compensation for raising investor funds in the unregistered CBSG offering.

72.     Of the $1.1 million Capricorn received from CBSG as its compensation for raising investor funds in the unregistered CBSG offering, Albert Vagnozzi personally received at least $969,000 as his compensation for raising investor funds in the unregistered CBSG offering.

73.     In April 2020, Albert Vagnozzi and Capricorn Parallel solicited Capricorn investors to obtain Capricorn Parallel notes that offered 4% to 6% interest with the principal repaid over a 7-year time period.

74.     In April 2020, Albert Vagnozzi solicited investors located in Renton, WA with initials B.B. and D.K. during emails and phone calls to enter into promissory notes with Capricorn Parallel, which notes would replace the Capricorn notes.

75.     On April 29, 2020, B.B. entered obtained a Capricorn Parallel promissory note by executing a new agreement with Vagnozzi through which B.B. exchanged his Capricorn note for a Capricorn Parallel note.

### C.  Pisces, Westhead and Alec Vagnozzi's Fraudulent Conduct and Participation in the Unregistered CBSG Offering

76.     In September 2019, Westhead formed Pisces for the purpose of raising investor funds for CBSG through the offer and sale of Pisces promissory notes and then funneling the investor funds to CBSG in exchange for CBSG promissory notes issued to Pisces.

77.     From no later October 2019 until at least March 2020, Westhead and Alec Vagnozzi offered and sold the Pisces promissory notes, which are securities.

78.     From no later than October 2019 until at least March 2020, Defendants Westhead, Alec Vasgnozzi, and Pisces raised at least $15.4 million from more than 80 investors.

79.     The Pisces promissory notes provided for returns as high as 14% to investors depending on the amount invested and the return of principal in 12 months.

80.     Each Pisces promissory note was executed by Westhead or Alec Vagnozzi on behalf of Pisces.

81.     From October 2019 through at least March 2020, Westhead and Alec Vagnozzi solicited investors through telephone calls, emails, and/or in-person meetings so that they could continue raising investor money for CBSG's unregistered offering.

82.     From October 2019 through at least April 2020, Westhead and Alec Vagnozzi solicited investors by providing PPMs and subscription agreements, either through the mail or during in-person meetings.

83.     The PPM for Pisces stated that "4000 Units" were being offered of "$100,000,000 Aggregate Amount 12%-14% Promissory Notes."

84.     The PPM for Pisces disclosed that the Units involved "a high degree of risk" and that Pisces "is an early stage company that has been organized to operate as a lending company to merchant cash advance businesses."

85.     While soliciting investors, Westhead and Alec Vagnozzi falsely told investors and prospective investors that the offerings comply with the securities laws and that the PPM's contained all the information a person would want to know in order to make an informed investment decision.

86.     During the period of October 2019 through March 2020, Westhead, Alec Vagnozzi, and Pisces touted CBSG's track record as a leader in the MCA industry but failed to disclose CBSG's regulatory history and Joseph LaForte's criminal background.

87.     Westhead knew about the Pennsylvania Regulatory Action by no later than October 2019.

88.     Alec Vagnozzi knew about the Pennsylvania Regulatory Agency by no later than October 2019.

89.     Westhead knew about the New Jersey Regulatory Action by as early as October 2019 and no later than April 2020 (prior to the Pisces Parallel offering).

90.     Alec Vagnozzi knew about the New Jersey Regulatory Agency by no later than April 2020, prior to the Pisces Parallel offering.

91.     Westhead knew about the Texas Regulatory Action by no later than April 2020, prior to the Pisces Parallel offering.

92.     Alec Vagnozzi knew about the Texas Regulatory Agency by no later than April 2020, prior to the Pisces Parallel offering.

93.     Westhead knew about LaForte's criminal conviction and that he managed CBSG by no later than October 2018.

94.     Alec Vagnozzi has admitted in testimony that he heard "rumors" about LaForte's criminal background in late 2019 and he did not believe it was his responsibility to follow up for additional information.

95.     For example, in November 2019, Westhead solicited an investor located in Chad's Fort, Pennsylvania with initials F.B. to invest in Pisces through email and touted CBSG's track record as a leader in the MCA industry, but failed to disclose the Pennsylvania or New Jersey Actions or that CBSG was managed by a convicted felon.

