**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:23-cv-23749-RAR

---

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

v.

SHANNON WESTHEAD, ALEC
VAGNOZZI, PISCES INCOME FUND,
LLC, PISCES INCOME FUND
PARALLEL, LLC, ALBERT VAGNOZZI,
CAPRICORN INCOME FUND I, LLC,
CAPRICORN INCOME FUND
PARALLEL, LLC, MICHAEL TIERNEY,
MERCHANT SERVICES INCOME FUND,
LLC, and MERCHANT SERVICES
INCOME FUND PARALLEL, LLC,

               Defendants.

---

## DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

    I.    No Reasonable Jury Could Conclude that Shannon, Alec, Albert, and Michael Had the
        Requisite States of Mind for Any Fraud Claim. .................................................... 4

        A.    Good-Faith Reliance on Advice of Counsel Precludes Finding of Scienter Required for
              Counts II-V. .................................................................................................. 5

        B.    Reliance on Information Supplied by Counsel and Others Also Precludes a Finding of
              Scienter. ....................................................................................................... 7

        C.    There is No Evidence that Defendants Acted Negligently. ........................... 13

    II.    There is No Evidence that Defendants Made Any Misstatements of Material Fact. ........ 17

        A.    The SEC Has No Evidence of Misstatements in the PPMs or Attachments. ................ 17

        B.    The Law Requires Misstatements of Fact, But the SEC Alleges Immaterial Corporate
              Puffery. ......................................................................................................... 18

        C.    Defendants Did Not Have Actual Authority Over the Statements They Made. ........... 20

    III.    The SEC Has Not Adequately Alleged or Evidenced Actionable Omissions. .................. 21

    IV.    Without Any Actionable False or Misleading Statements, There is No Support for the
        SEC's Allegations of Scheme Liability in This Case. ....................................... 25

CONCLUSION .................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aetna Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010)...................................................19

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) ...............................................19

*Chapman v. Al Transport*,
229 F.3d 1012 (11th Cir. 2000) ..........................................3, 23

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)....................................................20

*Crivellaro v. Singularity Future Tech. Ltd.*,
No. 22-CV-07499, 2024 U.S. Dist. LEXIS 228061 (E.D.N.Y. Dec. 17, 2024) ....................24

*Cullen v. BMW of N. Am., Inc.*,
691 F.2d 1097 (2d Cir. 1982)..................................................14

*Delice v. Burlington Stores, Inc.*,
No. 24-CV-20285-RAR, 2024 U.S. Dist. LEXIS 179183 (S.D. Fla. Oct. 1,
2024) (Ruiz, J.) ...................................................3

*In re Diebold Nixdorf, Inc. Sec. Litig.*,
No. 19-CV-6180 (LAP), 2021 U.S. Dist. LEXIS 62449 (S.D.N.Y. Mar. 30,
2021) ...................................................22

*In re Fannie Mae Sec.*,
892 F. Supp. 2d 59 (D.D.C. 2012)...............................................7

*FindWhat Investor Grp. v. FindWhat.com*,
658 F.3d 1282, 1305 (11th Cir. 2011) ...........................................24

*In re Greenlane Holdings, Inc.*,
511 F. Supp. 3d 1283 (S.D. Fla. 2021) .........................................22

*Howard v. SEC*,
376 F.3d 1136 (D.C. Cir. 2004)........................................2, 7, 8, 10

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016).....................................................22

*Intertape Polymer Corp. v. Insp. Tech. Inc.*,
725 F. Supp. 2d 1319 (M.D. Fla. 2010)...........................................19

ii

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) .................................................................................... *passim*

*In re KLX, Inc. Sec. Litig.*,
  232 F. Supp. 3d 1269 (S.D. Fla. 2017) ....................................................... 19

*Lorenzo v. SEC*,
  587 U.S. 71 (2019) ...................................................................................... 21

*Lorenzo v. SEC*,
  872 F.3d 578 (D.D.C. 2016) ................................................................ 21, 25

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  601 U.S. 257 (2024) ........................................................................ 2, 21, 22, 23

*Next Century Comms. Corp. v. Ellis*,
  318 F.3d 1023 (11th Cir. 2003) ................................................................. 19

*Parrish v. Freightliner, LLC*,
  471 F. Supp. 2d 1262 (M.D. Fla. 2006) ............................................... 17, 18

*Plymack v. Copley Pharm.*,
  No. 93 Civ. 2655, 1995 U.S. Dist. LEXIS 15104 (S.D.N.Y. Oct. 11, 1995) ......................... 12

*Ret. Sys. v. Nat'l Vision Holdings, Inc.*,
  No. 1:23-cv-0425-VMC, 2024 U.S. Dist. LEXIS 58937 (N.D. Ga. Mar. 30,
  2024) ........................................................................................................... 24

*Robare Grp., Ltd. v. SEC*,
  922 F.3d 468 (D.C. Cir. 2019) ................................................................... 14

*S. Cherry St. LLC v. Hennessy Grp. LLC (In re Bayou Hedge Fund Litig.)*,
  534 F. Supp. 2d 405 (S.D.N.Y. 2007) ........................................................ 12

*SEC v. Almagarby*,
  92 F.4th 1306 (11th Cir. 2024) .................................................................... 5

*SEC v. Bowen*,
  No. 22-CV-1415, 2024 U.S. Dist. LEXIS 127132 (N.D. Tex. July 17, 2024) ....................... 23

*SEC v. Complete Business Solutions Group*,
  No. 20-CIV-81205-RAR, 2021 U.S. Dist. LEXIS 223466, at *23–24 (S.D.
  Fla. Nov. 19, 2021) ................................................................................. 6, 7

*SEC v. Dain Rauscher, Inc.*,
  No. 98-CV-639, 1999 U.S. Dist. LEXIS 16905 (C.D. Cal. Aug. 18, 1999) ....................... 8, 15

iii

*SEC v. Huff*,
   758 F. Supp. 2d 1288 (S.D. Fla. 2010) ................................................................5

*SEC v. Hughes Capital Corp.*,
   124 F.3d 449 (3d Cir. 1997)..............................................................................14

*SEC v. King Chuen Tang*,
   No. C-09-05146 JCS, 2012 U.S. Dist. LEXIS 157 (N.D. Cal. Jan. 3, 2012) .........................17

*SEC v. Mapp*,
   240 F. Supp. 3d 569 (E.D. Tex. 2017)..................................................................24

*SEC v. Merch. Cap., LLC*,
   483 F.3d 747 (11th Cir. 2007) ............................................................................3

*SEC v. Monterosso*,
   756 F.3d 1326 (11th Cir. 2014) ...........................................................................5

*SEC v. Powell*,
   No. 11-CA-161, 2012 U.S. Dist. LEXIS 205354 (W.D. Tex. Oct. 11, 2012)....................7, 10

*SEC v. Prince*,
   942 F. Supp. 2d 108 (D.D.C. 2013) ...................................................................5, 6

*SEC v. Rashid*,
   96 F.4th 233 (2d. Cir. 2024) .............................................................13, 14, 15, 16

*SEC v. Rio Tinto*,
   41 F.4th 47 (2d Cir. 2022) ...............................................................................25

*SEC v. Shanahan*,
   646 F.3d 536 (8th Cir. 2011) ............................................................................16

*SEC v. Spartan Sec. Grp., Ltd.*,
   No. 8:19-cv-448-T-33CPT, 2020 U.S. Dist. LEXIS 242637 (M.D. Fla. Dec.
   28, 2020) ...................................................................................................4

