**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:23-cv-23749-RAR**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**SHANNON WESTHEAD,**
**ALEC VAGNOZZI,**
**PISCES INCOME FUND, LLC,**
**PISCES INCOME FUND PARALLEL, LLC,**
**ALBERT VAGNOZZI,**
**CAPRICORN INCOME FUND I, LLC,**
**CAPRICORN INCOME FUND PARALLEL, LLC,**
**MICHAEL TIERNEY,**
**MERCHANT SERVICES INCOME FUND, LLC,**
**and MERCHANT SERVICES**
**INCOME FUND PARALLEL, LLC,**

**Defendants.**
_____________________________________/

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**MOTION FOR FINAL JUDGMENTS AGAINST**
**DEFENDANTS ALEC VAGNOZZI, ALBERT VAGNOZZI, AND MICHAEL TIERNEY**

## TABLE OF CONTENTS


| Section | Page |
|---|---|
| **I. Relevant Procedural History** | 1 |
| **II. The Facts Alleged in the Amended Complaint Are Accepted as and Deemed True for This Motion** | 3 |
| **III. The Factual Allegations in the Amended Complaint** | 3 |
| A. The CBSG Unregistered, Fraudulent Offering | 4 |
| B. Alec Vagnozzi's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act | 5 |
| C. Albert Vagnozzi's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act | 7 |
| D. Tierney's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act | 9 |
| **IV. The Court Should Impose Permanent Injunctive Relief Against Alec Vagnozzi, Albert Vagnozzi, and Tierney** | 12 |
| **V. Monetary Relief** | 15 |
| A. The Court Should Order Disgorgement | 15 |
| i. Disgorgement Against Alec Vagnozzi | 16 |
| ii. Disgorgement Against Albert Vagnozzi | 16 |
| iii. Disgorgement Against Tierney | 17 |
| B. The Court Should Order Prejudgment Interest | 17 |
| C. The Court Should Order Civil Penalties | 18 |
| i. $75,000 Civil Penalty Against Alec Vagnozzi | 20 |

| Section | Page |
|---|---|
| ii. $236,450 Civil Penalties Against Albert Vagnozzi and Tierney | 22 |
| **VI. Conclusion** | 26 |
| **Certificate of Conferral** | 27 |


**TABLE OF CASES**


| Authority | Page(s) |
|---|---|
| *Commodity Futures Trading Comm'n v. Tayeh*, 848 F. App'x. 827 (11th Cir. 2021) | 16 |
| *Kokesh v. SEC*, 137 S. Ct. 1635 (2017) | 15 |
| *Liu v. SEC*, 140 S. Ct. 1936 (2020) | 15, 22 |
| *SEC v. Burroughs*, No. 4:21-cv-994 (E.D. Tex. Jan. 7, 2022) | 22 |
| *SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004) | 15 |
| *SEC v. Carrillo*, 325 F.3d 1268 (11th Cir. 2003) | 17 |
| *SEC v. Complete Bus. Solutions Grp., Inc., et al.*, No. 20-cv-81205-RAR (S.D. Fla.) | 15, 20, 24 |
| *SEC v. ETS Payphones, Inc.*, 408 F.3d 727 (11th Cir. 2005) | 15 |
| *SEC v. Fernandez*, No. 0:23-cv-61816-WPD (S.D. Fla. Sept. 22, 2023) | 15 |
| *SEC v. Fettner*, No. 9:19-cv-80613-RLR (S.D. Fla. May 30, 2019) | 13 |
| *SEC v. Filoramo*, No. 23-cv-61858-WPD (S.D. Fla. Jan. 8, 2024) | 13 |
| *SEC v. Fowler*, 6 F.4th 255 (2d Cir. 2021) | 16 |

| Authority | Page(s) |
|---|---|
| *SEC v. Goble*, 682 F.3d 934 (11th Cir. 2012) | 12, 13, 14 |
| *SEC v. Huff*, 758 F. Supp. 2d 1288 (S.D. Fla. 2010) | 17, 20 |
| *SEC v. Earle,* No. 3:22-cv-01914-H-SBC (S.D. Cal. Mar. 17, 2025) | 22 |
| *SEC v. Karina Fernandez*, No. 24-cv-61774 (S.D. Fla. Apr. 15, 2025) | 26 |
| *SEC v. Lyndon*, 39 F. Supp. 3d 1113 (D. Haw. 2014) | 18 |
| *SEC v. Marshall*, No. 2:17-cv-02189, 2020 WL 3047470 (D. Nev. June 8, 2020) | 3 |
| *SEC v. Mizrahi*, No. CV 19-2284, 2020 WL 6114913 (C.D. Cal. Oct. 5, 2020) | 3 |
| *SEC v. Monterosso*, 756 F.3d 1326 (11th Cir. 2014) | 18, 19 |
| *SEC v. Moran*, 944 F. Supp. 286 (S.D.N.Y. 1996) | 6, 17 |
| *SEC v. Natural Diamonds Invest. Co.*, No. 19-cv-80633-RLR (S.D. Fla. Oct. 13, 2023) | 13, 14 |
| *SEC v. N. Am. Clearing, Inc.*, 656 Fed. App'x 969 (11th Cir. 2016) | 14 |
| *SEC v. Palmisano*, 135 F.3d 860 (2d Cir. 1998) | 18 |
| *SEC v. Stuart*, No. 25-cv-00761 (D. Md. Mar. 26, 2025) | 26 |
| *SEC v. Ruiz*, No. 0:22-cv-61609-WPD (S.D. Fla. Nov. 19, 2024) | 15 |
| *SEC v. Schneider*, No. 9:17-cv-81142-RLR (S.D. Fla. Apr. 5, 2019) | 13 |
| *SEC v. Toller Stern Fin. LLC*, No. 1:24-cv-23370-JB (S.D. Fla. Oct. 15, 2025) | 15 |
| *SEC v. Tourre*, 4 F. Supp. 3d 579 (S.D.N.Y. 2014) | 19 |

| **Authority** | **Page(s)** |
| --- | --- |
| *SEC v. Warren*, 534 F.3d 1368 (11th Cir. 2008) | 3, 15, 18 |
| *Starbucks v. McKinney*, 144 S. Ct. 1570 (2024) | 12 |
| *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) | 12 |

Plaintiff Securities and Exchange Commission (the "Commission") moves for the entry of Final Judgments against Defendants Alec Vagnozzi, Albert Vagnozzi, and Michael Tierney ("Tierney") (collectively, "Defendants") that: (1) impose permanent injunctive relief, which the Court has already ordered in its prior consented-to bifurcated judgments entered against Defendants [ECF Nos. 203-205]; (2) order (a) Alec Vagnozzi to pay disgorgement of $128,500, prejudgment interest of $15,002.82, and a civil penalty of $75,000, for a total of $218,502.82; (b) Albert Vagnozzi to pay disgorgement of $969,686.29, prejudgment interest of $113,214.24, and a civil penalty of $236,450, for a total of $1,319,350.53; and (c) Tierney to pay disgorgement of $603,315.43, prejudgment interest of $70,439.16, and a civil penalty of $236,450, for a total of $910,204.59.

