**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

SECURITIES AND EXCHANGE COMMISSION
Plaintiff,

v. Case No. 1:23-cv-23749-RAR

SHANNON WESTHEAD, et al.
Defendants.

---

**DEFENDANT MICHAEL TIERNEY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL JUDGMENTS**

---

## I. INTRODUCTION

Defendant Michael Tierney respectfully submits this opposition to the Securities and Exchange Commission's Motion for Final Judgment. To the extent there have been agreed upon resolutions, they are just that; agreed upon. In their Motion, however, the Commission seeks to punish Mr. Tierney through disgorgement of $603,315.43 in putative profits, prejudgment interest of $70,439.16, and a civil penalty of $236,450—a total of $910,204.59. There has been no agreement to this outcome, and the Tierney parties have elected to bring this issue before the Court based on the Draconian approach of the SEC toward him. Accordingly, this response is focused on why disgorgement and penalty are inappropriate. The Tierney parties have proceeded this way because the SEC's requested relief is excessive, unjust, and ignores critical mitigating circumstances that warrant substantially reduced monetary sanctions or none at all. Mr. Tierney requests the opportunity to be appear before the Court and present evidence relevant to both disgorgement and penalty.

Mr. Tierney is not a securities broker. He is an insurance salesman who became involved in creating an investment fund in 2018 which he believed was appropriate and legally proper. The

fund provided capital to Complete Business Group also known as PAR Funding. His belief was predicated on the fact that he followed the advice of Dean Vagnozzi's A Better Financial Plan and legal counsel John Pauciulo Esq. for the precise purpose of making sure he was on legally sound ground. He engaged Pauciulo, of the Eckert Seamans firm who managed to make a name for himself by incorrectly advising any number of people that their conduct in creating investment funds was completely proper and legal. Mr. Pauciulo provided Michael Tierney with the step-by-step guidance to creating his investment fund and selling what was recognized by this Court as a security. Every step followed by Mr. Tierney regarding his fund, the Merchant Services Income Fund, was based on the advice of counsel, including fund formation, securing investors, and preparing private placement memoranda. His reliance on Mr. Pauciulo's advice is the cause of his subsequent problems *(N.T. 31, 35, 75-77, 85, 86)*. Throughout this process, Michael Tierney was **never** an agent of PAR Funding. *(Investigative Testimony, hereinafter I.T., p. 58)*. Once set up, Mr. Tierney operated his fund independently, without compensation other than receiving a portion of investor interest when paid *I.T. p. 70-71*. He was not, as the SEC claims, an agent of PAR Funding, had no agreement with PAR Funding and did not receive payment of any kind from PAR Funding.

The amounts the SEC characterizes in its motion as "ill-gotten gains" were Mr. Tierney's portion of interest payments made back to investors. Those interest payments became the primary source of income for Mr. Tierney, allowing him to pay expenses and his personal bills as the evidence and testimony from Mr. Tierney will reflect. Despite the SEC's claim of burden shifting, the SEC has made no effort to ascertain even an approximation of the net profits that went to Mr. Tierney. While the SEC has checks made out to Mr. Tierney it has not determined, or tired to determine where that money went. But for example at least a portion of it went to the IRS for tax

purpose. Mr. Tierney declared a portion of that money as income and paid income tax on the very money the SEC declares are "ill-gotten gains". Mr. Tierney was not paid a finder's fee or any amount of money for producing investors to PAR Funding nor did he receive any other compensation.

Michael Tierney's conduct was no different than any number of other fund managers who operated their business in precisely the same manner and was also based on the guidance of John Pauciulo, Esquire *See Complaint* *Parker, et al v. Pauciulo, et al, Philadelphia Court of Common Pleas, December Term 2020, No. 00982*. Not only was Mr. Tierney's business operation standard fare, but it was also openly and notoriously done by a small army of similarly situated individuals *See* *Parker v. Pauciulo* *supra*. As will be argued below, the prosecution of Mr. Tierney was selective (he was "charged" any number of folks similarly situated were not) and patently unjust.