96.     In November 2019, investor F.B. invested $251,000 in Pisces by wiring funds to Pisces in exchange for a Pisces promissory note.

97.     From October 2019 through at least March 2020, Westhead and Alec Vagnozzi raised $15.4 million from at least 80 investors in exchange for Pisces promissory notes that provided a 10% to 14% interest rate, with the principal to be repaid to the investor at the conclusion of 12 months.

98.     From October 2019 until at least March 2020, Pisces funneled to CBSG the investor funds Westhead and Alec Vagnozzi raised through the Pisces offering.

99.     In exchange for the $15.4 million of investor funds, CBSG issued promissory notes to Pisces that provided for a 20% interest rate to be paid through a "monthly distribution payment."

100.    The difference between what CBSG paid (20%) and what Pisces paid (12%-14%) was the compensation Pisces received for raising investor funds for CBSG, which resulted in Alec Vagnozzi and Westhead being compensated the difference between the 20% interest rate and the investors' return.

101.    From October 2019 until at least April 2020, CBSG paid to Pisces more than $935,000 of compensation for raising investor funds for the unregistered CBSG offering.

102.    Of that compensation, Westhead received more than $260,000 and Alec Vagnozzi received more than $67,000 as their compensation for raising investor funds for the unregistered CBSG offering.

103.    In March 2020, Westhead and Alec Vagnozzi created Pisces Parallel.

104.    Westhead, Alec Vagnozzi, and Pisces Parallel offered the existing Pisces investors the option to either restructure their Pisces promissory notes into new notes issued by Pisces Parallel that promised 4% annual returns and return of principal in seven years (instead of the initial notes that promised between 12-14% interest with return of principal in one year) or face nonpayment on the existing Pisces notes.

105.    Westhead, Alec Vagnozzi, and Pisces Parallel told investors that they had three days to accept the exchange note offer.

106.    In about May 2020, investors exchanged their Pisces notes for notes issued by Pisces Parallel.

107.    When soliciting Pisces investors in the Pisces Parallel offering, Westhead, Alec Vagnozzi, and Pisces told investors that __ and yet failed to disclose the Texas Regulatory Action, Pennsylvania Regulatory Action, or New Jersey Regulatory Action.

### D. MSI and Tierney Fraudulent Conduct and
### Participation in the Unregistered CBSG Offering

108.    In June 2018, Tierney formed MSI for the purpose of raising investor funds for CBSG through the offer and sale of MSI promissory notes and then funneling the investor funds to CBSG in exchange for CBSG promissory notes issued to MSI.

109.    From no later August 2018 until at least March 2020, Tierney offered and sold the MSI promissory notes, which are securities.

110.    From April 2020 until July 2020, Tierney sold MSI Parallel promissory notes, which are also securities.

111.    From no later than August 2018 until at least March 2020, Tierney and MSI raised at least $32.2 million for CBSG from more than 70 investors through the offer and sale of MSI promissory notes.

112.    MSI entered into promissory notes with investors, promising annual returns of 12% to 14%, with monthly interest payments and full return of principal at the end of the typical 12-month term.

113.    Tierney executed the MSI promissory notes on behalf of MSI.

114.    From August 2018 through at least March 2020, Tierney solicited investors through telephone calls, emails, and/or in-person meetings so that they could continue raising investor money in CBSG.

115.    Tierney solicited investors by providing PPMs and subscription agreements, either through the mail or during in-person meetings.

116.    Tierney also processed investment paperwork and handled investor funds on behalf of investors who decided to invest through MSI.

117.    The PPM for MSI stated that the Units involved "a high degree of risk" and that Pisces "is an early stage company that has been organized to operate as a lending company to merchant cash advance businesses."

118.    Tierney knew about the Pennsylvania Regulatory Action, New Jersey Regulatory Action, and Texas Regulatory Action by no later than April 2020.

119.    By no later than November 2018, Tierney knew about LaForte's criminal record and that LaForte managed CBSG.

120.    While soliciting investors, Tierney told investors and prospective investors that the offerings comply with the securities laws and that the PPM's contained all the information a person would want to know in order to make an informed investment decision.

121.    Tierney touted CBSG's track record as a leader in the MCA industry but failed to disclose CBSG's regulatory history and that CBSG was operated by a convicted felon.