*Singh v. Cigna Corp.*,
   918 F.3d 57 (2d Cir. 2019)..........................................................................19, 20

*Stewart v. Happy Herman's Cheshire Bridge*,
   117 F.3d 1278, 1285 (11th Cir. 1997) ...................................................................3

*Thorpe v. Walter Inv. Mgmt., Corp.*,
   No 1:14-cv-20880-UU, 2014 U.S. Dist. LEXIS 200663 (S.D. Fla. Dec. 23,
   2014) .............................................................................................18, 19, 20

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993)......................................................................22

*United States v. DeFries*,
129 F.3d 1293 (D.C. Cir. 1997)...............................................................6

*United States v. Eisenstein*,
731 F.2d 1540 (11th Cir. 1984)................................................................6

*United States v. Evans*,
No. l:09-CR-449-RWS-RGV, 2010 U.S. Dist. LEXIS 81394 (N.D. Ga. Apr.
13, 2010).................................................................................................5

*United States v. Hagen*,
542 F. Supp. 3d 515 (N.D. Tex. 2021).....................................................8

*United States v. Hill*,
643 F.3d 807 (11th Cir. 2011).................................................................5

*WyPie Investments, LLC v. Homschek*,
No. N14C-08-140 WCC CCLD, 2018 Del. Super. LEXIS 145, at *15-16 (Del.
Super. Ct. Mar. 28, 2018)......................................................................19

## Statutes

15 U.S.C. 77q.............................................................................4, 8, 9, 25

15 U.S.C. 78j.....................................................................................3, 4, 21

## Other Authorities

17 CFR § 240.10b-5........................................................................ *passim*

57A Am. Jur. 2d Negligence § 449 (2023)..........................................14

Fed. R. of Civ. P. 56.........................................................................1, 3

Local Rule 56.1......................................................................................1

Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 3 ..............................14

Defendants Shannon Westhead, Alec Vagnozzi, Pisces Income Fund, LLC, Pisces Income Fund Parallel, LLC, Albert Vagnozzi, Capricorn Income Fund I, LLC, Capricorn Income Fund Parallel, LLC, Michael Tierney, Merchant Services Income Fund, LLC, and Merchant Services Income Fund Parallel, LLC ("Defendants"), by and through their undersigned counsel, move pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 for summary judgment on Counts II through VII.

## **INTRODUCTION**

This case is a matter of consummate government overreach. Following charges against the criminal perpetrators of the Complete Business Solutions Group ("CBSG" or "Par Funding") Ponzi scheme *and* the Defendants' retained outside counsel for an identical theory, the SEC inexplicably charges each of the Defendants with fraud. No longer able to hide behind meritless allegations alone, the law and evidence foreclose liability for the SEC's fraud claims (Counts II-VII), and summary judgment must be granted in the Defendants' favor.

*First*, the SEC has not—and cannot—put forth sufficient evidence to support that the Defendants acted with the requisite state of mind (scienter *or* negligence). The SEC's entire case is based on the Defendants purportedly knowing certain information and not disclosing it. But there is no dispute of material fact that Defendants appropriately and justifiably relied in good faith on the legal advice and work of their retained outside counsel (John Pauciulo) and that Shannon Westhead and Alec Vagnozzi relied on their mentor Dean Vagnozzi, who himself also relied on his long-time counsel Pauciulo for legal advice. Moreover, Defendants relied on and were provided information supplied by CBSG's principals—who pleaded guilty to charges stemming from CBSG's fraud—without any knowledge about CBSG's fraud. In fact, there is no evidence whatsoever that Defendants had any knowledge of any fraud committed by CBSG. These facts are

1

undisputed. The D.C. Circuit's seminal opinion in *Howard v. SEC* forecloses any finding of scienter.

**Second,** as evidenced by the SEC's own discovery responses, the SEC has not—and cannot—put forth any evidence of actionable misstatements *of fact*. Although the SEC continues to grasp at straws by repeatedly trying to assert vague new angles of liability in its responses to Defendants' Interrogatories, a rudimentary analysis of the affirmative misstatement/half-truth/scheme liability rubric reveals fatal deficiencies.

Concerning purported affirmative misstatements, bizarrely, the *only* misstatement that the SEC specifically alleges and attributes to Defendants is actually a representation in an exchange agreement made by the purchasers of the notes, *not the Defendants*. Instead, the statements at the core of the SEC's case (generalized statements about CBSG's success or legal compliance) are immaterial puffery, a conclusion reached by courts across the country on these very topics. Furthermore, none of the Defendants had any actual authority under the Supreme Court's controlling decision in *Janus,* as each of the Defendants simply repeated statements made by either Pauciulo or Dean Vagnozzi.

Any half-truth theory likewise fails. The SEC's "omissions" theory can only survive if the alleged omissions render a separate statement *of fact* misleading. Even if this Court were to conclude the corporate puffery statements are statements of fact or that the Defendants (in some undefined way) have authority over factual statements, courts across the country have concluded, following the Supreme Court's decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P,* that the omission must be tied to the same factual statement made. The SEC has no evidence that any Defendant made affirmative statements that the omissions would render misleading.

Void of any actionable misstatements or half-truths, the SEC seeks to rely on the Defendants' purported deceptive and manipulative dissemination of other's statements, namely those of Pauciulo, Dean Vagnozzi, and CBSG. Such allegations, which conveniently ignore that certain Defendants were investor victims themselves, suffer from similar defects to those detailed above, including the unrebutted lack of evidence concerning scienter.

For these reasons and others detailed herein, the Court must grant summary judgment in Defendants' favor on Counts II-VII.

## LEGAL STANDARD

"Summary judgment is appropriate when the evidence before a court shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Delice v. Burlington Stores, Inc.,* No. 24-CV-20285-RAR, 2024 U.S. Dist. LEXIS 179183, at *4 (S.D. Fla. Oct. 1, 2024) (Ruiz, J.) (quoting Fed. R. Civ. P. 56(c)). While the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge*, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case," *Chapman v. Al Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted). There is no genuine issue of material fact "unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Id*.

For the SEC to prevail on its claims concerning purported misstatements under 15 U.S.C. 78j(b) of the Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder, it must prove that the defendants made (1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) with scienter. *See SEC v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007). To prevail on its claim for purported misstatements under

3

15 U.S.C. 77q(a)(2) of the Securities Act of 1933 ("Securities Act"), the SEC must prove (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with negligence. *Id.* These provisions are often referred to as the "misstatement" provisions.

Under the remaining fraud counts, which cover 15 U.S.C. 77q(a)(1) and (3) of the Securities Act and 15 U.S.C. 78j(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, the SEC must prove that (1) the defendant committed a deceptive or manipulative act (2) in furtherance of the alleged scheme to defraud (3) with either scienter (for Section 77q(a)(1) of the Securities and both Exchange Act provisions) or negligence (for Section 77q(a)(3)). *See* Order Denying Motion to Dismiss ("MTD Order") at 17 (May 3, 2024), Dkt. 58 (citing *SEC v. Spartan Sec. Grp., Ltd.,* No. 8:19-cv-448-T-33CPT, 2020 U.S. Dist. LEXIS 242637, at *25 (M.D. Fla. Dec. 28, 2020)).