## I. RELEVANT PROCEDURAL HISTORY

On September 29, 2023, the Commission filed its Complaint against Defendants and others[1] for their roles as agent fund managers in the unregistered securities offering of Complete Business Solutions Group ("CBSG"), a $500 million Ponzi scheme. The Commission alleged that Defendants violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), and Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 thereunder.[2] *See* Complaint, ECF No. 1.

---

[1] The Commission also charged Shannon Westhead ("Westhead") who, with Alec Vagnozzi, formed and operated Pisces Income Fund, LLC and Pisces Income Fund Parallel, LLC (collectively, "Pisces"), and the corporate entities through which Albert Vagnozzi and Tierney participated in the CBSG unregistered offering, Capricorn Income Fund I, LLC and Capricorn Income Fund Parallel, LLC (collectively, "Capricorn"), and Merchant Services Income Fund, LLC and Merchant Services Income Fund Parallel, LLC (collectively, "Merchant") (collectively with Pisces and Capricorn, the "Corporate Defendants"). Per their settlements, Final Judgments have been entered against Westhead and the Corporate Defendants. [ECF Nos. 199-202].

[2] The Corporate Defendants were charged only with violations of the securities registration provisions, specifically, Sections 5(a) and 5(c) of the Securities Act.

On March 14, 2025, the parties notified the Court that they had reached a settlement agreement which, if approved by the Commission, would obviate the need for trial. ECF No. 191. On July 14, 2025, the Commission notified the Court that the Commission had approved the proposed settlement, and moved to amend the Complaint. ECF No. 194. Pursuant to that settlement, the Commission, among other things, agreed to dismiss the scienter-based claims against Defendants, each of whom consented to the entry of bifurcated judgments providing permanent injunctive relief against all violations alleged in the Amended Complaint. *See* Consents of Alec Vagnozzi [ECF No. 194-4], Albert Vagnozzi [ECF No. 195-2], and Tierney [ECF No. 195-6]. The SEC's Amended Complaint was entered on July 15, 2025.[3] ECF No. 197.

On July 21, 2025, the Court entered consented-to bifurcated judgments against each of the Defendants providing permanent injunctive relief for all violations alleged in the Amended Complaint. ECF Nos. 203-205. The judgments against Defendants also provide that "upon motion of the Commission, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. §77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3), and if so, the amount(s) of the disgorgement and/or civil penalty." *See* ECF Nos. 203-205 at Section II.

The Commission now files this motion seeking entry of final judgments against Defendants incorporating the previously consented-to permanent injunctive relief, and ordering Defendants to pay disgorgement, with prejudgment interest, and civil penalties in the amounts set forth herein. Entry of final judgments against Defendants will resolve all remaining claims in this case.

---

[3] In addition to correcting several scrivener's errors and updating ages of the individual defendants, the Amended Complaint dropped the Commission's claims under Section 17(a)(1) of the Securities Act, Section 10(b) and Rule 10b-5 of the Exchange Act, and claims for monetary relief against the Corporate Defendants, all of which consented through their principals to the entry of injunctive relief on the registration charges.

## II. THE FACTS ALLEGED IN THE AMENDED COMPLAINT ARE ACCEPTED AS AND DEEMED TRUE FOR THIS MOTION

Under their consents, Alec Vagnozzi, Albert Vagnozzi, and Tierney agreed that, for purposes of this motion, the allegations of the Amended Complaint [ECF No. 197] will be accepted as true by the Court. *See* ECF Nos. 195-4 at ¶ 3(c); 195-2 at ¶ 3(c); 195-6 at ¶ 3(c). Indeed, Defendants are precluded from arguing that they did not violate the subject provisions of the federal securities laws. *Id*. It is appropriate for the Court to order monetary relief relying on the allegations in the complaint when the parties agree to do so. *See e.g.*, *SEC v. Mizrahi, et al.*, No. CV 19-2284, 2020 WL 6114913, at *2 (C.D. Cal. Oct. 5, 2020) (providing in similar procedural posture that "[u]nder the terms of the consent judgment, [defendant] is not allowed to contest the underlying facts alleged in the Complaint, and he has agreed for the purposes of this motion that the Court shall deem the allegations of the Complaint to be true."); *SEC v. Marshall*, No. 2:17-cv-02189, 2020 WL 3047470, at *1 n.4 (D. Nev. June 8, 2020) (noting that in ordering monetary relief, the court had "drawn the background from the complaint allegations, which [it] accepted as true for purposes of this motion" based on defendant's consent to judgment); *see also SEC v. Warren*, 534 F.3d 1368 (11th Cir. 2008) (per curiam) (affirming judgment obtained after defendant consented to court determining disgorgement and civil penalty amounts). Accordingly, for purposes of this motion, the allegations of the Amended Complaint are uncontested, and the Court should construe them as true.

## III. THE FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT

These allegations, which are deemed admitted, are most relevant to determining the amount of disgorgement, with prejudgment interest, and civil penalties to impose against Defendants.

### A. The CBSG Unregistered, Fraudulent Offering

As pled in the Amended Complaint [ECF No. 197], this case stems from the unregistered CBSG fraudulent securities offering which raised more than $500 million from investors nationwide through a network of agent fund managers operating their own securities offerings in an orchestrated effort to raise funds for CBSG in exchange for CBSG promissory notes. Am. Compl. ¶ 1. From August 2012 to July 2020, CBSG was in the business of making short-term loans to small businesses and was led by a previously convicted felon, Joseph LaForte ("LaForte"). *Id.* ¶¶ 7, 21, 27, 28, and 33-37. Before operating CBSG, LaForte was convicted in New York on state charges of grand larceny and money laundering, and in New Jersey on federal charges of conspiracy to operate an illegal gambling business. *Id.* ¶¶ 27-28.

CBSG offered and sold securities in the form of promissory notes through nationwide unregistered securities offerings for which no registration exemption applied. *Id.* ¶¶ 34-35. CBSG used a network of individuals and investment funds to sell promissory notes to the public. *Id.* ¶ 36.

Between 2018-2020, CBSG was the subject of, and disciplined in, several state regulatory actions, in Pennsylvania, New Jersey, and Texas, for securities law violations, including for using unregistered agents to offer and sell promissory notes. *Id.* ¶¶ 22-24 and 38-42. In the Texas regulatory action, the Texas State Securities Board issued an emergency cease and desist order against CBSG and others alleging fraud (and registration violations) based on the failure to disclose to investors, among other things, the previous regulatory orders by Pennsylvania and New Jersey against CBSG. *Id.* ¶ 24. As a workaround to the regulatory actions, CBSG began concealing its compensation to sales agents by having sales agents create their own funds ("Agent Funds") to raise money for the unregistered CBSG offering. *Id.* ¶ 43.