Mr. Tierney has already consented to permanent injunctive relief prohibiting future violations. He acknowledged wrongdoing by entering into a stipulated judgment. Disgorgement and penalties are nowhere mandated, and any number of cases cautions Courts to keep in mind the proceedings before them are equitable; requiring a broad analysis of the circumstances of each case. The equitable nature of this proceeding should not, as will be demonstrated to the Court, be the basis for the excessive monetary penalties the SEC demands. The Court possesses broad discretion to fashion remedies appropriate to the individual circumstances, and those circumstances compel substantial basis to eliminated monetary sanctions against Mr. Tierney altogether. Mr. Tierney was the victim of bad advise from an ill-informed attorney who he hired.

## II. STATEMENT OF FACTS

### A. Mr. Tierney's Background and Role

Michael Tierney's role in this saga began while he was working with Dean Vagnozzi as an insurance broker *I.T. p. 46-49*. In or about 2008, Mr. Tierney was introduced to the merchant cash advance business by Mr. Vagnozzi, who told him about the opportunity to create an investment fund to raise money for the merchant cash advance industry and in particular, PAR Funding *I.T. p. 59*. From that introduction, Mr. Tierney created Merchant Services Income Fund, which raised money to be invested in PAR Funding.

Mr. Tierney had little experience in this kind of investment. Dean Vagnozzi guided him and directed him to John Pauciulo, Esquire, a lawyer professing experience working for the SEC. Mr. Tierney hired Mr. Pauciulo to provide him with all the legal services related to creating a fund *I.T. p. 59*. Among other things, Mr. Pauciulo told Mr. Tierney that he was not subject to SEC regulations but could sell using a private placement memo. Mr. Tierney's investors were family, friends and people referred to him by Dean Vagnozzi. Michael Tierney never advertised his services.

Because his office was located within Mr. Vagnozzi's space, he was able to interact with Mr. Vagnozzi and the people working with him. He met Joseph LaForte, who operated PAR Funding, but had no business or personal relationship with him *I.T. p. 78-79 ("Like I said, it was brief…it was more like a knock on the door. 'Hey, this is Joe. This is his office. This is what he does', and a brief casual interaction.")* As previously stated, neither Mr. Tierney nor his fund was an agent of either Mr. Vagnozzi or Mr. LaForte: he alone operated it.

As his attorney, John Pauciulo guided Michael Tierney in every aspect of his operation of his investment fund. If any questions arose in his mind, he would turn to Mr. Vagnozzi or Mr. Pauciulo for guidance. The operation of his fund was simple. After an individual expressed an interest in investing in a merchant cash advance business, Mr. Tierney would provide the investor

with a Private Placement Memo and if the investor still wanted to invest, Mr. Tierney would receive a check payable to his fund. The money would be sent directly to PAR funding under the terms of the agreement with each investor. A rate of interest would be set and returned to the investor monthly. That distribution was made back to the investor through a management company owned by Dean Vagnozzi: ABFP Management Company *I.T. p. 65 ("an investor would invest in a fund. The fund would send money to PAR Funding and PAR Funding would pay interest back on a monthly basis and the fund would distribute the interest to the clients on a monthly basis")*. A portion of the interest constituted payment to merchant cash for its – to include Mr. Tierney's – services. Mr. Tierney only received money from PAR Funding or Mr. Vagnozzi in this manner *I.T. p. 66*.

**B. SEC v. PAR Funding**

When the SEC brought its action against PAR Funding (SEC v. Complete Business Solutions Group et al, no20-cv81205 RAR (S.D Fla), Michael Tierney joined with the other fund managers whose interest had stopped and money had been seized. As the story of what happened unfolded, Mr. Tierney would become a part of the "Parker Group". The Parker Group were 15+ investment funds just like his with investors who no longer were receiving a return on their money . When it also became apparent that the SEC challenged the legality of PAR funding the fund managers who became the Parler Group, brought a legal malpractice action against John Pauciulo and Eckert Seamans in the Philadelphia Court of Common Pleas. *See Parker v. Pauciulo.*

Not far into their litigation the Court's receiver would "seize" the Parker case as a part of the assets of PAR funding. Parker was, in the course of the litigation process, determined to be an asset of the Estate managed by the Court's Receiver and was resolved at mediation in January of 2025.