122.    In August 2019, Tierney solicited an investor located in Holland, Pennsylvania with initials R.F. to invest in MSI through email and touted CBSG's track record as a leader in the MCA industry, but failed to disclose the Pennsylvania Action or that CBSG was managed by a convicted felon.

123.    On August 6, 2019, investor R.F. invested $110,500 in MSI by wiring funds to Pisces in exchange for a Pisces promissory note.

124.    From August 2018 through at least April 2020, Tierney raised at least $32.2 million for CBSG's unregistered offering through the offer and sale of MSI notes.

125.    From August 2018 through April 2020, Tierney raised $32.2 million from investors in exchange for MSI promissory notes that provided for a 12% to 14% interest rate, with the principal to be repaid to the investor at the conclusion of 12 months.

126.    From August 2018 until at least April 2020, MSI funneled to CBSG the investor funds Tierney raised in the MSI offering.

127.    In exchange for the $32,2 million of investor funds, CBSG issued promissory notes to MSI that provided for a 20% interest rate to be paid through a "monthly distribution payment."

128.    The difference between what CBSG paid (20%) and what MSI paid (12%-14%) was the compensation MSI received for raising investor funds for CBSG.

129.    In May 2020, Tierney created MSI Parallel.

130.    Beginning in April 2020, Tierney and MSI Parallel offered the existing MSI investors the option to either restructure their MSI promissory notes into new notes issued by MSI Parallel that promised 4% annual returns and return of principal in seven years (instead of the initial notes that promised between 12-14% interest with return of principal in one year) or face nonpayment on the existing MSI notes.

131.    In about May 2020, investors exchanged their MSI notes for notes issued by MSI Parallel.

132.    When soliciting MSI investors in the MSI Parallel offering, Tierney and MSI Parallel told investors touted CBSG and and yet failed to disclose the Texas Regulatory Action, Pennsylvania Regulatory Action, or New Jersey Regulatory Action against CBSG.

## COUNT I

## Sale of Unregistered Securities in Violation of Sections 5(a) and 5(c) of the Securities Act

### Against All Defendants

133.    The Commission repeats and realleges paragraphs 1 through 132 of this Complaint as if fully set forth herein.

134.    No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities issued and the transactions conducted by the Defendants as described in this Complaint and no exemption from registration existed with respect to these securities and transactions.

135.    Pisces, beginning no later than October 2019 and continuing through at least March 2020; Westhead and Alec Vagnozzi, beginning no later than October 2019 and continuing through at least July 2020; Pisces Parallel, Capricorn Parallel, and MSI Parallel, beginning no later than April 2020 and continuing through at least July 2020; Albert Vagnozzi, beginning no later than May 2018 and continuing through at least July 2020; Capricorn, beginning no later than May 2018 and continuing through at least March 2020; Tierney, beginning no later than August 2018 and continuing through at least July 2020; and MSI, beginning no later than August 2018 and continuing through at least March 2020, directly or indirectly:

(a)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities as described herein, through the use or medium of a prospectus or otherwise;

(b)     carried securities or caused such securities, as described herein, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

(c)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the Commission as to such securities.

136.    By reason of the foregoing, the Defendants violated and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

### Against Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney

137.    The Commission repeats and realleges paragraphs 1 through 132 of this Complaint.

138.    Defendants Westhead and Alec Vagnozzi, beginning no later than October 2019 and continuing through at least July 2020; Albert Vagnozzi, beginning no later than May 2018 and continuing through at least July 2020; and Tierney, beginning no later than August 2018 and continuing through at least July 2020, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly, employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

139.     By reason of the foregoing, these Defendants, directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT III

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act

### Against Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney

140.     The Commission adopts by reference paragraphs 1 through 132 of this Complaint.

141.     Defendants Westhead and Alec Vagnozzi, beginning no later than October 2019 and continuing through at least July 2020; Albert Vagnozzi, beginning no later than May 2018 and continuing through at least July 2020; and Tierney, beginning no later than August 2018 and continuing through at least July 2020, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

142.     By reason of the foregoing, these Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## COUNT IV

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act

### Against Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney

143.     The Commission adopts by reference paragraphs 1 through 132 of this Complaint.

144.     Defendants Westhead and Alec Vagnozzi, beginning no later than October 2019 and continuing through at least July 2020; Albert Vagnozzi, beginning no later than May 2018 and

continuing through at least July 2020; and Tierney, beginning no later than August 2018 and continuing through at least July 2020, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

145.    By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c), [17 C.F.R. § 240.10b-5(c)].

146.    Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, knowingly or recklessly employed a device, scheme, or artifice to defraud one or more clients or prospective clients.