## **ARGUMENT**

### I.  **No Reasonable Jury Could Conclude that Shannon, Alec, Albert, and Michael Had the Requisite States of Mind for Any Fraud Claim.**

The SEC's misplaced fraud theory largely hinges on statements that the Defendants' retained attorney *Pauciulo* made—and for which he was charged with fraud by the SEC—not the Defendants. *Compare* SOF ¶¶ 28-31 (Responses 1-2 of SEC's Interrogatories) *with* SOF ¶ 84 (explaining that Pauciulo said that "the investments did not need to be registered with the SEC and that they complied with the securities laws and gave full disclosure to investors"). However, a straightforward bar to the Rule 10b-5 and Section 77q(a)(1) claims against Shannon, Alec, Albert, and Michael (Counts II-V), which require scienter, is that they relied in good faith on the advice of Pauciulo and his firm, Eckert Seamans ("Eckert"), for the propriety of statements to prospective investors. And no reasonable jury could find the negligence required for the remaining fraud claims

because Defendants relied on that advice of counsel, the advice of their mentor and boss Dean Vagnozzi, and information supplied by CBSG that they had no reason to suspect was fraudulent. The SEC's inability to prove state of mind requires summary judgment on all fraud claims.

### A. Good-Faith Reliance on Advice of Counsel Precludes Finding of Scienter Required for Counts II-V.

To prove that a defendant acted with scienter, the SEC must show "knowing misconduct or severe recklessness." MTD Order at 20 (citing *SEC v. Monterosso*, 756 F.3d 1326, 1335 (11th Cir. 2014)). Reliance on advice of counsel precludes scienter because, "at the very least, [defendant's] retention of counsel here reflects some effort to comply with the securities laws rather than a willful or reckless violation." *SEC v. Almagarby*, 92 F.4th 1306, 1322 n.2 (11th Cir. 2024) (finding defendant's "actions cannot fairly be characterized as involving scienter, especially given that he consulted numerous attorneys and appeared to at least try to follow the law"); *see also SEC v. Prince*, 942 F. Supp. 2d 108, 144-45 (D.D.C. 2013) (holding that "reasonable reliance on counsel compels this Court to conclude that [defendant] did not act with 'extreme recklessness'").

This "complete defense" applies if Defendants relied in good faith on the advice of counsel who had received full disclosure of the facts relevant to the advice. *See United States v. Hill*, 643 F.3d 807, 851 (11th Cir. 2011).[1] Critically, for this defense to apply, the lawyer need not receive the relevant facts directly from the defendant "so long as the primary facts which a lawyer would think pertinent *are disclosed, or the client knows the lawyer is aware of them*." *United States v.*

---

[1] While much of the caselaw addressing an advice of counsel defense stems from criminal cases, those criminal cases are persuasive in SEC civil enforcement actions. *See SEC v. Huff*, 758 F. Supp. 2d 1288, 149-50 (S.D. Fla. 2010) (analyzing Eleventh Circuit criminal caselaw for advice of counsel defense in SEC enforcement case).

*Evans*, No. l:09-CR-449-RWS-RGV, 2010 U.S. Dist. LEXIS 81394, at *34–35 (N.D. Ga. Apr. 13, 2010) (emphasis added) (quoting *United States v. DeFries*, 129 F.3d 1293, 1308-09 (D.C. Cir. 1997), *rept. & rec. partially rejected on other grounds*, 2010 U.S. Dist. LEXIS 81367 (N.D. Ga. Aug. 11, 2010)).[2]

In this matter, Pauciulo and Eckert were unquestionably retained by Shannon, Alec, Albert, and Michael to perform legal services for their entities. Statement of Facts ("SOF") ¶¶ 55, 93, 121. Among those services was completing offering materials and ensuring that the offerings complied with the federal securities laws.  *Id.* ¶¶56, 92-96. There is *no evidence* rebutting that Pauciulo and Eckert were informed of all the salient facts concerning LaForte's criminal history and the regulatory actions before drafting the offering documents that Defendants relied on Pauciulo to create in compliance with securities laws. *Id.* ¶¶ 14-23. In fact, Pauciulo specifically testified that (1) he considered LaForte's prior criminal conviction and did not consider it material given it occurred more than ten years prior to the offering, *id.* ¶20; and (2) he was aware of the regulatory actions well before the Defendants' offerings took place, *id.* ¶¶19, 22. Despite Pauciulo's knowledge and his charge to create offerings that complied with the federal securities laws, he neither advised nor recommended disclosure of such information.[3] *Id.*  ¶ 23.

---

[2] *See also United States v. Eisenstein*, 731 F.2d 1540, 1546 (11th Cir. 1984) (reversing conviction of defendants Eisenstein *and* Ghitis despite the excluded evidence being solely what Ghitis disclosed to the attorney who assisted both defendants and failed to advise they needed to file a certain report); *Prince*, 942 F. Supp. 2d at 139–40 (applying defense to defendant Prince despite information coming from another person at company and from the counsel's prior work for company).

[3] Importantly, in contrast to the advice of counsel defense this Court previously considered in *SEC v. Complete Business Solutions Group*, the factual deficiency noted in that case's summary judgment opinion is not replicated here. No. 20-CIV-81205-RAR, 2021 U.S. Dist. LEXIS 223466, at *23–24 (S.D. Fla. Nov. 19, 2021). There, this Court reasoned that "at the time [the attorney] provided counsel, he was not aware that LaForte was involved in Par Funding—nor that he had a criminal history." *Id.* at *23. There, those defendants relied on a different attorney who actually

**B. Reliance on Information Supplied by Counsel and Others Also Precludes a Finding of Scienter.**

Additionally, no reasonable jury could find that Shannon, Alec, Albert, or Michael acted with scienter: (1) even if the Court were to conclude there was not a formal advice of counsel defense, the unrebutted evidence cannot support scienter given the robust body of statements and representations by Pauciulo, the former SEC attorney on whom all Defendants relied, *see supra* § I(A); (2) Shannon, Alec, and Michael reasonably relied upon statements and representations made by Dean Vagnozzi, their mentor and retained management consultant, about the CBSG investments; and (3) Shannon, Alec and Albert reasonably relied upon information provided by CBSG.

The Defendants' reliance upon Pauciulo's and Eckert's work product—whether created before or during their attorney-client relationship—is "'evidence of good faith, a relevant consideration in evaluating a defendant's scienter.'" *Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004); *see also SEC v. Powell*, No. 11-CA-161, 2012 U.S. Dist. LEXIS 205354, at *19–20 (W.D. Tex. Oct. 11, 2012) (granting summary judgment where no scienter because the defendant director of the company "reasonably believed" his conduct was permissible "[b]ased upon the information supplied by the CEO, including advice from outside counsel"). Defendants can obtain summary judgment on scienter when that element is "negated by the substantial evidence that [defendant] acted in good faith." *In re Fannie Mae Sec.*, 892 F. Supp. 2d 59, 73 (D.D.C. 2012) (granting summary judgment on lack of scienter where there was no dispute that company

---

"advised Defendants in writing that if Pennsylvania regulators entered an Order against [the company], that may give rise to a disclosure requirement" and "he would have advised Defendants to disclose the Pennsylvania Order in the [PPM]." *Id.* at *10–11. Here, the unrebutted evidence is clear: the attorney retained by the Defendants *was* aware of all that the SEC claims was misleading for Shannon and Alec to omit: LaForte's conviction and the state regulatory actions. *See* SOF ¶¶ 15-23. In providing the legal advice, the attorney considered that information and determined it was immaterial. *Id.*

executives "reassured [defendant] before his certifications that everything was in order").[4] As the D.C. Circuit explained in its seminal case *Howard v. SEC,* the evidence need only show the defendant's reliance on the legal advice. 376 F.3d at 1147-48; *see also United States v. Hagen*, 542 F. Supp. 3d 515, 518–19 (N.D. Tex. 2021) (finding that legal advice relayed to defendants from a co-conspirator was relevant to assessing intent); *SEC v. Dain Rauscher, Inc.*, No. 98-CV-639, 1999 U.S. Dist. LEXIS 16905, at *18–22 (C.D. Cal. Aug. 18, 1999) (granting summary judgment for defendant on scienter and negligence where the SEC did not rebut the reasonableness of reliance on advice of counsel).