Agent Funds issued their own promissory notes to investors and then pooled and transferred investor money to CBSG two times per month in exchange for promissory notes issued by CBSG to the Agent Funds. *Id.* ¶ 45. CBSG would then compensate the Agent Funds (and the Agent Fund managers such as Defendants) by paying higher interest returns than the Agent Funds paid in turn to the investors. *Id.* ¶ 46. In other words, the "spread" between the CBSG interest rate paid to the Agent Funds and the interest rate the Agent Funds paid to their investors was the compensation CBSG paid to the Agent Funds, and their managers, for raising investor funds. *Id.* ¶ 47. Alec Vagnozzi, Albert Vagnozzi, Tierney, and their companies were CBSG agent fund managers. *Id.* ¶ 2.

In May 2023, LaForte and several CBSG principals were indicted in the Eastern District of Pennsylvania and charged with participating in a conspiracy to commit wire and securities fraud. *Id.* ¶¶ 25, 30. LaForte and several CBSG principals have since pleaded guilty. *Id.*

No registration statement was filed with the Commission or was in effect at the time of the offerings, and there was no applicable registration exemption. *Id.* ¶ 49.

### B. Alec Vagnozzi's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act

In October 2019, Alec Vagnozzi joined Pisces, an Agent Fund formed in September 2019 by Defendant Westhead, to raise investor funds for CBSG through the offer and sale of Pisces promissory notes. Investor funds raised from the sale of Pisces notes were transferred to CBSG in exchange for CBSG promissory notes issued, and made payable, to Pisces. *Id.* ¶¶ 76-80. Alec Vagnozzi co-owned and co-managed Pisces with Westhead. *Id.* ¶ 13. From October 2019 to at least March 2020, Pisces raised at least $15.4 million from more than 80 investors, and issued promissory notes to investors indicating that investors would be paid interest between 12%-to-14% within 12 months. *Id.* ¶¶ 78-80. In that same period, Pisces transferred to CBSG the investor

funds, and CBSG issued promissory notes to Pisces that provided for a 20% interest rate to be paid to Pisces through "a monthly distribution payment." *Id.* ¶¶ 98-99. The difference between what CBSG paid Pisces (20% interest) and what Pisces paid investors (12%-to-14% interest) was the compensation Pisces (and indirectly Alec Vagnozzi) received for raising investor funds for CBSG. *Id.* ¶ 100. CBSG paid Pisces hundreds of thousands of dollars in compensation for raising investor funds, and Alec Vagnozzi personally received $128,000 from Pisces as compensation. *Id.* ¶¶ 101-02.

Alec Vagnozzi solicited investors through telephone calls, emails, and in-person meetings to raise funds for CBSG's unregistered offering. *Id.* ¶ 81. He solicited investors by providing private placement memoranda ("PPM") and subscription agreements by mail and at in-person meetings. *Id.* ¶ 82. While soliciting investors, Alec Vagnozzi told investors and prospective investors that the offerings complied with the securities laws and that the PPMs contained all the information a person would want to know to make informed investment decisions. *Id.* ¶ 85. The Pisces PPM also disclosed that the promissory notes involved "a high degree of risk" and that Pisces "is an early-stage company that has been organized to operate as a lending company to merchant cash advance businesses." *Id.* ¶ 84. In fact, Pisces only loaned funds to one business, CBSG. *See generally* Am. Compl. Between October 2019 and March 2020, Pisces, through Alec Vagnozzi, touted CBSG's track record as a leader in the merchant cash advance industry but failed to disclose CBSG's regulatory history and LaForte's criminal background. *Id.* ¶ 86.

In March 2020, Pisces notified investors that, because of the Covid-19 pandemic, CBSG would default on notes issued to Agent Funds. *Id.* ¶ 9. That same month, Alec Vagnozzi created Defendant Pisces Income Fund Parallel, LLC ("Pisces Parallel"), which offered existing Pisces investors the option to: (a) either restructure their Pisces promissory notes into new notes issued

by Pisces Parallel promising to pay 4% annual returns and return of principal within seven years (instead of the initial Pisces promissory notes that promised 12 to 14% returns and return of principal within one year); or (b) face nonpayment on existing Pisces notes. *Id.* ¶¶ 103-04. Alec Vagnozzi told investors that they had three days to accept this Pisces Parallel offer, and investors exchanged their notes around May 2020. *Id.* ¶¶ 105-6.

Alec Vagnozzi knew about: (a) the Pennsylvania regulatory action by no later than October 2019; (b) the New Jersey regulatory action by no later than April 2020; (c) the Texas regulatory action by no later than April 2020; and (d) rumors of LaForte's criminal background in late 2019, although he did not believe it was his responsibility to follow up for additional information. *Id.* ¶¶ 88, 90, 92, and 94. When soliciting Pisces investors for the Pisces Parallel offering, Alec Vagnozzi and Pisces failed to disclose to investors the CBSG regulatory actions in Texas, Pennsylvania, and New Jersey. *Id.* ¶ 107.

Between October 2019 and July 2020, Alec Vagnozzi was not registered as a broker or dealer with the Commission and was not associated with a broker or dealer registered with the Commission. *Id.* ¶ 144.

### C. Albert Vagnozzi's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act

In May 2018, Albert Vagnozzi formed Defendant Capricorn, an Agent Fund, to raise investor funds for CBSG through the offer and sale of Capricorn promissory notes, and then transferred investor funds to CBSG in exchange for CBSG promissory notes issued, and made payable, to Capricorn. *Id.* ¶ 50. From May 2018 through March 2020, Albert Vagnozzi offered and sold securities in the form of Capricorn promissory notes. *Id.* ¶ 51.

Albert Vagnozzi executed the Capricorn promissory notes, with durations of 12 months, on behalf of Capricorn, and Albert Vagnozzi negotiated interest rates paid to investors based on

the size of the investment. *Id.* ¶ 52-53. Albert Vagnozzi solicited investors through telephone calls, emails, and in-person meetings, and provided investors with PPMs and subscription agreements via mail and in-person meetings. *Id.* ¶¶ 54-55. The Capricorn PPM falsely told investors and prospective investors that the offering complied with securities laws and that the PPM contained all the information a person would want to know to make an informed investment decision. *Id.* ¶ 57. The Capricorn PPM specifically said that the investment involved "a high degree of risk" and that Capricorn "is an early-stage company that has been organized as a lending company to merchant cash advance businesses." *Id.* ¶ 56. Albert Vagnozzi knew that Capricorn only invested in CBSG promissory notes, but the PPM omitted this information and instead told investors that Capricorn generally invested in merchant cash advance businesses. *Id.* ¶ 58. During in-person and telephone communications with investors, Albert Vagnozzi and Capricorn touted CBSG's record as a leader in the merchant cash advance industry, but failed to disclose CBSG's regulatory history. *Id.* ¶ 59.