The SEC's initial action identified several Florida funds as a part of its claim but did not include any of the funds which were part of the Parker Group. It was not until September of 2023 that the SEC chose to bring a second action that included Michael Tierney. No explanation has ever been given as to why none of the other Parker Funds were included. It would appear, based on the claims made by the SEC, that they believed Mr. Tierney was far more closely aligned with PAR Funding than was the case.

The SEC's factual predicate for its claim against Mr. Tierney was his failure of Mr. Tierney to advise investors of certain negative facts about the Principals of PAR and Mr. Vagnozzi. As the evidence establishes, Mr. Tierney had scant knowledge of those negative facts and was, again, advised by Mr. Pauciulo that he did not need to concern himself with any of those facts. After a change in counsel at the SEC, Mr. Tierney entered into a settlement agreement and consented to permanent injunctive relief against future violations of Securities Act Sections 5(a), 5(c), and 17(a)(2) and (3), and Exchange Act Section 15(a)(1). None of the claims against him for fraud were pursued. The Court entered bifurcated judgments on July 21, 2025, permanently enjoining Mr. Tierney from these violations.

**III. ARGUMENT**

The SEC also sought disgorgement, interest and penalties which Mr. Tierney would not agree to. Instead, Mr. Tierney has exercised his right to have this Court consider all the facts and determine whether disgorgement or penalty are appropriate and, if so, whether the amount is appropriate. Mr. Tierney has agreed to accept the permanent injunctive relief sought by the SEC. Neither it, nor this Court is obligated to take any further action against Mr. Tierney. It can, without violating any provision of the law, simply lay down the sword and say he has agreed never to be

involved in anything like this again; he has been tainted a subdued by this prosecution, there is little to be gained by proceeding further.

**A. ADVICE OF COUNSEL**

Advice of counsel is one of many mitigating factors. It belongs up front for the simple reason that Michael Tierney relies so heavily on it. He does not believe he did anything wrong but has accepted the consequences of his actions from a technical standpoint. He cannot walk away from the fact that he did nothing without the advice and counsel of John Pauciulo, Esquire. It is in his lawsuit against Mr. Pauciulo. It is in his investigative testimony to the SEC and his deposition. If you look for 15 minutes at the video presentations that were made by Dean Vagnozzi and John Pauciulo Esquire, it is apparent how enticing the proposed investment is presented. Not that it is in any way legal, the actual investment – if it was handled the way it is described – is a sure winner. But it is still improper. John Pauciulo, Esquire told all who would listen that his advice came to them from his experience as an employee of the SEC. People do trust that lawyers advise them properly – frankly, particularly those from large established law firms. There a host of reasons why, as the evidence will show, Michael Tierney was totally misled and as much a victim as his investors were.

Reliance on counsel is a critical mitigating factor. *See SEC v. Mut Benefits Corp 2004 U.S. Dist. Lexis 23008*. Mr. Tierney is not a lawyer or securities professional. He sought and followed professional legal advice for every aspect of fund formation, investor solicitation, and PPM preparation.

The Commission's position effectively punishes Mr. Tierney for his attorney's alleged failures. But Mr. Tierney had no basis to question counsel's advice. He acted reasonably

and in good faith throughout. Imposing maximum penalties under these circumstances would penalize reliance on professional guidance, a result that discourages compliance efforts.

**B. DISGORGEMENT**

The Defendant does not challenge the statutory authority to seek disgorgement. It is assumed that the SEC does not challenge the obligation of the Court to view disgorgement through the lens of an Equity Court and those factors which influence how a Court applies any punishment.

A legitimate question regarding disgorgement arose when Court receivers were able to make investors whole Only recently the United States Supreme Court has now determined that it is permissible for the SEC to seek restitution from violators, the Court's decision leaves open questions about the punitive nature of restitution and penalty.