147.    By reason of the foregoing, these Defendants violated and, unless enjoined, are reasonably likely to continue to violate, Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

## COUNT V

## Violation of Section 17(a)(1) of the Securities Act

### Against Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney

148.    The Commission repeats and realleges paragraphs 1 through 132 of this Complaint.

149.    Defendants Westhead and Alec Vagnozzi, beginning no later than October 2019 and continuing through at least July 2020; Albert Vagnozzi, beginning no later than May 2018 and continuing through at least July 2020; and Tierney, beginning no later than August 2018 and continuing through at least July 2020, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or of the mails have knowingly or recklessly employed devices, schemes or artifices to defraud.

24

150.    By reason of the foregoing, these Defendants, directly or indirectly violated, and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT VI

### Violation of Section 17(a)(2) of the Securities Act

### Against Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney

151.    The Commission repeats and realleges paragraphs 1 through 132 of this Complaint.

152.    Defendants Westhead and Alec Vagnozzi, beginning no later than October 2019 and continuing through at least July 2020; Albert Vagnozzi, beginning no later than May 2018 and continuing through at least July 2020; and Tierney, beginning no later than August 2018 and continuing through at least July 2020, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or by use of the mails, have negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

153.    By reason of the foregoing, these Defendants, directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT VI

### Violation of Section 17(a)(3) of the Securities Act

### Against Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney

154.    The Commission repeats and realleges paragraphs 1 through 132 of this Complaint.

155.    Defendants Westhead and Alec Vagnozzi, beginning no later than October 2019 and continuing through at least July 2020; Albert Vagnozzi, beginning no later than May 2018 and continuing through at least July 2020; and Tierney, beginning no later than August 2018 and continuing through at least July 2020, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or by use of the mails, have negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

156.    By reason of the foregoing, the Defendants, directly or indirectly violated, and, unless and restrained and enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT VIII

### Violations of Section 15(a) of the Exchange Act

**Against Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney**

157.    The Commission repeats and realleges paragraphs 1 through 132 of this Complaint.

158.    Defendants Westhead and Alec Vagnozzi, beginning no later than October 2019 and continuing through at least July 2020; Albert Vagnozzi, beginning no later than May 2018 and continuing through at least July 2020; and Tierney, beginning no later than August 2018 and continuing through at least July 2020, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities without being registered as a broker or dealer with the Commission or associated with a broker or dealer registered with the Commission.

159.    By reason of the foregoing Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney violated and, unless enjoined, are reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find that Defendants committed the violations alleged and:

### I.

### Permanent Injunction

Issue a Permanent Injunction, restraining and enjoining: Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act, [15 U.S.C. §§ 77e(a) and 77e(c)]; and Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney from violating Sections 17(a) of the Securities Act [15 U.S.C. §77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240 10b-5], and Section 15(a) of the Exchange Act [15 USC  § 78q(a)].

### II.

### Disgorgement

Issue an Order directing all Defendants to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### III.

### Penalties

Issue an Order directing Defendants Albert Vagnozzi, Westhead, Alec Vagnozzi, and Tierney to pay civil money penalties pursuant to Section 20(d) of the Securities Act, [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

## IV.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## V.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

### DEMAND FOR JURY TRIAL

The Commission hereby demands a jury trial in this case on all issues so triable.

September 29, 2023          Respectfully submitted,


By:     s/Amie Riggle Berlin
        Amie Riggle Berlin, Esq.
        Senior Trial Counsel
        Florida Bar No. 630020
        Direct Dial: (305) 982-6322
        Direct email: berlina@sec.gov

        Attorney for Plaintiff
        **SECURITIES AND EXCHANGE COMMISSION**
        801 Brickell Avenue, Suite 1950
        Miami, Florida 33131
        Telephone: (305) 982-6300
        Facsimile:  (305) 536-4154