Critically, the Defendants need not show that they directly provided the relevant information to the lawyer or directly requested or received legal advice from the lawyer. *Howard,* 376 F.3d at 1147-48 (noting that it would be error to preclude advice of counsel argument for these reasons if evidence shows that defendant relied on counsel's advice in good faith). To require direct communication of legal advice to negate scienter in Rule 10b-5 and Section 17(a)(1) claims would be "illogical," "impractical and highly inefficient" because every employee would have to consult his or her own counsel directly to receive the same legal advice. *Id.* (explaining further that, "[i]f the SEC were right, all corporate employees below the top echelon would have to consult outside counsel directly in order to receive the same legal advice").

***First*** **(All Defendants),** based on discovery, the totality of the SEC's alleged scienter evidence is that the Defendants purportedly knew information about LaForte's criminal history[5] and the regulatory actions. This theory conveniently ignores the indisputable evidence of

---

[4] *Cf.* 11th Circuit Criminal Pattern Jury Instruction S18 (Apr. 2024 ed.) ("Good-faith is a complete defense to the charge . . . that the Defendant acted with intent to defraud[.]" (brackets omitted)).
[5] The SEC is not claiming that Albert Vagnozzi knew of LaForte's criminal background and failed to disclose it.  SOF ¶31.

Pauciulo's role in the events at issue (the very same events for which they charged him with fraud) and that all Defendants relied on the advice Pauciulo provided to them, to Dean, and to A Better Financial Plan ("ABFP"), *see supra* Section I(A).

Pauciulo made several videos touting, among other things that (1) the PPM discloses "all material information that an investor would want to know," SOF ¶ 33; (2) that it was his job to create a document that had "full and fair disclosure about the benefits and the potential risks of the asset class" and that the documentation "complies with the securities laws," *id.*; (3) he and Vagnozzi "work very hard to make sure things are done the correct and appropriate way, *id.* ¶ 34; and (4) the PPM is the document that provides an investor "with all the information that a reasonable person would want to know" to make an informed investment decision, including risks*, id.* Shannon viewed these videos before ever retaining Eckert, and Shannon and Michael reasonably relied on Pauciulo's statements and advice to ensure their discussions with investors would comply with federal law. *Id.* ¶ 32, 122.

Moreover, there is no dispute that (1) Dean Vagnozzi notified Pauciulo about both LaForte's criminal history and the state regulatory actions, *id.* ¶¶ 19, 22; (2) Pauciulo was in possession of the salient facts about LaForte's criminal history and the state regulatory actions prior to performing any legal services for entities, including drafting the PPMs, *id.*; (3) Pauciulo did not consider LaForte's criminal history material, *id.* ¶¶ 20, 23, 37; (4) despite knowing about the regulatory actions, Pauciulo never advised the Defendants to disclose them, *id.* ¶¶ 23, 64, 82, 132; (5) Shannon and Albert knew that Pauciulo had conducted due diligence on investments in CBSG and were not aware of any issues, *id.* ¶¶ 25, 61, 89; and (6) Pauciulo confirmed that he was structuring Pisces as well as Capricorn in the same way as previous funds that Pauciulo set up for Dean Vagnozzi and ABFP, *id.* ¶¶ 62, 90, 93. These facts are undisputed.

The unrebutted evidence is that Shannon and Alec—two twenty somethings fresh out of college with limited business experience—relied heavily on a former SEC attorney and counsel with years of experience making representations about legal compliance, disclosure, and the viability of the CBSG investment. *Id.* ¶¶ 5, 9, 10, 63. Put simply, they were doing the job that their boss Dean told them to do and that their lawyer Pauciulo legally cleared. It was in large part due to Pauciulo's involvement that Shannon not only personally invested $110,000 into ABFP investments that invested in CBSG but also encouraged her family members to invest more than $550,000. *Id.* ¶ 44. Similarly, it is undisputed that Albert and his partner Kohler relied on Pauciulo's advice regarding the necessary disclosures and compliance with securities laws when they formed the Capricorn fund. *Id.* ¶¶ 89, 92-96, 111.

**Second (Shannon, Alec, and Michael)**, Shannon, Alec, and Michael reasonably relied upon information disseminated by Dean Vagnozzi. Dean was Shannon's and Alec's superior (and, in Alec's case, his father) and Pisces' retained management consultant. *See id.* ¶¶ 26, 61. Their circumstances are similar to both *Howard*, where the D.C. Circuit reversed the SEC's disregard of an advice-of-counsel defense when a different employee served as the liaison to outside counsel, 376 F.3d at 1148, and *Powell*, where the court granted summary judgment that there was no scienter because the defendant director of the company believed in good faith that his conduct was permissible based on advice from his CEO and outside counsel. 2012 U.S. Dist. LEXIS 205354, at *19–20.

Here, the undisputed evidence supports that Shannon, Alec, and Michael reasonably believed that they were fulfilling their legal and regulatory obligations because of Dean's advice—which they understood to be heavily informed by *Pauciulo*. Shannon learned about the alternative investment industry, including the CBSG investment, from her first mentor and boss, Dean, whose

experience and judgment she trusted. *See* SOF ¶ 24. Shannon observed Dean explain the funds'
investment in CBSG to numerous investors, so when it came time for her to meet individually with
investors, Shannon repeated what she had heard Dean say. *See id.* ¶ 27. Similarly, Alec, as part of
his training, would sometimes sit in client meetings as an observer, and when the Pisces fund was
formed, mostly met with clients as a co-agent with his father. *Id*. ¶¶ 12, 69. And Michael learned
everything that he knew about CBSG from Dean and others at A Better Financial Plan. *Id.* ¶ 135.

Shannon understood that Dean had sought extensive guidance from Pauciulo regarding
necessary disclosures, and she had no reason to doubt that the way Dean presented the investment
to investors was compliant with all securities laws and provided potential investors with all the
information needed to make an informed decision. *See id.* ¶¶25-27, 33-36. In Shannon's presence,
Dean highlighted to investors that he had committed considerable time and expense to ensuring
that the investments and documentation were compliant with securities laws. *See id*. ¶ 26. Dean
often touted Pauciulo's efforts to make the offerings compliant with federal and state securities
laws. *See id.* 191:24-192:16. Shannon relied on these repeated representations—made through in-
person conversations and through materials like the Pauciulo videos—that the offering documents
complied with all securities laws and contained all information that investors needed. *See id.* ¶¶26,
33-36.