Albert Vagnozzi and Capricorn raised at least $32 million from more than 110 investors, and transferred those funds to CBSG in exchange for CBSG promissory notes issued to Capricorn. *Id.* ¶ 67.[4] Albert Vagnozzi and Capricorn received interest of 18% from the CBSG promissory notes. *Id.* ¶¶ 67 and 69. Albert Vagnozzi and Capricorn then used funds paid by CBSG to pay investors 12%-to-14% interest on amounts invested and kept the remaining 4%-to-6% as compensation for raising investor funds for the unregistered CBSG offering. *Id.* ¶ 70. From May

[4] The Amended Complaint erroneously states that Albert Vagnozzi and Capricorn raised $18.5 million in investor funds. *See* Am. Compl. ¶ 67. When the Commission amended, it did not make substantive changes to its pleadings other than dismissing claims and it did not update that figure. However, as documented by the February 18, 2025, Declaration of Bradley D. Sharp, the Receiver's forensic accountant, Albert Vagnozzi and Capricorn raised $32,497,211.16. ECF No. 154-1 at ¶ 23. This discrepancy does not alter the Commission's disgorgement analysis.

2018 through March 2020, CBSG paid Capricorn $3.96 million. *Id.* ¶ 71. Capricorn paid investors $2.75 million, and the balance was Capricorn's compensation for raising investor funds. *Id.* From Capricorn's compensation, at least $969,000 was paid to Albert Vagnozzi as compensation for raising investor funds. *Id.* ¶ 72.

In April 2020, Albert Vagnozzi and Defendant Capricorn Income Fund Parallel, LLC ("Capricorn Parallel"), a new agent fund Albert Vagnozzi created because CBSG was defaulting on its promissory notes to agent funds supposedly caused by the Covid-19 pandemic, offered new promissory notes to Capricorn's existing investors, at lower interest rates, 4%-to-6%, and longer, seven-year, maturity periods. *Id.* ¶¶ 8, 9, 17, 73-75. Albert Vagnozzi continued operating Capricorn Parallel until at least July 2020. *Id.* ¶ 135.

Albert Vagnozzi knew about the Pennsylvania regulatory action by December 2018 and the New Jersey and Texas regulatory actions by no later than April 2020. *Id.* ¶¶ 59-60. After learning about the Pennsylvania regulatory action, Albert Vagnozzi sold several promissory notes to investors. *See id.* ¶¶ 62-65.

Between May 2018 and July 2020, Albert Vagnozzi was not registered as a broker or dealer with the Commission and was not associated with a broker or dealer registered with the Commission. *Id.* ¶ 144.

### D. Tierney's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act

In June 2018, Tierney formed Defendant Merchant, an Agent Fund, to raise investor funds for CBSG through the offer and sale of Merchant promissory notes, and then transferred the investor funds to CBSG in exchange for CBSG promissory notes issued to Merchant. *Id.* ¶ 108. From August 2018 through March 2020, Tierney offered and sold securities in the form of Merchant promissory notes. *Id.* ¶ 109.

On behalf of Merchant, Tierney executed promissory notes with investors promising 12%-to-14% returns, with monthly interest payments and a full return of principal at the end of a 12-month term. *Id.* ¶¶ 112-13 and 125. From August 2018 through at least March 2020, Tierney solicited investors through telephone calls, emails, and in-person meetings, and provided PPMs and subscription agreements to investors through the mail or during in-person meetings. *Id.* ¶¶ 114-15. Tierney and Merchant also processed investment paperwork and handled investor funds on behalf of investors. *Id.* ¶ 116. Merchant's PPMs stated that investments involved "a high degree of risk" and that proceeds from the sales of the promissory notes would be used to purchase notes and debt from companies providing merchant cash advance financing. *Id.* ¶ 117. Tierney also told investors and prospective investors that the Merchant offerings complied with the securities laws and that the PPMs contained all the information a person would want to know in order to make an informed investment decision. *Id.* ¶ 120.

From August 2018 through April 2020, Tierney and Merchant raised at least $31.2 million for CBSG from more than 70 investors through the sale of Merchant promissory notes. Sharp Dec. at ¶ 27 [ECF No. 154-1].[5] Tierney and Merchant sent the investor funds to CBSG, which issued to Merchant promissory notes that provided a 20% interest rate to be paid through a "monthly distribution payment." Am. Compl. ¶¶ 126-27. The difference between the interest CBSG paid (20%) to Merchant, and the interest Merchant paid (12%-to-14%) to investors was the compensation Merchant (and indirectly Tierney) received for raising investor funds for CBSG. *Id.*

[5] The Amended Complaint alleges that Tierney raised $32.2 million from investors. Am. Compl. at ¶ 125. However, the Receiver's forensic accountant recently filed a declaration indicating that Tierney raised $31,290,919. Sharp Dec. at ¶ 27 [ECF No. 154-1]. For purposes of this motion, the Commission relies on Mr. Sharp's analysis. In any event, this discrepancy does not alter the Commission's disgorgement analysis.

¶ 128. From Merchant's compensation, at least $603,315.43 was paid to Tierney as compensation. *See infra* Section V.A.iii.

From April 2020 until July 2020, Tierney and Defendant Merchant Services Income Fund Parallel, LLC ("Merchant Parallel"), a new agent fund Tierney created, offered new promissory notes to Merchant's existing investors, at lower, 4% interest rates and longer, seven-year, maturity periods. *Id.* ¶¶ 110 and 129-131. Tierney and Merchant Parallel offered existing Merchant investors the "option" to: (i) either restructure Merchant promissory notes into new notes issued by Merchant Parallel that promised 4% annual returns and return of principal in seven years (instead of the initial Merchant promissory notes which promised 12%-to-14% interest with a return of principal in one year); or (ii) face nonpayment on existing Merchant promissory notes. *Id.* ¶ 130. In about May 2020, Merchant investors exchanged their Merchant promissory notes for promissory notes issued by Merchant Parallel. *Id.* ¶ 131. When soliciting the Merchant investors to invest in Merchant Parallel, Tierney and Merchant touted CBSG but failed to disclose the Texas, Pennsylvania, or New Jersey regulatory actions against CBSG, or LaForte's criminal history. *Id.* ¶¶ 118-122 and 132.

Tierney knew, by no later than November 2018, about LaForte's criminal record and that LaForte managed CBSG. *Id.* ¶ 119. By April 2020, Tierney knew about the Pennsylvania, New Jersey, and Texas regulatory actions against CBSG. *Id.* ¶ 118. Yet Tierney did not tell investors and prospective investors about this information. *See id.* ¶¶ 121-25. Rather, Tierney touted to investors CBSG's record as a leader in the merchant cash advance industry. *Id.* ¶ 121.

Between August 2018 and July 2020, Tierney was not registered as a broker or dealer with the Commission and was not associated with a broker or dealer registered with the Commission. *Id.* ¶ 144.