Courts in this Circuit and others have recognized that defendants are entitled to deduct legitimate business expenses, including compensation for labor. United States CFTC v. Tayeh, 848 Fed. Appx. 827 In United States CFTC v. Tayeh, the Eleventh Circuit affirmed that defendants may deduct legitimate business expenses if supported by credible evidence. United States CFTC v. Tayeh, 848 Fed. Appx. 827

Disgorgement is designed to prevent unjust enrichment by depriving wrongdoers of gains causally connected to their violations. SEC v. Calvo, 378 F.3d 1211 The Commission bears the burden of establishing that disgorgement and civil penalties are appropriate. Disgorgement is an equitable remedy intended to deprive violators of ill-gotten gains, not to punish. It is not an obligation that disgorgement be ordered. (citing Liu v. SEC, 140 S. Ct. 1936, 1940 (2020)). SEC v. Almagarby, 92 F.4th 1306 The Commission argues that "how a defendant chooses to spend his ill-gotten gains, whether it be for business expenses, personal use, or otherwise, is immaterial to disgorgement."

That, however, is simply not so. Disgorgement applies to net profits , not to compensation that never constituted profit in the first instance. Mr. Tierney is entitled to credit for the expenses of his business and earned income for his labor.

In order to fairly assess the amount for disgorgement, The Commission must produce "a reasonable approximation of a defendant's ill-gotten gains." (citing SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004)). SEC v. Calvo, 378 F.3d 1211 Once that showing is made, the burden shifts to the defendant to demonstrate that legitimate business expenses should reduce the disgorgement amount. United States CFTC v. Tayeh, 848 Fed. Appx. 827 A defendant is entitled to deductions for all marginal costs incurred in producing the revenues subject to disgorgement. (citing Liu, 140 S. Ct. at 1950). SEC v. Keener, 644 F. Supp. 3d 1290. The Supreme Court held in Liu v. SEC that disgorgement "does not exceed a wrongdoer's net profits and is awarded for victims." SEC v. Almagarby, 92 F.4th 1306 Net profits are calculated by deducting legitimate business expenses from gross receipts. SEC v. Keener, 644 F. Supp. 3d 1290 The Court explained that "a defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement." SEC v. Keener, 644 F. Supp. 3d 1290 Eleventh Circuit affirmed that defendants may deduct legitimate business expenses if supported by credible evidence. United States CFTC v. Tayeh, 848 Fed. Appx. 827

The Commission seeks disgorgement of $603,315.43, representing all amounts transferred from Merchant to Mr. Tierney. It is not a reasonable approximation of net profits but a statement of gross profits. It does not take into consideration business expenses relating to Merchant and fails to consider an amount that effectively replaced income from other sources that he could not earn owing to the time and attention he paid to his fund and service to A Better Financial Plan Management.

In addition to business expenses, this amount constituted Mr. Tierney's sole income over nearly two years and was used to pay his personal bills. Ordering disgorgement of Mr. Tierney's entire livelihood violates the principle that disgorgement must not exceed net profits.

The Commission argues that "how a defendant chooses to spend his ill-gotten gains, whether it be for business expenses, personal use, or otherwise, is immaterial to disgorgement." But this principle applies to profits spent after being earned, not to compensation that never constituted profit in the first instance. Mr. Tierney earned income for his labor; his net profits are far less than the number arbitrarily picked by the SEC. United States CFTC v. Tayeh, 848 Fed. Appx. 827.

The SEC concedes that the amount is a gross and not net amount, but contends it is entitled to all disbursements because Michael Tierney has failed to tell them what setoff, if any, he would be entitled to. The SEC does not bother to take into account that money paid to him directly would, if nothing else, be subject to income tax and a deductible expense.

Here, the $603,315.43 Mr. Tierney received was not profit—it was compensation for his work operating the fund and constituted his sole source of income. He had no other revenue stream during the relevant period. All of these funds were used for his business operations and ordinary living expenses: housing, food, utilities, transportation, and other necessities.

The Commission's position that Mr. Tierney should disgorge his entire income for nearly two years would leave him with zero compensation for the period, effectively penalizing him for his cost of living. This exceeds net profits and violates Liu.

This Court should consider carefully testimony from Mr. Tierney and evidence from him regarding what he did with the money before simply accepting the SEC's "guestimate."