In addition, though Shannon and Alec learned that LaForte had some kind of criminal
history from Dean, Dean minimized its importance based on his understanding from Pauciulo, who
had determined that the convictions were not material due to their age and subject matter. *See id.*
¶¶ 20, 37-39. Dean also downplayed any concern regarding the Pennsylvania and New Jersey
Regulatory Actions and instead framed them as positives because regulators had combed through

CBSG's business and found only minor and administrative infractions. *See id.* ¶ 41.[6] Dean described it to Shannon as confirming that CBSG had a proper business model. *Id.*

Finally, Michael had no specific knowledge about CBSG or securities regulations prior to his role as manager of Merchant Services Income Fund LLC. *Id.* ¶ 135. In order to ensure his own compliance with the law concerning the creation and operation of his fund, Michael relied on Dean's advice, which included advice from Pauciulo. *Id.* ¶¶ 122, 129, 132, 135. Although Michael did not always know what specifically he needed to know about or take action on, he relied on Pauciulo to bring that to his attention. *Id.* ¶ 132. He expected Pauciulo to keep his fund in conformity with the law. *Id.*

***Third*** **(Shannon, Alec, and Albert)**, in similar circumstances where a defendant makes statements in reliance on another entity's information being accurate, courts find no scienter. *See, e.g.*, *Plymack v. Copley Pharm.*, No. 93 Civ. 2655, 1995 U.S. Dist. LEXIS 15104, at *18-23 (S.D.N.Y. Oct. 11, 1995) (granting summary judgment for lack of scienter where defendant relied on accuracy of another company's information); *S. Cherry St. LLC v. Hennessee Grp. LLC (In re Bayou Hedge Fund Litig.)*, 534 F. Supp. 2d 405, 417-18 (S.D.N.Y. 2007) (dismissing case for lack of scienter where defendant trusted company that ended up being Ponzi scheme).

In this matter, before providing investors with information about CBSG, Shannon received, reviewed and relied upon CBSG's monthly financial reports and its track record of repeatedly making payments to ABFP. SOF ¶ 45. Given that none of the individuals affiliated with ABFP or Pisces (including Shannon and Alec) had access to direct information on CBSG's default rates, underwriting practices, or lawsuits, *id.* ¶ 47, CBSG provided individuals like Shannon and Alec

---

[6] The SEC has no evidence that Shannon and Alec even knew about the Texas regulatory action. SOF ¶¶ 42-43.

with a monthly key performance indicator report, which showed key information such as how much CBSG was funding to merchants in any given month and what the month's default rate was. *See id.* ¶ 45. Abbonizio also provided agent fund managers with a CBSG marketing brochure that explained CBSG's business model and profits, and Abbonizio explained to them that CBSG had legal counsel to facilitate all aspects of CBSG's business. *See id.* ¶ 48. Similarly, Albert received information from CBSG, which he relied upon. *See id.* ¶ 98.

It was through these reports and information directly from CBSG that Shannon understood CBSG to be a leader in the merchant cash advance industry. Shannon also observed CBSG representatives present at Dean's investor information sessions and provide information about the company. *See id.* ¶ 49. And Shannon observed firsthand that ABFP consistently and repeatedly received returns as promised from CBSG, with CBSG never missing a monthly payment during her three years at ABFP. *See id.* ¶ 50.

Summary judgment must be granted in Defendants' favor on Counts II-V, all of which require scienter.

### C.  There is No Evidence that Defendants Acted Negligently.

The unrebutted evidence set forth above similarly supports that the SEC cannot succeed on Counts VI and VII because there was no negligence. Counts VI and VII require that Defendants acted negligently, meaning "a failure to exercise a standard of reasonable care." MTD Order at 21 (citing *SEC v. City of Miami*, 988 F. Supp. 2d 1343, 1362 (S.D. Fla. 2013); *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 453-54 (3d Cir. 1997)). "Reasonable care" means "the degree of care that a reasonably prudent person would use under like circumstances." *SEC v. Rashid*, 96 F.4th 233, 240

(2d. Cir. 2024) (citing Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 3[7]).

"A primary consideration in evaluating whether a person's conduct lacks reasonable care is the 'foreseeable likelihood that the person's conduct will result in harm.'" *Id.* at 240-41 (quoting Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 3). Indeed, "foreseeability of injury is an indispensable requisite of negligence, and . . . negligence exists only when there is a reasonable likelihood of danger as the result of the act complained of." *Id.* at 241 (quoting *Cullen v. BMW of N. Am., Inc.*, 691 F.2d 1097, 1101 (2d Cir. 1982)). And injury is reasonably foreseeable when "a reasonably prudent person would anticipate [it] as likely to result" from the breach. *Id.* at 242 (quoting 57A Am. Jur. 2d Negligence § 449 (2023)).

No reasonable juror could find that Defendants acted negligently for several reasons, some of which are unique to different Defendants.

**First (Shannon, Alec, and Michael)**, Shannon, Alec, and Michael followed the advice and guidance of Dean, their experienced boss or advisor, and Shannon and Alec followed the advice of Pauciulo, their retained legal counsel. *See supra* §§ I(A)-(B). Specifically for Shannon and Alec, Shannon did not major in business, and her first job out of college was as an assistant for Dean and ABFP. SOF ¶5. Dean advised her and guided her to open the Pisces funds similar to dozens of similar funds that he had opened, and Shannon followed his advice because of his experience in the industry. *Id.* ¶¶54, 62. Alec extensively relied on the advice of Pauciulo with regard to Pisces and necessary disclosures made to potential investors. *Id.* ¶63. Because acting even the same as

---

[7] Courts apply the Restatement of Torts in the securities law context, and it is instructive for the Court to consider here. *See, e.g.*, *Rashid*, 96 F.4th at 240–41 (relying on Restatement of Torts for definition of negligence); *Robare Grp., Ltd. v. SEC*, 922 F.3d 468, 477 (D.C. Cir. 2019) (same); *Hughes Capital*, 124 F.3d at 453–54 (same).

"peers" is reasonable, *see Rashid,* 96 F.4th at 241, acting the same as the most experienced people at the company, including their boss (and, in Alec's case, his father) and their retained former SEC attorney, cannot support a finding that they acted unreasonably. *See also Dain Rauscher*, 1999 U.S. Dist. LEXIS 16905, at *21–22 (granting summary judgment against SEC on negligence because reliance on counsel's opinion about what to disclose was not "out of the ordinary").

As further outlined above, Shannon diligently conveyed to investors information in the way that Dean demonstrated for her. *See* SOF ¶ 27. Shannon additionally understood that the merchant cash advance funds had an investment structure and documentation that was vetted and blessed by former SEC attorney Pauciulo. *See id.* ¶¶ 26, 36. Shannon and Alec relied on Pauciulo to make all necessary disclosures in the PPM as he represented he would do. *See id.* at ¶¶ 60, 63. Shannon relied on information about CBSG's financial performance that came directly from CBSG itself. *See id.* ¶ 45. All of these actions demonstrate that Shannon and Alec acted in accordance with the information, advice, and guidance she received from those with more experience (Dean), specialized knowledge and legal training (Pauciulo), and access to CBSG financial information (Perry Abbonizio).

***Second*** (**Shannon**), given that the Pisces investment was identical to those that Shannon had seen produce consistent returns for investors throughout her time at ABFP, *id*. ¶62, there was no reason for Shannon to foresee that by replicating a successful investment with documentation prepared by experienced legal counsel, investors would be harmed. In fact, from Shannon's perspective, the most likely and foreseeable outcome from replicating previous successful funds was continued financial success for the investors. And Shannon's and her family's significant personal investments, *id*. ¶44, demonstrate her personally-held conviction about the legitimacy of the investment.