## IV. THE COURT SHOULD IMPOSE PERMANENT INJUNCTIVE RELIEF AGAINST ALEC VAGNOZZI, ALBERT VAGNOZZI, AND TIERNEY

The proposed Final Judgments, attached as Exhibits 1-3, incorporate the permanent injunctive relief that Alec Vagnozzi, Albert Vagnozzi, and Tierney consented to [ECF Nos. 195-4, 195-2, and 195-6], and which was already entered by the Court [ECF Nos. 203-205]. By prohibiting conduct tied to the allegations in the Amended Complaint, *see, e.g.*, ECF No. 197 at ¶¶ 1-7, 50-132, the proposed Final Judgments satisfy the test for assessing permanent injunctive relief. *See Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024) ("[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity," which, with regard to injunctive relief, includes using "the traditional four-part test" set forth in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)).[6]

The proposed Final Judgments also comply with the requirements for entry of injunctive relief under Federal Rule of Civil Procedure 65(d), and Eleventh Circuit requirements under *SEC v. Goble*, 682 F.3d 934, 951-52 (11th Cir. 2012). Rule 65(d) provides that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts sought to be restrained or required." *See* Fed. R. Civ. P. 65(d). Eleventh Circuit law likewise requires that judgments for injunctive relief describe in reasonable detail the enjoined acts or conduct. *Goble*, 682 F.3d at 951-52. The *Goble* court, while questioning whether merely reciting

---

[6] *See Winter*, 555 U.S. at 32 (providing that a party seeking a permanent injunction must demonstrate (1) actual success on the merits, (2) irreparable harm will likely result in the absence of the injunction, (3) the balance of the equities favors the party seeking the injunction, and (4) the injunction is in the public interest). All four *Winter* elements are met, and Defendants consent to the injunctions (which have already been entered).

the language of a statute in an injunction adequately informs a defendant of the prohibited conduct, also explained that "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." *Id.* at 952.

For broadly constructed statutes and rules, such as Securities Act Sections 17(a)(2) and (3), district courts in this Circuit have entered injunctions consistent with *Goble* that incorporate the actual language of the relevant statute or rule and that also specifically describe the acts required of the person enjoined. *See, e.g.*, *SEC v. Natural Diamonds Invest. Co.,* No. 19-cv-80633-RLR (S.D. Fla. Oct. 13, 2023) (entering final judgments of permanent injunction and other relief against the individual defendants that included specific language identifying prohibited conduct); *SEC v. Filoramo*, No. 23-cv-61858-WPD (S.D. Fla. Jan. 8, 2024) (same); *SEC v. Fettner*, No. 9:19-cv-80613-RLR (S.D. Fla. May 30, 2019) (same); *SEC v. Schneider*, No. 9:17-cv-81142-RLR (S.D. Fla. Apr. 5, 2019) (same).

Here, the proposed Final Judgments (Exs. 1-3) state the reasons for entry of permanent injunctions: the Commission filed the Amended Complaint against Defendants and each consented to injunctive relief. ECF Nos. 195-2, 195-4, and 195-6. Satisfying the *Goble* notice requirements, the proposed Final Judgments then specify the terms of the injunctions and sufficiently notify Defendants of the restrained conduct. As to Securities Act Sections 17(a)(2) and (3), the proposed Final Judgments incorporate the language of the statute and include the following conduct prohibitions specific to the conduct of each of the Defendants:

> **[enjoining them from] (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about: (A) the safety of any investment in or offering of**

> **securities; (B) whether such investment or such offering of securities complies with the federal securities laws; or (C) the regulatory or criminal history of an issuer and/or its management.**

Exs. 1-3 at p. 2.

For more narrowly constructed statutes and rules, *Goble* acknowledged that an obey-the-law injunction based on a statutory provision that plainly states what is required to comply with it can satisfy Fed. R. Civ. P. 65(d)(1). *Goble*, 682 F.3d at 952. Applying this principle, the *Goble* court specified that an injunction against violations of Exchange Act Sections 15(c)(3) and 17(a), and Exchange Act Rules 15c3-3 and 17a-3, may be permissible because the statutes and rules "specifically describe the acts required of the person enjoined." *Id.*

Securities Act Section 5 and Exchange Act Section 15(a)(1) are two such narrowly constructed statutes, and the proposed Final Judgment language permissively tracks the language of those statutes, which "clearly lets the defendant[s] know what [they are] ordered to do or not." *See id.*; *see also SEC v. N. Am. Clearing, Inc.*, 656 Fed. App'x 969, 972 (11th Cir. 2016) (affirming injunctions largely tracking the language of Exchange Act §§ 15(c)(3) and 17(a), and Rules 15c3-3 and 17a-3 thereunder, because they "are not vague because the rules set forth specific compliance criteria."); *Natural Diamonds Invest. Co.,* No. 19-cv-80633-RLR (S.D. Fla. Oct. 18, 2023) (entering injunctions against violations of Securities Act Sections 5(a) and (c) with language tracking the statute). As to Securities Act Section 5, the proposed Final Judgments, among other things, restrain and enjoin Defendants from using interstate commerce or the mails to "sell[,]" "carry[] or cause[] to be carried[,]" or "offer to sell or offer to buy" a security unless a registration statement is in effect for the security. Exs. 1-3 at p. 3. For Exchange Act Section 15(a)(1), the proposed Final Judgments, among other things, restrain and enjoin Defendants from "engaging in the business of effecting transactions in securities for the accounts of others, or inducing or

effecting the purchase and sale of securities" while not registered with the Commission or associated with a Commission registered broker or dealer. Exs. 1-3 at p. 4. *See, e.g.*, *SEC v. Ruiz*, 0:22-cv-61609-WPD (S.D. Fla. Nov. 19, 2024) [ECF No. 28] (entering final judgment with similar injunctive language as to Securities Act Sections 5 and 17(a), and Exchange Act Section 15(a)(1)); *SEC v. Fernandez, et al.,* No. 0:23-cv-61816-WPD (S.D. Fla. Sept. 22, 2023) [ECF Nos. 4 and 5] (entering final judgment with similar injunctive language as to Securities Act Sections 5 and 17(a)); *SEC v. Toller Stern Fin. LLC*, No. 1:24-cv-23370-JB (S.D. Fla. Oct. 15, 2025) [ECF No. 5] (entering final judgment with similar injunctive language as to Securities Act Sections 5 and 17(a)). Accordingly, consistent with the judgments already entered, the Court should permanently enjoin Defendants from violating the subject securities laws.