### C. PENALTY

In addition to disgorgement, the SEC seeks penalties against Michael Tierney for no specific reason. Civil penalties are discretionary and must be determined "in light of the facts and circumstances" of the case. Courts consider: (1) the egregiousness of violations; (2) the defendant's scienter; (3) repeated nature of violations; (4) failure to admit wrongdoing; (5) whether conduct created substantial losses or risk thereof; (6) lack of cooperation with authorities; and (7) the defendant's financial condition. SEC v. BIH Corp., 2014 U.S. Dist. LEXIS 172122

Importantly, a defendant's financial condition and ability to pay are relevant factors in assessing appropriate monetary relief. SEC v. Warren, 534 F.3d 1368 The equitable nature of disgorgement gives courts broad discretion to fashion remedies appropriate to individual circumstances. SEC v. Keener, 644 F. Supp. 3d 1290.

As an unstated result of the Supreme Court's decision in *Sripetch v. United States Securities and Exchange Commission*, No. 25-466, 2026 WL 1593329 (2026), penalties need to be scrutinized to be sure they are not effectively a second round of punishment on top of disgorgement.

In Mr. Tierney's case the single most significant factor that should reduce and/or eliminate a penalty altogether is the status of Mr. Pauciulo as Mr. Tierney's lawyer. Advice of counsel may not excuse misconduct; it can militate against the draconian effect of a penalty.

## IV. THE SEC'S SELECTIVE PERSECUTION OF MICHAEL TIERNEY

While a prosecuting authority has broad discretion in choosing who to prosecute and who not to prosecute, the SEC's "choice" to prosecute Michael Tierney is disturbing and distasteful. Mr. Tierney, like all of Mr. Pauciulo's similarly situated clients, set up and ran their funds in the same manner; identifying investors, taking their money and investing in PAR Funding, and taking a

portion of the interest paid as "compensation" S*ee Parker v. Pauciulo.* Yet none of those other fund managers have been prosecuted. As the record will reflect, well after it's initial Complaint, the claims against Mr. Tierney were brought and included family and employees of Dean Vagnozzi. The SEC– and the Class Action Plaintiff's in their initial Complaint – seem to infer a conspiracy between them led by Mr. Vagnozzi, who had a closer relationship with PAR Funding but not a provably improper one. It seems to suggest that Mr. Tierney was closer to the fire than others when in fact he was on a back bench far from the flames. In looking at his conduct, the Court should consider the propriety of this targeted prosecution.

Michael Tierney knew that Joseph LaForte had a criminal background but was told by his attorney, John Pauciulo, Esquire, that it was not significant. Similarly, Mr. Tierney understood that actions taken against Dean Vagnozzi by regulatory authorities in New Jersey and Texas had nothing to do with him or his activities.

Mr. Tierney had no knowledge of CBSG's internal operations or what PAR Funding principals were doing. His involvement was limited to operating his own fund under counsel's guidance and transferring investor funds to CBSG.

**A. INVESTOR RECOVERY AND SELECTIVE PROSECUTION**

All investors have had in many cases all, in some almost all (88%) of their money returned through the Court-appointed receiver. No investor suffered permanent financial loss as a result of Michael Tierney's conduct.

The SEC has selectively prosecuted Mr. Tierney while ignoring over a dozen other fund managers who engaged in identical conduct. This selective enforcement underscores the inequity of the severe monetary sanctions the SEC now seeks.

Mr. Tierney's personal compensation for operating the fund—managing investor relations, processing paperwork, handling funds, and coordinating with CBSG—represents legitimate labor. The fact that he used this compensation for living expenses does not transform it into "ill-gotten gains." Rather, it reflects the ordinary expenses any person incurs while performing work.

**B. THE SEC HAS NOT SHOWN ENJUST ENRICHMENT**

Mr. Tierney was not unjustly enriched. He received reasonable compensation for substantial work over twenty-three (23) months. He managed relationships with more than seventy (70) investors, executed promissory notes, processed investment paperwork, handled investor funds and coordinated transfers to CBSG. Compensating someone for their labor does not constitute unjust enrichment, even if the underlying activity violated securities laws.

Moreover, all investor funds have been recovered through the receiver. Investors suffered no permanent loss. Extracting Mr. Tierney's entire income for the period would not benefit victims—it would simply punish Mr. Tierney by reducing him to destitution for conduct undertaken in good-faith reliance on counsel.