*Third* **(Albert)***,* Albert and Kohler retained legal counsel, Pauciulo, to ensure compliance with securities laws based on Pauciulo's prior experience as a securities lawyer, and based on the knowledge that Pauciulo had created similar funds. *Id*. ¶ 93.

*Fourth* **(Albert)***,* Albert and Kohler reasonably relied on the advice of Pauciulo who had conducted prior due diligence into Par Funding. *Id.* ¶111. Yet, although Pauciulo was aware of LaForte's criminal background and the regulatory actions against Par Funding, he did not provide this information in the disclosures to potential investors. *Id.* ¶117*. And* unlike Pauciulo, Albert was not aware of LaForte's criminal history nor was Albert aware of any of the regulatory actions at the time of the first offering. *Id*. ¶¶ 112, 114, 117. Moreover, once the exchange offer process started, Albert forwarded the exchange offer notes to Pauciulo which included the Par Funding regulatory actions. Pauciulo, however, failed to disclose them. *See id*. ¶¶ 104-109.

*Fifth* **(all Defendants)**, the SEC has not put forth any evidence—through an expert opinion or otherwise—of the standard for what a reasonable person in the Defendants' position would have done. The SEC's failure to do so is "fatal to its case." *SEC v. Shanahan*, 646 F.3d 536, 545-46 (8th Cir. 2011) (agreeing with the district court that the "SEC presented no evidence, through expert or lay testimony, documentary evidence or otherwise with respect to the degree of care that an ordinarily careful person would use under the same or similar circumstances").[8]

Accordingly, no reasonable jury could conclude that Defendants acted with negligence, much less scienter. Because the SEC cannot prove the required state of mind for any fraud claim, this Court should grant summary judgment for Counts II-VII.

---

[8] Notably, concerning any purported misstatements or omissions related to CBSG's successful track record, SEC cannot provide evidence the Defendants should have discovered the truth about what actually made the investment a financial loser. Where "it would have been difficult for [them] to have discovered the truth," courts find there was not negligence. *Rashid*, 96 F.4th at 241.

## II.    There is No Evidence that Defendants Made Any Misstatements of Material Fact.

The SEC's discovery responses unveil the flimsy nature of the agency's fraud case: generalized claims without any explanation or evidence of when, how, or to whom the statements were made. The alleged misstatements cannot support the SEC's fraud claims (Counts II-VII) for several reasons. *First*, the only statement verbatim quoted by the SEC as being made by Shannon and Alec actually is a representation ***to Pisces*** from Pisces investors. *Second*, all the purported misstatements are nothing more than inactionable puffery or are otherwise not untrue. *Third,* under *Janus Capital Group, Inc. v. First Derivative Traders,* 564 U.S. 135 (2011), Defendants cannot be held liable under Rule 10b-5(b) for others' statements that Defendants disseminated.

### A.  The SEC Has No Evidence of Misstatements in the PPMs or Attachments.

At summary judgment and trial, the SEC's case is limited to the purported misstatements and omissions it specifically identified in its interrogatory responses. *See, e.g., SEC v. King Chuen Tang,* No. C-09-05146 JCS, 2012 U.S. Dist. LEXIS 157, at *61-62, 7172 (N.D. Cal. Jan. 3, 2012) (excluding summary judgment evidence where "the SEC failed to cite to this evidence when asked for the basis for its claims in interrogatories"); *cf. Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1270 (M.D. Fla. 2006) ("Discovery is not a game of blind man's bluff or hide the ball[.]"). Despite providing no specific documents in response to the Defendants' discovery requests and frequently updating its answers to the Defendants' interrogatories up to just over a week before this filing, the SEC makes exactly *one* reference to purported misstatements in the offering materials: a written statement in Section 3.04 of the Exchange Agreement attached to the Supplemental Pisces PPM.  *See* SOF ¶75.

In the latest evidence of the sloppy and cavalier nature with which the SEC has needlessly tormented the lives of the Defendants, the totality of the SEC's specific evidence of written

misrepresentations is a representation by the ***Purchaser of the Notes***, the investors. *See id*. ¶¶ 75, 77.  A cursory review of the document itself reveals that Pisces is defined as the "Issuer," Pisces Parallel is defined as the "Successor Issuer," and the investor is defined as "Purchaser/Investor." *Id.* at SOF Ex. 42, A-1.  Section 3.04 of the Exchange Agreement includes standard representations by the investor in connection with the exchange offering. *Id.* No reasonable jury could conclude that this statement is somehow attributed to Shannon or Alec.

### B.  The Law Requires Misstatements of Fact, But the SEC Alleges Immaterial Corporate Puffery.

Beyond the single written misstatement, the SEC claims that Defendants made multiple *verbal* misstatements: (1) they "touted" the success of the CBSG investment, SOF ¶¶ 29-31; (2) they "communicated that the offering complied with the securities laws…," *id.* ¶¶ 28, 31; and (3) they "communicated" to investors that the PPM contained all the information an investor would need to know, *id.* ¶ 28.  This is the totality of the SEC's misstatement arguments, all advanced without any evidence in support during discovery.

Even if the Court were to permit the SEC to introduce evidence outside the close of the discovery period, these verbal misstatements are inactionable and immaterial as a matter of law. As this Court has recognized, "'vague, generalized, non-verifiable, or mere corporate puffery is immaterial because a reasonable investor would not make a decision based on such a statement.'" MTD Order at 13 (quoting *Thorpe v. Walter Inv. Mgmt., Corp.*, No 1:14-cv-20880-UU, 2014 U.S. Dist. LEXIS 200663, at *35-36 (S.D. Fla. Dec. 23, 2014)). Although this Court allowed the SEC's theories of alleged misstatements to survive dismissal, discovery in this case has revealed that much of the SEC's allegations rest firmly on two *opinion* statements that cannot serve as the basis for misstatement claims or "half-truth" claims, because they are not statements of fact.

18

*First*, case law is clear that statements describing a company as good, strong, successful, solid, or having a track record of success are inactionable puffery. *See, e.g.*, *Thorpe*, 2014 U.S. Dist. LEXIS 200663, at \*35-36 (statements about a company's track record are inactionable puffery); *Next Century Comms. Corp. v. Ellis*, 318 F.3d 1023, 1027-29 (11th Cir. 2003) (same, for statements such as "strong" performance); *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1277 (S.D. Fla. 2017) (same, for statements of "strong" position); *Intertape Polymer Corp. v. Insp. Tech. Inc.*, 725 F. Supp. 2d 1319, 1334–35 (M.D. Fla. 2010) ("industry leading" is "classic puffery").[9]

*Second*, in a similar vein, statements about purported compliance with laws and regulations, and compliance efforts, have been considered immaterial as a matter of law. As the Eleventh Circuit has held, a company's "proclamations that it was devoting 'substantial resources' to its problems, with 'improved results,' as well as its boasts that it was taking a 'leading role' and making 'progress' toward compliance are precisely the sorts of statements that our sister circuits have—we think correctly—deemed puffery and found immaterial as a matter of law." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1321 (11th Cir. 2019). The seminal case on this issue is the Second Circuit's opinion in *Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019), on which *Carvelli* relied. In *Singh*, the Second Circuit affirmed the district court's dismissal of a securities fraud class action complaint based on, among other things, finding that statements that the defendant "established policies and procedures to comply with applicable requirements" were not actionable. 918 F.3d at 60. The Second Circuit held that "[a] reasonable stockholder would not consider these

---

[9] *See also, e.g.*, *In re Aetna Sec. Litig.*, 617 F.3d 272, 284 (3d Cir. 2010) (explaining statements about a company's track record or success are classic forms of immaterial statements that do not "meaningfully alter the total mix of information available to the investing public"); *WyPie Investments, LLC v. Homschek*, No. N14C-08-140 WCC CCLD, 2018 Del. Super. LEXIS 145, at \*15-16 (Del. Super. Ct. Mar. 28, 2018) (concluding that statements describing defendant as "'an established leader' with 'strong store economics' and a 'proven track record'" were mere puffery).

statements important in deciding whether to buy or sell shares of stock. They cannot, therefore, constitute 'material misstatements.'" *Id.* at 63 (cleaned up). The Second Circuit further explained that "general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are too general to cause a reasonable investor to rely upon them." *Id.* (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014)).