## V. MONETARY RELIEF

### A. The Court Should Order Disgorgement

The "primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains." *Kokesh v. SEC,* 137 S. Ct. 1635, 1643 (2017). The Court has the authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims..." *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020). The Commission is entitled to disgorgement "upon producing a reasonable approximation of a defendant's ill-gotten gains." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). "Exactitude is not a requirement." *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005). A defendant's financial situation, or any financial hardship that disgorgement would impose, are not factors considered in determining disgorgement. *See Warren*, 534 F.3d at 1370.[7]

[7] Consistent with *Liu*, the Commission requests that the Court order that any amounts collected from Defendants be transferred to the Court-appointed receiver in the related case, *SEC v. Complete Bus. Solutions Grp., Inc., et al.*, No. 20-cv-81205-RAR (S.D. Fla.), for distribution to

*i.* *Disgorgement Against Alec Vagnozzi*

The Court should order Alec Vagnozzi to pay $128,500 in disgorgement, representing the ill-gotten proceeds of his violations of the federal securities laws. This amount is consistent with the Commission's bank analysis of amounts Pisces transferred to Alec Vagnozzi. *See* Declaration of Commission accountant, Crystal C. Ivory ("Ivory Dec."), attached as Exhibit 4, ¶¶ 6-10, and Exs. A and B thereto. Specifically, of the amount transferred from CBSG to Pisces' bank account, Pisces transferred $128,500 to Alec Vagnozzi in two payments. *See id.*

Alec Vagnozzi has not requested or provided evidence of any legitimate business expenses that may be deducted under *Liu*. *See Liu*, 140 S. Ct. at 1950 ("a defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement") (citing Restatement (Third) of Restitution and Unjust Enrichment, § 51, Comment h, at 216). At least two circuit courts, including the Eleventh Circuit, have held that the defendant bears the burden to provide evidence of legitimate expenses. *Commodity Futures Trading Comm'n v. Tayeh*, 848 F. App'x. 827, 830 (11th Cir. 2021) (per curiam); *SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021).

*ii.* *Disgorgement Against Albert Vagnozzi*

The Court should order Albert Vagnozzi to pay $969,686.29 in disgorgement, representing the ill-gotten proceeds of his violations of the federal securities laws. This amount is consistent with the Commission's analysis of Quickbooks Journals and bank records for Capricorn, which show that Capricorn transferred to Albert Vagnozzi $969,686.29. Ivory Dec. ¶¶ 11-15, and Exs. C and D thereto. Albert Vagnozzi has not requested or provided evidence of legitimate business expenses that may be deducted under *Liu*. *See Liu*, 140 S. Ct. at 1950.

---

investors. *See Liu*, 140 S. Ct. at 1948-49 (providing that disgorged funds should be distributed to harmed investors when feasible).

*iii.* *<u>Disgorgement Against Tierney</u>*

The Court should order Tierney to pay $603,315.43 in disgorgement, representing the ill-gotten proceeds of his violations of the federal securities laws. This amount is consistent with the Commission's bank analysis of Merchant's bank account which reflects transfers to Tierney totaling $603,315.43. Ivory Dec., at ¶¶ 16-20, and Exs. E and F thereto. Tierney has not requested or provided evidence of legitimate business expenses that may be deducted under *Liu*. *See Liu*, 140 S. Ct. at 1950.

**B. <u>The Court Should Order Prejudgment Interest</u>**

The Court may impose prejudgment interest against Defendants. *See SEC v. Carrillo*, 325 F.3d 1268, 1273 (11th Cir. 2003). "Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran,* 944 F. Supp. 286, 295 (S.D.N.Y. 1996). Prejudgment interest is calculated "in accordance with the delinquent tax rate determined by the internal revenue service." *Id.* (citing 26 U.S.C. § 6621(a)(2)); *see also SEC v. Huff*, 758 F. Supp. 2d 1288, 1363 (S.D. Fla. 2010) (applying the IRS underpayment rate because it reflects what "it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from his fraud").

Moreover, pursuant to the consented-to Judgments entered against them, Defendants agreed that "[i]f disgorgement is ordered, Defendant *shall* pay prejudgment interest thereon, calculated from October 1, 2023, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." [ECF Nos. 203-05, § II] (emphasis added). Additionally, the proposed Final Judgments provide for prejudgment interest for a much shorter period than Defendants have enjoyed the benefits of their

ill-gotten gains, specifically, from October 1, 2023 (when the Commission filed its initial Complaint against Defendants) through February 28, 2025, when Defendants agreed to resolve the liability and injunctive relief issues in this enforcement action.

The Commission's accountant, Crystal Ivory, has calculated the proposed prejudgment interest for Defendants based on their proposed disgorgement amounts, respectively, as follows:

- For Alec Vagnozzi, prejudgment interest on disgorgement of $128,500 is $15,002.82;
- For Albert Vagnozzi, prejudgment interest on disgorgement of $969,686.29 is $113,214.24; and
- For Tierney, prejudgment interest on disgorgement of $603,315.43 is $70,439.16.

Ivory Dec., at ¶¶ 21-23 and Exs. G, H, and I [Ex. 4].

**C. <u>The Court Should Order Civil Penalties</u>**

Civil penalties serve as a deterrence against violations of the securities laws and advance important goals, such as "encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry." *See SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998). "Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." *SEC v. Monterosso,* 756 F.3d 1326, 1338 (11th Cir. 2014); *see also SEC v. Lyndon*, 39 F. Supp. 3d 1113, 1123 (D. Haw. 2014) ("Civil penalties punish the wrongdoer and deter future violations."). The Commission "need only make 'a proper showing' that a violation has occurred and a penalty is warranted." *Warren,* 534 F.3d at 1370 (citing 15 U.S.C. § 77t(d) and 15 U.S.C. § 78u(d)(3)). "The statutes leave the amount to be imposed to the discretion of the [Court.]" *Monterosso,* 756 F.3d at 1338; 15 U.S.C. §§ 80b-9(e),

77t(d), 78u(d) ("[t]he amount of the penalty shall be determined by the court in light of the facts and circumstances" of the case).

Section 20(d) of the Securities Act, 15 U.S.C. §77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3), authorize civil penalties under a three-tiered structure for federal securities violations. Under the second tier, which applies here because Defendants' conduct involved fraud violations under Sections 17(a)(2) and 17(a)(3) of the Securities Act, the Court may impose a civil penalty that does not exceed the greater of (i) $118,225[8] for each violation (occurring after November 3, 2015) or (ii) the gross amount of pecuniary gain to the defendant as a result of his violations. 15 U.S.C. §77t(d)(2)(B). "The civil penalties statutes, enacted as part of the Securities Enforcement Remedies and Penny Stock Reform Act of 1990, permit the imposition of penalties 'for each violation.'" *SEC v. Tourre*, 4 F. Supp. 3d 579, 592 (S.D.N.Y. 2014) (citing 15 U.S.C. § 77t(d) and 15 U.S.C. § 78u(d)(3)).

To determine the amount of the civil penalty to assess against a defendant, courts consider these factors: (1) the egregiousness of the violations at issue; (2) the defendant's scienter; (3) the repeated nature of the violations; (4) the defendant's failure to admit to their wrongdoing; (5) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (6) the defendant's lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to the defendant's demonstrated current and future financial condition. *Huff*, 758 F. Supp. 2d at 1364. Applying these factors to Defendants leads to the conclusion that the proposed civil penalties are appropriate.

---

[8] This figure is taken from the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Federal Civil Penalties Inflation Adjustment Improvements Act of 2015, which adjusted the potential penalty amounts to account for inflation based on violations dates. *See* https://www.sec.gov/enforce/civil-penalties-inflation-adjustments (last visited Feb. 18, 2026) and also attached as Exhibit 5.