**C. THE REQUESTED CIVIL PENALTY IS EXCESSIVE AND IGNORES CRITICAL MITIGATING FACTORS**

The Commission seeks a $236,450 civil penalty, the maximum second-tier statutory amount for two violations. This request ignores overwhelming mitigating factors that warrant a substantially reduced penalty or no penalty at all.

**1. MICHAEL TIERNEY'S CONDUCT WAS NOT EGREGIOUS AND INVOLVED ONLY NEGLIGENCE**

The Commission's claims against Michael Tierney are based on Securities Act Sections 17(a)(2) and (3), which require only negligence. Mr. Tierney did not act with fraudulent

intent or scienter. He is an insurance salesman, not a securities professional, who relied entirely on legal counsel for guidance.

The Commission acknowledges that Mr. Tierney "acted at least negligently." But negligent conduct at the lowest level of culpability does not warrant maximum penalties. The egregiousness factor weighs heavily in Mr. Tierney's favor.

Courts assess egregiousness by examining the defendant's state of mind and the nature of the misconduct. SEC v. Keener, 644 F. Supp. 3d 1290 Mr. Tierney's reliance on counsel negates any finding of egregious conduct. He consulted attorney John Pauciulo at every step and followed that advice in good faith. When he learned of LaForte's criminal history, he asked his attorney about its significance and was told it was not significant. This demonstrates good-faith effort to comply with legal requirements, not egregiousness.

**2. MICHAEL TIERNEY HAS NO CRIMINAL HISTORY OR PRIOR SECURITIES VIOLATIONS**

Unlike CBSG principal Joseph LaForte, who had prior convictions for grand larceny, money laundering, and conspiracy to operate illegal gambling, Mr. Tierney has no criminal history or prior regulatory violations. His conduct here represents a single episode tied to reliance on counsel, not a pattern of wrongdoing.

The "repeated nature of violations" factor considers whether the defendant has a history of similar misconduct. SEC v. BIH Corp., 2014 U.S. Dist. LEXIS 172122 Mr. Tierney has no such history. This was his first involvement with securities offerings, undertaken with legal guidance. This factor weighs against a substantial penalty.

**3. MICHAEL TIERNEY CONSENTED TO INJUNCTIVE RELIEF AND HAS ACKNOWLEDGED RESPONSIBILITY**

The Commission argues that Mr. Tierney's consent to injunctive relief "without admitting or denying the allegations" makes the fourth factor (failure to admit wrongdoing) "at best, neutral." But Mr. Tierney entered into a stipulated judgment acknowledging that the Court would determine appropriate relief. He consented to permanent prohibition from future unregistered securities sales.

This demonstrates acceptance of responsibility and cooperation with resolution of the case. Unlike defendants who contest liability through trial, Mr. Tierney agreed to binding injunctive relief. This cooperation should weigh in his favor, not be dismissed as "neutral."

**4. INVESTORS HAVE RECOVERED THEIR FUNDS AND SUFFERED NO PERMANENT LOSS**

The Commission argues that investors suffered substantial losses because they were "deprived of their funds for over five years." But the receiver has returned all investor funds. The Commission's own motion acknowledges that "Merchant investors will receive 100% of allowable claims."

The temporary deprivation of funds does not constitute the type of substantial investor loss that justifies maximum penalties. Investors are whole. No permanent harm occurred. The fifth factor, whether conduct created substantial losses, does not support a $236,450 penalty when all principal has been recovered.

The Commission attempts to manufacture harm by arguing that investors lost "the benefit of the use of their funds for many years." But this argument proves too much. By that logic, every securities violation, even technical registration failures, creates "substantial loss" because investors could have deployed capital elsewhere. Courts evaluate actual financial harm, not speculative alternative uses. Here, investors are being made whole through the receiver's distribution.

**5. MICHAEL TIERNEY COOPERATED WITH AUTHORITIES**

The Commission claims Mr. Tierney "was dishonest during his investigative testimony" because he "falsely testified that he did not know, by April 2020, that the Texas regulatory action involved CBSG." The Commission points to Mr. Tierney's execution of an April 2020 declaration concerning another agent fund as contradicting this testimony.