Similarly, a Southern District of Florida court held that the following statements were "too vague" to support a viable claim: (i) "culture of compliance — strong independent controls," (ii) "[w]e continue to execute for our clients by delivering strong portfolio performance in a regulatory-compliant matter," and a (iii) "high level of compliance." *Thorpe*, 111 F. Supp. 3d at 1357–58; *see also* MTD Order at 13-14 (noting nonactionable statements included the 'rigor' of . . . processes, the 'efficiency' and 'accuracy' of . . . operations, and . . . 'effective' staff training").

Based on the above, Defendants must be granted summary judgment on verbal misstatements (1)-(2) because each hinges on statements that are clear puffery. It is difficult to imagine more vanilla puffery than the allegedly untrue statements such as "Westhead touted Par Funding and the investment to investors and potential investors, and touted the success of the investment," SOF ¶ 29; "[Alec] touted the MCA company, CBSG [and] CBSG's success," *id.* ¶ 30; and "[Albert] touted the investment opportunity with Par Funding," *id.* ¶ 31.

### C.  Defendants Did Not Have Actual Authority Over the Statements They Made.

Rule 10b-5(b) only governs those who "make" untrue statements or omissions. In *Janus*, the Supreme Court explained that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." 564 U.S. at 142. A person who lacked control over the content or whether and how to communicate a statement thus cannot be liable for the statement under Rule 10b-5(b). *Id.*

Much of the SEC's allegations focuses on the Defendants' purported dissemination of videos and statements of others. SOF ¶¶28-31, 46, 75. This is *not* a basis for misstatement liability under 15 U.S.C. 78j(b) of the Exchange Act and Rule 10b-5(b) thereunder.[10]  As the SEC makes clear, the purported misstatements are by Pauciulo, Dean Vagnozzi, or by CBSG, including direct videos of their statements and marketing materials such as CBSG's brochures. *Id.* ¶¶28-29, 32-35, 74, 84. As noted above, the few vague misstatements that the SEC appears to rely on simply parrot statements by Dean or Pauciulo. *Compare supra* § II(B) with SOF ¶¶ 32-35. Those statements cannot have been "made" by Defendants under Rule 10b-5(b) because they were devised by others. *See Lorenzo v. SEC*, 872 F.3d 578, 587-88 (D.D.C. 2016) (holding that defendant did not "make" statements under Rule 10b-5(b) when he "transmitted statements devised by" the owner of his company).[11]

Summary judgment on this portion of Count III is appropriate to the extent not granted by Defendants' other arguments.

### III.     The SEC Has Not Adequately Alleged or Evidenced Actionable Omissions.

There is no dispute that a pure omissions case is not viable. *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263–64 (2024). Accordingly, determining if a statement is a half-truth "requires identifying affirmative assertions (*i.e.*, 'statements made') before determining if other facts are needed to make those statements 'not misleading.'" *Id.* at 264.

---

[10] The SEC's allegations about purported dissemination of statements of others may, in theory, serve as a basis for liability under the "scheme liability" provisions of the Securities and Exchange Acts. MTD Order at 17-20. However, as detailed in Section IV, for such liability to attach, a party must disseminate such statements with the requisite mental state to deceive and manipulate. There is no such evidence here.

[11] The Supreme Court's decision on appeal did not address the holding that Lorenzo was not a "maker" under Rule 10b-5(b). *Lorenzo v. SEC*, 587 U.S. 71, 76 (2019) ("We took this case on the assumption that Lorenzo was not a 'maker' under subsection (b) of Rule 10b-5, and do not revisit the court's decision on this point.").

Aided by this Court's own research on its behalf, the SEC's garbled omissions theory survived a motion to dismiss based on a Frankenstein-like half-truth theory. However, following discovery, such arguments fail and warrant summary judgment on Counts III and VI (misstatement counts). For a half-truth theory to survive, it must render a statement *of fact* misleading. The SEC has failed to identify any such statement and cannot even identify that the Defendants spoke on the specific subjects at issue.

Omissions are actionable "half-truths" only where the omitted fact was necessary to avoid rendering other statements of fact misleading. *See Macquarie.*, 601 U.S. at 263–64 (2024). Where an omission does not make a specified statement misleading, and no other duty to disclose applies, there is no liability for an omission even if the fact is material and "a reasonable investor would very much like to know that fact." *In re Greenlane Holdings, Inc.*, 511 F. Supp. 3d 1283, 1295 (S.D. Fla. 2021) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)).

Here, the SEC has not identified a single statement that is rendered misleading by not disclosing state regulatory actions against CBSG or the criminal record of CBSG's leader LaForte. Indeed, the SEC has barely identified statements at all, instead broadly relying on a swath of materials that vaguely discuss the success of the CBSG investment. SOF ¶¶ 29-31, 65-66. As detailed above, these purported statements are immaterial corporate puffery and cannot serve as the basis for a half-truth theory. *See* MTD Order at 13-14; *see also, e.g.*, *In re Diebold Nixdorf, Inc. Sec. Litig.*, No. 19-CV-6180 (LAP), 2021 U.S. Dist. LEXIS 62449, at *27 (S.D.N.Y. Mar. 30, 2021) (purported "half-truth" nature of puffery statement "does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment") (quoting *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 97-98 (2d Cir.

2016). That level of generality cannot support a jury verdict and thus cannot survive summary judgment. *See Chapman*, 229 F.3d at 1023.

Even assuming the SEC sufficiently identified statements, it cannot explain how statements about a company's purported "success" or investment potential are in any way undermined by the regulatory or criminal actions the SEC identifies. No reasonable jury could find that any identified statement is rendered untrue by purported omissions. Instead, the SEC appears to be operating on an outdated theory that mentioning a company or its success requires disclosing everything that is potentially unflattering about the company. That is not the law after *Macquarie*. Merely mentioning a company does not require mentioning its history of regulatory issues. And merely mentioning particular people does not require mentioning their criminal history.