*i.* *<u>$75,000 Civil Penalty Against Alec Vagnozzi</u>*

As to the first, second, and third factors, Alec Vagnozzi acted at least negligently in conducting the unregistered offering and funneling investors' funds to purchase CBSG notes. He personally solicited investors, and was a co-owner and manager of Pisces, which raised $15.4 million from 80 investors over six months. ECF No. 197 at ¶ 97. Alec Vagnozzi told investors and prospective investors that the offering complied with the securities laws and that the PPMs for Pisces and Pisces Parallel contained all the information a person would want to know to make an informed investment decision. *Id.* ¶ 85. Yet Alec Vagnozzi was aware of LaForte's past criminal history and the three regulatory actions against CBSG, and failed to disclose this information to investors; indeed, it cannot be disputed that Alec Vagnozzi had that knowledge when he presented the Pisces Parallel promissory notes to Pisces investors after CBSG stopped making payments needed to pay original Pisces promissory notes. *Id.* ¶¶ 9, 86, 88, 90, 92, 94, 103-07; *see also* Alec Vagnozzi Dep. 82:20-84:22, Nov. 25, 2024 [ECF No. 154-16 at PDF p. 21 of 105]; Alec Vagnozzi Dep. 268:10-269:21, Nov. 26, 2024 [ECF No. 154-16 at PDF p. 80 of 105].

As for the fourth factor (failure to admit wrongdoing), Alec Vagnozzi consented to permanent injunctive relief, without admitting or denying the allegations of the Amended Complaint. Therefore, this factor is, at best, neutral.

The fifth factor (whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons) strongly favors a penalty. Alec Vagnozzi's conduct created substantial losses or a significant risk of substantial losses to investors. Although the court-appointed Receiver in the CBSG case recently reported that most investors (including those who invested through Pisces) may recover up to 100% of their allowable claims,[9] that does not mitigate

[9] *SEC v. CBSG*, No. 9:20-cv-81205-RAR, ECF No. 2183-1 at 2 (S.D. Fla. Nov. 21, 2025).

against this factor for several reasons. First, those investors who could participate in the claims process have been deprived of their funds for over five years, and any recovery they receive would not have occurred but for the substantial efforts of the Receiver. Even if these investors ultimately do recover their principal, they have suffered substantial losses because they have lost the benefit of the use of their funds for many years (i.e., to use them for other investments or for personal or business reasons). Indeed, individuals invested in Pisces because of the promise of regular interest payments ranging between 12%-to-14%. Undoubtedly, these investors suffered significant losses and were exposed to a substantial risk of loss, supporting a penalty in this case.

The sixth factor (lack of cooperation and honesty with authorities) favors a penalty. Alec Vagnozzi misled the authorities. Indeed, during investigative testimony, Alec Vagnozzi denied ever having knowledge of the New Jersey and Texas regulatory actions against CBSG. Alec Vagnozzi Investigative Test. 69:20-70:14; 107:23-110:4, Sept. 20, 2022 [ECF No. 154-32 at PDF pp. 19 of 49, and 28-29 of 49]. However, an email from a prospective investor—three months before he began soliciting investors—notified Alec Vagnozzi about "current legal issues pending" and "also some previous issues over the past number of years" and asking for "some type of explanation as to any of these issues." June 18, 2019, email to Alec Vagnozzi [ECF No. 156-23]. Likewise, on April 10, 2020, CBSG emailed Alec Vagnozzi new investor documents disclosing "Regulatory Matters[,]" including the regulatory actions by New Jersey and Texas. *See* ECF No. 154-51 at PDF pp. 1 and 20 of 26; ECF No. 154-52 at PDF p. 8 of 29; *see also* Am. Compl. ¶¶ 88, 90, and 92 (providing that, contrary to his investigative testimony, Alec Vagnozzi knew about the Texas and New Jersey regulatory actions by no later than April 2020) [ECF No. 197]. Accordingly, Alec Vagnozzi tried to hide from the Commission when he learned about regulatory actions against CBSG, and was not honest with the Commission.

The seventh factor (whether the penalty should be reduced due to the defendant's demonstrated current or future financial condition) does not support mitigation of the penalty. Alec Vagnozzi has produced no information or documents about his financial condition that would favor a reduced penalty.

A $75,000 civil penalty is consistent with, and even lower than, the penalties assessed for similar violations. *See SEC v. Earle,* No. 3:22-cv-01914-H-SBC (S.D. Cal. Mar. 17, 2025) (assessing $115,231 civil penalty against defendant involved in offering fraud who settled on Securities Act Sections 17(a)(3) and 5 charges); *SEC v. Burroughs*, No. 4:21-cv-994 (E.D. Tex. Jan. 7, 2022) (assessing $85,000 civil penalty against defendant Holstine relating to Securities Act Sections 17(a)(2) and (3) violations stemming from a fraudulent securities offering).

A $75,000 civil penalty is also consistent with the civil penalty entered by the Court against Pisces' co-manager, Defendant Westhead. [ECF No. 199 at 4]. Alec Vagnozzi jointly operated Pisces and solicitated investors. He also withdrew the same amount of proceeds from Pisces as that of his co-manager (except that Westhead's disgorgement was offset by $5,000 in *Liu* expenses). Finally, the proposed penalty is well below the statutory maximum of $118,225 for each of Alec Vagnozzi's tier two violations.

*ii.* *$236,450 Civil Penalties Against Albert Vagnozzi and Tierney*

Although Albert Vagnozzi and Tierney settled to the same charges as Alec Vagnozzi, their conduct warrants a higher penalty because their conduct lasted much longer, they each raised considerably more investor funds through their respective companies than Pisces, they each reaped substantially more commissions, and they each had more experience in the securities industry than Alec Vagnozzi.

With respect to the first, second, and third factors, both Albert Vagnozzi and Tierney acted at least negligently in conducting an unregistered offering that raised and funneled millions from investors to CBSG for over the course of 27 months for Albert Vagnozzi (May 2018 to July 2020) and for 23 months for Tierney (from August 2018 to July 2020).[10] Am. Compl. ¶¶ 54, 109-10. 135, and 138 [ECF No. 197]. Albert Vagnozzi and Tierney told investors and prospective investors that the offering complied with the securities laws and that the PPMs for their companies contained all the information a person would want to know to make an informed investment decision. *Id.* ¶¶ 57 and 120. However, while soliciting investors, Albert Vagnozzi and Tierney were aware of the three regulatory actions against CBSG and Tierney was aware of LaForte's past criminal history, but both failed to disclose this information to investors. *Id.* ¶¶ 57, 59-65, 118-19 and 121-25. Instead, they continued to pitch and sell CBSG investments without informing investors. Both Albert Vagnozzi and Tierney touted to investors and prospective investors CBSG's track record as a leader in the merchant cash advance industry (Am. Compl. ¶¶ 59, 62, 121-22 [ECF No. 197]), that the offerings complied with the securities laws (*id.* ¶¶ 57 and 120), and that their companies' respective PPMs contained all the information an investor would want to know to make an informed investment decision (*id.*) Finally, both Albert Vagnozzi and Tierney were previously registered as investment adviser representatives, and Tierney also was previously licensed and associated with a registered broker-dealer.[11] These earlier affiliations make the conduct of Albert

---

[10] The first three factors are: (1) the egregiousness of the violations at issue; (2) the defendant's scienter; and (3) the repeated nature of the violations. The Commission's Section 17(a)(2) and 17(a)(3) fraud claims against Albert Vagnozzi and Tierney require only a showing of negligence.