This characterization is unfair. Mr. Tierney had limited knowledge of regulatory proceedings and no legal training to parse their scope or parties. Any inconsistency in his testimony reflects confusion or lack of understanding, not deliberate dishonesty. Moreover, Mr. Tierney cooperated fully with the investigation, sat for testimony, and ultimately consented to resolution. The sixth factor does not support a maximum penalty.

**6. THE PENALTY SHOULD BE REDUCED BASED ON MICHAEL TIERNEY'S FINANCIAL CONDITION**

The seventh factor requires consideration of "whether the penalty that would otherwise be appropriate should be reduced due to the defendant's demonstrated current and future financial condition." SEC v. BIH Corp., 2014 U.S. Dist. LEXIS 172122

The Commission argues that Mr. Tierney "ha[s] produced no information or documents about [his] financial condition that would favor a reduced penalty." But the Commission's own motion establishes Mr. Tierney's limited financial resources. The entire $603,315.43 Mr. Tierney received was his sole income from 2018 to 2023. This income supported his personal living expenses.

Mr. Tierney is an insurance salesman, not a wealthy securities professional. He has no hidden assets. The amounts he received were consumed by ordinary living expenses. Imposing a $236,450 civil penalty on top of $603,315.43 disgorgement and $70,439.16 prejudgment interest would be financially devastating and potentially uncollectible.

Ability to pay is a relevant consideration in assessing civil penalties. SEC v. Warren, 534 F.3d 1368 Courts have discretion to reduce penalties based on a defendant's financial circumstances. Here, Mr. Tierney's modest financial position—demonstrated by his reliance on the fund income for basic living expenses—warrants substantial reduction or elimination of the civil penalty.

**7. THE REQUESTED PENALTY IS DISPROPORTIONATE TO MICHAEL TIERNEY'S ROLE AND CULPABILITY**

The Commission seeks the same $236,450 penalty against Michael Tierney as against Albert Vagnozzi, despite meaningful differences in their conduct. The Commission justifies this by arguing that both "acted at least negligently" and operated funds for extended periods. But, this ignores critical distinctions.

Albert Vagnozzi held Series 7 and 66 licenses and was previously associated with registered broker-dealers and investment advisers. He had professional securities training and industry experience. Mr. Tierney, by contrast, is an insurance salesman with no securities background. His brief prior association with a broker-dealer (December 2013 to October 2016) occurred years before the conduct at issue and does not establish securities expertise.

Moreover, Mr. Tierney relied entirely on attorney guidance, while the Commission makes no similar claim regarding Albert Vagnozzi. Treating these defendants identically ignores the fundamental principle that penalties must be individualized based on "the facts and circumstances" of each case. SEC v. Keener, 644 F. Supp. 3d 1290

The Commission compares the requested penalty to cases involving defendants with far greater culpability. In SEC v. Stuart, a $240,464 penalty was imposed for an offering fraud that raised $34 million. But Stuart involved fraud—scienter-based misconduct—while Mr. Tierney settled only negligence claims. In SEC v. Karina Fernandez, a $176,191 penalty was imposed for

"misstatements to investors." Again, active misrepresentation involves greater culpability than Mr. Tierney's negligent registration violations undertaken in reliance on counsel.

A penalty calibrated to Mr. Tierney's actual culpability, role, financial circumstances, and mitigating factors would be substantially lower than $236,450—if any penalty is appropriate at all.

**D. PREJUDGMENT INTEREST SHOULD BE REDUCED OR ELIMINATED IF DISGORGEMENT IS REDUCED**

The Commission seeks $70,439.16 in prejudgment interest, calculated from October 1, 2023, through February 28, 2025. Prejudgment interest is calculated using the IRS underpayment rate. SEC v. BIH Corp., 2014 U.S. Dist. LEXIS 172122

While prejudgment interest is generally appropriate to prevent defendants from obtaining an interest-free loan through illegal activity, SEC v. BIH Corp., 2014 U.S. Dist. LEXIS 172122 the equitable nature of this remedy gives courts discretion. SEC v. Lauer, 478 Fed. Appx. 550 If the Court reduces or eliminates disgorgement based on Mr. Tierney's lack of net profits and use of funds for living expenses, prejudgment interest should be reduced or eliminated proportionally. Moreover, the calculation period begins October 1, 2023—when the Commission filed its initial complaint—rather than when Mr. Tierney actually received the funds (August 2018 through March 2020). This substantially reduces the interest calculation and reflects the Commission's own delay in bringing this action. Given the mitigating circumstances, further reduction is appropriate.