Courts carefully parse whether the omitted fact actually renders a statement misleading. In an example similar to this case, a court dismissed the SEC's theory that a private placement memorandum that "'touted [the owner] Baker's years of oil and gas experience'" was misleading for failing to disclose "'Baker's drug and weapons convictions, [the company's] cease-and-desist order from the South Carolina Securities Commissioner for selling unregistered securities, [and] its two Texas Railroad Commission regulatory orders.'" *SEC v. Bowen*, No. 22-CV-1415, 2024 U.S. Dist. LEXIS 127132, at *18 (N.D. Tex. July 17, 2024) (quoting SEC's complaint and brief). The court correctly reasoned that "[i]nformation about orders against [the company] is not necessary to make the statement regarding Baker's oil and gas experience clear and complete," and that speaking about that experience did not "give[] rise to a duty to speak on his unrelated criminal history." *Id.*

Similarly, another court applied *Macquarie* to hold it was not misleading to omit that the "CEO was facing criminal fraud charges in China," because the affirmative statements "merely

stated his background and the company's belief that he would be a competent executive," not that the CEO "had a clean record." *Crivellaro v. Singularity Future Tech. Ltd.*, No. 22-CV-07499, 2024 U.S. Dist. LEXIS 228061, at *11-12 (E.D.N.Y. Dec. 17, 2024). Indeed, "the half-truth theory of liability requires the omission to be on the same topic as the statement made." *SEC v. Mapp*, 240 F. Supp. 3d 569, 584 (E.D. Tex. 2017) (collecting cases and holding that defendant did not state a half-truth by touting an investment without disclosing that he was compensated for obtaining investors).

Relatedly, general statements about a company being "a success" or "a leader" do not require disclosing every potential downside to an investment in that company. Another court in this Circuit recently held that, despite the company not disclosing its "labor crisis" and "capacity constraints," the following positive statements were not misleading: the company was "well positioned," "set to continue to outpace the industry," and "pursuing the right strategies to drive continued market share gains and sustainable growth." *See, e.g.*, *City of Southfield Gen. Emps.' Ret. Sys. v. Nat'l Vision Holdings, Inc.*, No. 1:23-cv-0425-VMC, 2024 U.S. Dist. LEXIS 58937, at *47 (N.D. Ga. Mar. 30, 2024) (internal quotation marks omitted).

Binding precedent contradicts the SEC's unreasonable apparent position that all negative details must be disclosed when positive information is disclosed. For example, in *FindWhat Investor Grp. v. FindWhat.com*, the Eleventh Circuit held that a statement about the company's increased revenue was not misleading despite the defendant not disclosing that the "only reason for the purported increase in revenue was the inclusion of illegitimate traffic, which would inevitably have to be removed." 658 F.3d 1282, 1305 (11th Cir. 2011) (cleaned up). The court reasoned this was not a misleading half-truth because the defendant did not mention the subject about which plaintiff complained: "the underlying quality of MIVA's click traffic." *Id. at* 1306.

Consistent and binding caselaw forecloses the SEC's fraud by omission theory, warranting summary judgment.

**IV.     Without Any Actionable False or Misleading Statements, There is No Support for the SEC's Allegations of Scheme Liability in This Case.**

Devoid of any actual misstatements or actionable omissions by the Defendants, the SEC's remaining fraud theory is based solely on the theory that Defendants disseminated misstatements or misleading omissions. *See* SOF ¶¶ 28-31. The SEC does not dispute that such a theory of scheme liability depends on the underlying false or misleading statements being actionable. After all, *Lorenzo v. SEC* only recognized scheme liability could be based on "'the dissemination of *false or misleading* statements with intent to defraud.'" MTD Order at 18 (quoting *Lorenzo v. SEC*, 587 U.S. 71, 74 (2019)) (emphasis added). There is no precedent holding that dissemination of inactionable statements is a violation of the scheme liability laws (17 CFR § 240.10b-5(a) and (c) and Section 17(a)(1) and (3)). On the contrary, cases interpreting *Lorenzo* have emphasized that the Supreme Court held "'only that 'dissemination of *false or misleading* statements with intent to defraud' does come within the scheme subsections.'" MTD Order at 19 (quoting *SEC v. Rio Tinto*, 41 F.4th 47, 53 (2d Cir. 2022)) (emphasis added).

Because none of those alleged misstatements or misleading omissions are actionable for the reasons explained above in Sections II and III, there can be no scheme liability.  Moreover, as set forth in detail in Section I, none of the Defendants acted with the requisite mental state to be held liable for the dissemination of others' statements, whether true or false.  Accordingly, summary judgment must be granted in the Defendants' favor on Counts II, IV, V, and VII.

<u>**CONCLUSION**</u>

Discovery has shown that the SEC's case is based not on evidence but on the SEC's inexplicable desire to pressure settlements related to the CBSG/Par Funding fraud. The evidence

shows that these Defendants were not fraudsters—some were even victims. Because the SEC has

no competent summary judgment evidence to support its fraud claims, Counts II-VII, this Court

should grant Defendants summary judgment on those claims.

Dated: February 18, 2025                         Respectfully submitted,

                                                 */s/ Ellen Ross Belfer*
                                                 Ellen Ross Belfer
                                                 Fla Bar No. 685208
                                                 Alec H. Schultz
                                                 Fla Bar No. 35022
                                                 HILGERS GRABEN PLLC
                                                 1221 Brickell Avenue, Suite 900
                                                 Miami, Florida 33131
                                                 Telephone: 239-378-7149
                                                 Email: ebelfer@hilgersgraben.com
                                                 Email: aschultz@hilgersgraben.com

                                                 Isabel Peraza
                                                 Fla Bar No. 1027356
                                                 601 Pennsylvania Ave. NW
                                                 South Building, Suite 900
                                                 Washington, DC 20004
                                                 Telephone: 305-701-9289
                                                 Email: iperaza@hilgersgraben.com

                                                 Scott Mascianica (Pro Hac Vice)
                                                 7859 Walnut Hill Lane, Suite 335
                                                 Dallas, TX 75230
                                                 Telephone: (402) 218-2106
                                                 Email: smascianica@hilgersgraben.com

                                                 William Burgess (Pro Hac Vice)
                                                 1230 Peachtree Street N.E., 19th Floor
                                                 Atlanta, GA 30309
                                                 Telephone: 404-595-7747
                                                 Email: wburgess@hilgersgraben.com

                                                 *Counsel for Defendant Shannon Westhead*

                                                 **BOCHETTO & LENTZ, P.C.**
                                                 1524 Locust Street
                                                 Philadelphia, PA 19102
                                                 Telephone: 215-735-3900

Fax: 215-735-2455
Email: mminsky@bochettoandlentz.com
         gbochetto@bochettoandlentz.com

By:   */s/ George Bochetto*
         George Bochetto, Esquire
         *Pro Hac Vice*
         Matthew L. Minsky, Esquire
         FBN: 1033408
         *Attorney for Defendants Alec*
         *Vagnozzi, Pisces Income Fund, LLC,*
         *Pisces Income Fund Parallel, LLC,*
         *Albert Vagnozzi, Capricorn Income*
         *Fund, I, LLC and Capricorn Income*
         *Fund Parallel, LLC*

HAINES & ASSOCIATES

*/s/ Clifford E. Haines*
Clifford E. Haines
*Admitted Pro Hac Vice*
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, Pennsylvania 19107
Telephone: (215) 246-2200
chaines@haines-law.com
*Lead Counsel to the Tierney Defendants*

-and-

MINSKER LAW PLLC
Jonathan E. Minsker
Florida Bar No. 38120
1100 Biscayne Blvd., Ste. 3701
Miami, Florida 33132
Telephone: (786) 988-1020
jminsker@minskerlaw.com
*Local Counsel to the Tierney Defendants*
*for Defendants Michael Tierney, Merchant*
*Services Income Fund, LLC and Merchant*
*Services Income Fund Parallel, LLC*

27

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 18, 2025, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF.

<u>*s/ Ellen Ross Belfer*            </u>
Ellen Ross Belfer