[11] During the conduct subject of this action, Albert Vagnozzi held Series 7 and 66 licenses and was an owner of, and an investment adviser representative with, PTK Financial, LLC (CRD # 115012), an investment adviser previously registered with Pennsylvania, Florida, New Jersey, and Texas. *See* Albert Vagnozzi Inv. Test. 15:5-8; 17:1-12; 20:20-24; 24:2-8 [ECF No. 154-33]. From June 2013 to October 2014, he was also associated with two Commission-registered broker-dealers,

Vagnozzi and Tierney more egregious, as they knew or should have known that they were violating the securities laws.

As for the fourth factor (failure to admit wrongdoing), both Albert Vagnozzi and Tierney have consented to permanent injunctive relief, without admitting or denying the allegations of the Amended Complaint. At best, this factor is neutral.

The fifth factor (whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons) strongly favors penalties. Albert Vagnozzi's and Tierney's conduct created significant risks of substantial losses to investors, while earning substantial commissions for themselves. From May 2018 to April 2020, Albert Vagnozzi raised at least $32,497,211.16 million from more than 110 investors and personally received $969,686.29 in commissions. Am. Compl. ¶¶ 51, 54, 66, and 72 [ECF No. 197]; Sharp Dec. at ¶ 23 [ECF No. 154-1]. Likewise, from August 2018 through July 2020, Tierney raised at least $31.2 million for CBSG from more than 70 investors and personally received $603,315.43 in commissions. Am. Compl. ¶¶ 110 and 114 [ECF No. 197]. The fact that claimants who invested in Capricorn or Merchant may recover some or all of their principal more than five years after they invested[12] does not mitigate against a substantial penalty against Albert Vagnozzi and Tierney. These investors have waited years for any recovery (without the use of their money), which did not occur without

---

Purshe Kaplan Sterling Investments (CRD # 35747) and Hornor, Townsend & Kent, Inc. (CRD # 4031). *See* https://brokercheck.finra.org/individual/summary/6197132 (last visited Feb. 18, 2026). From December 2013 to October 2016, Tierney was associated with a Commission-registered broker-dealer, Proequities, Inc. (CRD # 15708). *See* https://brokercheck.finra.org/individual/summary/5524775 (last visited Feb. 18, 2026); Tierney Inv. Test. 38:13-39:6 [ECF No. 154-35]. He was also an investment adviser representative between 2014-2018. *See* https://adviserinfo.sec.gov/individual/summary/5524775 (last visited Feb. 18, 2026).

[12] The CBSG Receiver has recently indicated that 98.35% of allowed claims of Capricorn investors will be paid in the amount of $14.3 million [*CBSG*, S.D. Fla. No. 9:20-cv-81205-RAR, ECF No. 2183-1 at 2] and that that Merchant investors will receive 100% of allowable claims [*id.*].

substantial and costly efforts of the court-appointed Receiver. These circumstances, present for both Albert Vagnozzi and Tierney, establish that investors suffered substantial investor losses, were exposed to a significant risk of investor losses and favor substantial penalties.

The sixth factor (the defendant's lack of cooperation and honesty with authorities) also favors penalties. Albert Vagnozzi provided to the Receiver internal Capricorn documents indicating that only $18 million was raised, but the Receiver's forensic accountant, Bradley Sharp, identified documents showing that Capricorn bought $32 million in CBSG promissory notes. *Compare*, ECF No. 154-1 at ¶ 21 and Ex. Q, *with* ¶ 22-23 and Ex. R. Similarly, Tierney was dishonest during his investigative testimony—an example of being uncooperative with the authorities. He falsely testified that he did not know, by April 2020, that the Texas regulatory action involved CBSG. Tierney Investigative Test. at 83:8-84:10, Oct. 13, 2022 [ECF No. 154-35 at PDF p. 30 of 86]. Contradicting that testimony, Tierney personally participated in the Texas regulatory action by executing an April 2020 sworn declaration concerning another CBSG Agent Fund's offer and sale of CBSG notes. *See* ECF No. 157-39. Accordingly, the sixth factor should favor a civil penalty for both Albert Vagnozzi and Tierney.

The last factor (whether the penalty that would otherwise be appropriate should be reduced to the defendant's demonstrated current and future financial condition), does not support mitigation of the penalty. Neither Albert Vagnozzi nor Tierney have produced any information or documents about their financial condition that would support a reduced penalty. Moreover, both profited handsomely from their conduct. They should not be given the benefit of the doubt here. At best, this factor is neutral.

Securities Act Section 20(d) [15 U.S.C. § 77t(d)(2)(B)] authorizes second tier penalties for cases involving "deceit … [or] deliberate or reckless disregard of a regulatory requirement," which

describes Albert Vagnozzi's and Tierney's conduct. The Commission requests a maximum second-tier statutory penalty of $118,225 for each of the Securities Act Section 17(a)(2) and (3) violations, for a total of $236,450 for each Albert Vagnozzi and Tierney. A $236,450 civil penalty also aligns with recent similar cases. *See SEC v. Stuart*, No. 25-cv-00761 (D. Md. March 26, 2025) (assessing $240,464 civil penalty against consenting individual defendant for violations of Securities Act Sections 17(a)(2) and (3) for an offering fraud that raised $34 million from investors); *SEC v. Karina Fernandez*, No. 24-cv-61774 (S.D. Fla. Apr. 15, 2025) (assessing $176,191 civil penalty—representing pecuniary gain—against consenting sales agent who made misstatements to investors in connection with an offering in violation of Securities Act Sections 17(a)(2) and (3)). Notably, this amount does not include additional penalties that could be imposed for violations of Securities Act Section 5 and Exchange Act Section 15(a)(1), and it is substantially lower than their pecuniary gain.

**VI. CONCLUSION**

For the reasons stated above, the Commission respectfully requests that the Court grant this motion and enter the proposed Final Judgments submitted herewith.

## **Certificate of Conferral**

Under Local Rule 7.1(a)(3), the counsel below conferred with counsel for Alec Vagnozzi, Albert Vagnozzi and Tierney in a good-faith effort to come to an agreement about relief sought in this motion. Counsel for each of the Defendants advised that they oppose the monetary relief sought in this motion.

Dated: February 18, 2026

By: *s/ Brian Lechich*
Brian Lechich, Esq.
Senior Trial Counsel
Direct Dial: (305) 416-6257
Facsimile: (305) 536-4154
Email: LechichB@sec.gov

Attorney for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131