**E. THE EQUITABLE NATURE OF THIS PROCEEDING PERMITS THE COURT TO FASHION REMEDIEA APPROPRIATE TO MICHAEL TIERNEY'S CIRCUMSTANCES**

This action is brought in equity, and there is no requirement that Mr. Tierney be ordered to restore anything or be fined. The SEC is being unnecessarily heavy-handed.

The Supreme Court has emphasized that disgorgement is an equitable remedy subject to traditional equitable principles. SEC v. Almagarby, 92 F.4th 1306 Courts possess broad discretion to fashion relief appropriate to the individual defendant's circumstances. SEC v. Keener, 644 F. Supp. 3d 1290

The Court should consider the totality of circumstances: Mr. Tierney's reliance on counsel, his lack of securities expertise, his absence of net profits, the recovery of all investor funds, his consent to permanent injunctive relief, the selective prosecution of his case while others were ignored, and his limited financial resources. These factors compel substantially reduced monetary sanctions or none at all.

Mr. Tierney has already been permanently enjoined from future violations. He will never again engage in unregistered securities offerings. The deterrent purpose of civil penalties has been served. Piling on devastating monetary sanctions serves no remedial purpose and would constitute punishment disproportionate to his culpability.

## V. CONCLUSION

Mr. Tierney is not a securities broker. He is an insurance salesman who relied on professional legal counsel and had no net profits beyond the income he used for ordinary living expenses. All investors have recovered their funds. He has consented to permanent injunctive relief. The SEC has selectively prosecuted him while ignoring a dozen others who did the same thing.

The requested monetary relief—$910,204.59 in total—is excessive, unjust, and contrary to equitable principles. The Court should substantially reduce or eliminate the requested disgorgement, prejudgment interest, and civil penalties.

## VI. PRAYER FOR RELIEF

WHEREFORE, Defendant Michael Tierney respectfully requests that this Court:

1. Deny the Commission's Motion for Final Judgments in its current form;

2. Order disgorgement, if any, in an amount substantially reduced from $603,315.43 to reflect Mr. Tierney's lack of net profits and use of funds for ordinary living expenses;

3. Order prejudgment interest, if any, in an amount proportionally reduced to any reduced disgorgement amount;

4. Order civil penalties, if any, in an amount substantially reduced from $236,450 to reflect the significant mitigating factors in Mr. Tierney's case, including his reliance on counsel, lack of securities expertise, negligent rather than fraudulent conduct, cooperation with authorities, absence of prior violations, and limited financial resources;

5. In the alternative, deny all monetary relief and enter final judgment incorporating only the previously consented-to permanent injunctive relief; and

6. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

HAINES LAW

*By: /s/ Clifford E. Haines*
CLIFFORD E. HAINES, ESQUIRE
Attorney I.D. No.9882
The Widener Building - 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
215-246-2201
Email: chaines@haines-law.com
*Counsel for Defendant Michael Tierney*

Dated: August 10, 2026

## CERTIFICATE OF SERVICE

I, Clifford E. Haines, Esquire, hereby certify that on this date, I served a true and correct copy of the foregoing Defendant's Response in Opposition to the SEC's Motion for Final Judgment upon the following counsel of record, by Electronic Mail and/or the court's electronic filing system, addressed as follows:

Brian John Lechich
U.S. Securities and Exchange Commission
801 Brickell Avenue
Suite 1950
Miami, FL 33131
LechichB@sec.gov

Matthew Louis Minsky
Bochetto and Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102
mminsky@bochettoandlentz.com

HAINES LAW,

*/s/ Clifford E. Haines*
Clifford E. Haines, Esquire
Counsel for Defendant Michael Tierney

Dated: August 10, 2026