**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-23749-RAR**

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

v.

**SHANNON WESTHEAD**, *et al.*,

Defendants.
_______________________________________/

**ORDER GRANTING IN PART PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR FINAL JUDGMENTS AGAINST DEFENDANTS ALEC VAGNOZZI, ALBERT VAGNOZZI, AND MICHAEL TIERNEY**

**THIS CAUSE** comes before the Court upon Plaintiff Securities and Exchange Commission's Motion for Final Judgments Against Defendants Alec Vagnozzi, Albert Vagnozzi, and Michael Tierney ("Motion"), [ECF No. 218]. This case is an enforcement action brought by the Securities and Exchange Commission ("SEC" or the "Commission") against Defendants for their alleged roles as agent fund managers in the unregistered securities offerings of Complete Business Solutions Group ("CBSG"), a $500 million Ponzi scheme.

The Court has carefully reviewed the Motion, Defendants Albert and Alec Vagnozzi's Response in Opposition ("Vagnozzi Response"), [ECF No. 231], Defendant Michael Tierney's Response in Opposition ("Tierney Response"), [ECF No. 232], Plaintiff's Reply ("Reply"), [ECF No. 235], the record, the applicable law, and all relevant submissions. Further, the Court held an evidentiary hearing on the Motion on November 2, 2026, [ECF No. 247] ("Hearing"), and heard oral argument. For the reasons set forth below, it is hereby

**ORDERED AND ADJUDGED** that the Motion is **GRANTED IN PART**. Each Defendant is ordered to pay disgorgement, prejudgment interest, and civil penalties as set forth

herein. Further, a permanent injunction shall issue against each Defendant, preventing them from committing further violations of the securities laws.

**BACKGROUND**

**I. Procedural Background**

The SEC filed this enforcement action on September 29, 2023 against Defendants Alec Vagnozzi, Albert Vagnozzi, and Michael Tierney (collectively, "Defendants"), as well as others[1] for their alleged roles as agent fund managers in the unregistered securities offerings of CBSG. The SEC alleged that Defendants violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), and Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 thereunder.[2] *See generally* Complaint, [ECF No. 1].

On March 14, 2025, the parties notified the Court that they had "reached tentative settlement agreements which, if approved by the [SEC], would obviate the need for trial." *See* [ECF No. 186] at 1. On July 14, 2025, the SEC notified the Court that the SEC had approved the proposed settlement and moved to amend the Complaint. *See* [ECF No. 194] at 1–2. Pursuant to that settlement, the SEC, among other things, agreed to dismiss the scienter-based claims against Defendants, each of whom consented to the entry of bifurcated judgments providing permanent injunctive relief against all violations alleged in the Amended Complaint. *See id.*; Consent of Defendant Alec Vagnozzi, [ECF No. 195-4]; Consent of Defendant Albert Vagnozzi, [ECF No.

---

[1] The SEC also charged Shannon Westhead ("Westhead") who, with Alec Vagnozzi, formed and operated Pisces Income Fund, LLC and Pisces Income Fund Parallel, LLC (collectively, "Pisces"), and the corporate entities through which Albert Vagnozzi and Tierney participated in the CBSG unregistered offering, Capricorn Income Fund I, LLC and Capricorn Income Fund Parallel, LLC (collectively, "Capricorn"), and Merchant Services Income Fund, LLC and Merchant Services Income Fund Parallel, LLC (collectively, "Merchant") (collectively with Pisces and Capricorn, the "Corporate Defendants"). Per their settlements, Final Judgments have been entered against Westhead and the Corporate Defendants. [ECF Nos. 199–202].

[2] The Corporate Defendants were charged only with violations of the securities registration provisions, specifically, Sections 5(a) and 5(c) of the Securities Act.

195-2]; Consent of Defendant Michael Tierney, [ECF No. 195-6]. The SEC's Amended Complaint was filed on July 15, 2025. *See* [ECF No. 197].

On July 21, 2025, the Court entered the consented-to bifurcated judgments against each of the Defendants, providing permanent injunctive relief for all violations alleged in the Amended Complaint. *See* [ECF Nos. 203–05]. Pursuant to the terms of their Consent Judgments, the parties agreed that upon the SEC's motion, the Court would determine whether to disgorge ill-gotten gains and/or impose a civil penalty pursuant to Section 20(d) of the Securities Act, [15 U.S.C. § 77t(d)], and Section 1(d)(3) of the Exchange Act, [15 U.S.C. § 78u(d)(3)], and, if so, the amount(s) of the disgorgement and/or civil penalty. *See id.* at Section II.

The SEC filed the instant Motion on February 18, 2026, seeking entry of final judgments against Defendants incorporating the previously consented-to permanent injunctive relief, and ordering Defendants to pay disgorgement, with prejudgment interest, and civil penalties. *See generally* Mot. Importantly, for purposes of this Motion, the Consent Judgments state that the allegations in the Amended Complaint shall be accepted and deemed true by the Court. *See* [ECF Nos. 203–05] at Section II. Accordingly, the Court must determine whether permanent injunctive relief, disgorgement, prejudgment interest, and/or civil penalties are appropriate for Defendants Alec Vagnozzi, Albert Vagnozzi, and Michael Tierney.

## II. Factual Background

The Court begins by setting forth the facts in the SEC's Amended Complaint—accepted and deemed true for purposes of the instant Motion, *see* [ECF Nos. 203–05] at Section II—that are most relevant to determining the amount of disgorgement and prejudgment interest, as well as the appropriate civil penalties to impose against each Defendant.

***a. The CBSG Unregistered, Fraudulent Offering***

As pled in the Amended Complaint, [ECF No. 197], this case centers on the unregistered CBSG fraudulent securities offering, which raised more than $500 million from investors nationwide through a network of agent fund managers operating their own securities offerings in an orchestrated effort to raise funds for CBSG in exchange for CBSG promissory notes. Am. Compl. ¶ 1. From August 2012 to July 2020, CBSG was in the business of making short-term loans to small businesses. *Id.* ¶¶ 33–37. Using a network of individuals and investment funds to sell promissory notes to the public, CBSG offered and sold securities in the form of promissory notes through nationwide unregistered securities offerings for which no registration exemption applied. *Id.* ¶¶ 34–36. During that same period, CBSG was led by Joseph LaForte, who had two previous felony convictions. *Id.* ¶¶ 7, 21, 27, 28. Before operating CBSG, LaForte was convicted in New York on state charges of grand larceny and money laundering, and in New Jersey on federal charges of conspiracy to operate an illegal gambling business. *Id.* ¶¶ 27–28.

Between 2018 and 2020, CBSG was the subject of, and disciplined in, several state regulatory actions in Pennsylvania, New Jersey, and Texas for securities law violations, including for using unregistered agents to offer and sell promissory notes. *Id.* ¶¶ 22–24, 38–42. In the Texas regulatory action, the Texas State Securities Board issued an emergency cease and desist order against CBSG and others, alleging fraud and registration violations based on the failure to disclose to investors, among other things, the previous regulatory orders by Pennsylvania and New Jersey against CBSG. *Id.* ¶ 24. To conceal its practice of compensating agents in connection with the offer and sale of CBSG promissory notes, CBSG began concealing its compensation to sales agents by having sales agents create their own funds ("Agent Funds") to raise money for the unregistered CBSG offering. *Id.* ¶ 43.

Agent Funds issued their own promissory notes to investors and then pooled and transferred investor money to CBSG twice per month in exchange for promissory notes issued by CBSG to the Agent Funds. *Id.* ¶ 45. CBSG would then compensate the Agent Funds and their managers, including Defendants, by issuing notes to the Agent Funds that provided higher interest returns than the notes the Agent Funds provided to investors. *Id.* ¶ 46. In other words, the "spread" between the CBSG interest rate paid to the Agent Funds and the interest rate the Agent Funds paid to their investors was the compensation CBSG paid to the Agent Funds and their managers for raising investor money in the unregistered CBSG offering. *Id.* ¶ 47. Alec Vagnozzi, Albert Vagnozzi, and Tierney, were agent fund managers. *Id.* ¶ 2.

In May 2023, LaForte and several CBSG principals were indicted in the Eastern District of Pennsylvania and charged with participating in a conspiracy to commit wire and securities fraud. *Id.* ¶¶ 25, 30. LaForte and several CBSG principals have since pleaded guilty. *Id.*

No registration statement was filed with the Commission or was in effect at the time of the CBSG offerings, and there were no applicable registration exemptions. *Id.* ¶ 49.

***b. Alec Vagnozzi's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act***

In October 2019, Alec Vagnozzi joined Pisces, an Agent Fund formed in September 2019 by Westhead, to raise investor funds for CBSG through the offer and sale of Pisces promissory notes. *Id.* 76–80. Investor funds raised from the sale of Pisces notes were transferred to CBSG in exchange for CBSG promissory notes issued to Pisces. *Id.* Alec Vagnozzi co-owned and co-managed Pisces with Westhead. *Id.* ¶¶ 12–13. From October 2019 to at least March 2020, Pisces issued promissory notes providing for returns as high as 14% to investors depending on the amount invested and the return of principal in 12 months. *Id.* ¶¶ 78–80.

During that same period, Pisces transferred to CBSG the investor funds, and CBSG issued promissory notes to Pisces that provided for a 20% interest rate to be paid to Pisces through "a monthly distribution payment." *Id.* ¶¶ 98–99. The difference between what CBSG paid Pisces (20% interest) and what Pisces paid investors (12%-to-14% interest) was the compensation Pisces received for raising investor funds for CBSG. *Id.* ¶ 100. CBSG paid Pisces hundreds of thousands of dollars of compensation for raising investor funds, and Alec Vagnozzi received approximately $128,000 as compensation. *Id.* ¶¶ 101–02.

Alec Vagnozzi solicited investors through telephone calls, emails, and in-person meetings to raise funds for CBSG's unregistered offering. *Id.* ¶ 81–82. He solicited investors by providing private placement memoranda ("PPM") and subscription agreements by mail and at in-person meetings. *Id.* ¶ 82. While soliciting investors, Alec Vagnozzi told investors and prospective investors that the offerings complied with the securities laws and that the PPMs contained all the information a person would want to know to make an informed investment decision. *Id.* ¶ 85. The Pisces PPM also disclosed that the promissory notes involved "a high degree of risk" and that Pisces "is an early-stage company that has been organized to operate as a lending company to merchant cash advance businesses," *id.* ¶ 84, when in fact, Pisces only loaned funds to one business, CBSG. *See generally* Am. Compl. Between October 2019 and March 2020, Pisces, through Alec Vagnozzi, touted CBSG's track record as a leader in the merchant cash advance industry but failed to disclose CBSG's regulatory history and LaForte's criminal background. *Id.* ¶ 86.

In March 2020, Alec Vagnozzi notified investors that, because of the Covid-19 pandemic, CBSG would default on notes issued to the Agent Funds. *Id.* ¶ 9. That same month, Westhead and Alec Vagnozzi created Pisces Income Fund Parallel, LLC ("Pisces Parallel"), which offered

existing Pisces investors the option to: (a) either restructure their Pisces promissory notes into new notes issued by Pisces Parallel promising to pay 4% annual returns and return of principal within seven years (instead of the initial Pisces promissory notes that promised 12 to 14% returns and return of principal within one year); or (b) face nonpayment on existing Pisces notes. *Id.* ¶¶ 103–04. Westhead, Alec Vagnozzi, and Pisces Parallel told investors that they had three days to accept this Pisces Parallel offer, and investors exchanged their notes around May 2020. *Id.* ¶¶ 105–06.

Alec Vagnozzi knew about: (a) the Pennsylvania regulatory action by no later than October 2019; (b) the New Jersey regulatory action by no later than April 2020; (c) the Texas regulatory action by no later than April 2020; and (d) rumors of LaForte's criminal background in late 2019, although he did not believe it was his responsibility to follow up for additional information. *Id.* ¶¶ 88, 90, 92, 94. When soliciting Pisces investors for the Pisces Parallel offering, Westhead, Alec Vagnozzi, and Pisces failed to disclose to investors the CBSG regulatory actions in Texas, Pennsylvania, and New Jersey. *Id.* ¶ 107.

Between October 2019 and July 2020, Alec Vagnozzi was not registered as a broker or dealer with the SEC and was not associated with a broker or dealer registered with the SEC. *Id.* ¶ 144.

***c. Albert Vagnozzi's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act***

In May 2018, Albert Vagnozzi formed Capricorn, an Agent Fund, to raise investor funds for CBSG through the offer and sale of Capricorn promissory notes, and then transferred investor funds to CBSG in exchange for CBSG promissory notes issued to Capricorn. *Id.* ¶ 50. From May 2018 through March 2020, Albert Vagnozzi offered and sold securities in the form of Capricorn promissory notes. *Id.* ¶ 51.

Albert Vagnozzi executed the Capricorn promissory notes. *Id.* ¶ 53. The Capricorn promissory notes provided for a 12% or 14% return to investors depending on the amounts invested and the rate negotiated by Albert Vagnozzi, with the return of principal to investors at the conclusion of 12 months. *Id.* ¶ 52. Albert Vagnozzi solicited investors through telephone calls, emails, and in-person meetings, and provided investors with PPMs and subscription agreements either through the mail or during in-person meetings. *Id.* ¶¶ 54–55. The Capricorn PPM falsely told investors and prospective investors that the offering complied with securities laws and that the PPM contained all the information a person would want to know to make an informed investment decision. *Id.* ¶ 57. The Capricorn PPM specifically said that the investment involved "a high degree of risk" and that Capricorn "is an early-stage company that has been organized as a lending company to merchant cash advance businesses." *Id.* ¶ 56. While soliciting investors, Albert Vagnozzi knew that Capricorn only invested in CBSG promissory notes, but the PPM omitted this information and instead told investors that Capricorn generally invested in merchant cash advance businesses. *Id.* ¶ 58. During in-person and telephone communications with investors, Albert Vagnozzi and Capricorn touted CBSG's record as a leader in the merchant cash advance industry but failed to disclose CBSG's regulatory history. *Id.* ¶ 59.

Albert Vagnozzi and Capricorn transferred the funds it raised from investors to CBSG in exchange for CBSG promissory notes issued to Capricorn. *Id.* ¶ 67. Albert Vagnozzi and Capricorn received 18% interest from the CBSG promissory notes. *Id.* ¶¶ 67, 69. Albert Vagnozzi and Capricorn then used funds paid by CBSG to pay investors 12% to 14% interest on amounts invested and kept the remaining 4% to 6% as compensation for raising investor funds for the unregistered CBSG offering. *Id.* ¶ 70. From May 2018 through March 2020, CBSG paid Capricorn $3.96 million. *Id.* ¶ 71. Capricorn paid investors $2.75 million, and the balance was

Capricorn's compensation for raising investor funds. *Id.* From Capricorn's compensation, at least $969,000 was paid to Albert Vagnozzi as compensation for raising investor funds. *Id.* ¶ 72.

In March 2020, Albert Vagnozzi notified investors that, because of the Covid-19 pandemic, CBSG would default on notes issued to the Agent Funds. *Id.* ¶ 9. In April 2020, Albert Vagnozzi formed Capricorn Income Fund Parallel, LLC ("Capricorn Parallel"), a new agent fund, and offered new promissory notes that offered 4% to 6% interest with the principal repaid over a seven-year time period. *Id.* ¶¶ 8, 9, 17, 73. Albert Vagnozzi continued operating Capricorn Parallel until at least July 2020. *Id.* ¶ 135.

Albert Vagnozzi knew about the Pennsylvania regulatory action by December 2018 and the New Jersey and Texas regulatory actions by no later than April 2020. *Id.* ¶¶ 60–61. After learning about the Pennsylvania regulatory action, Albert Vagnozzi sold several promissory notes to investors. *See id.* ¶¶ 62–65.

Between May 2018 and July 2020, Albert Vagnozzi was not registered as a broker or dealer with the SEC and was not associated with a broker or dealer registered with the SEC. *Id.* ¶ 144.

#### d. *Tierney's Violations of Sections 5 and 17(a)(2) and (3) of the Securities Act, and Section 15(a)(1) of the Exchange Act*

In June 2018, Tierney formed Merchant, an Agent Fund, to raise investor funds for CBSG through the offer and sale of Merchant promissory notes, and then transferred the investor funds to CBSG in exchange for CBSG promissory notes issued to Merchant. *Id.* ¶ 108. From August 2018 through March 2020, Tierney offered and sold securities in the form of Merchant promissory notes. *Id.* ¶ 109.

On behalf of Merchant, Tierney executed promissory notes with investors promising 12% to 14% returns, with monthly interest payments and a full return of principal at the end of a 12-month term. *Id.* ¶¶ 112–13, 125. From August 2018 through at least March 2020, Tierney solicited

investors through telephone calls, emails, and in-person meetings, and provided PPMs and subscription agreements to investors through the mail or during in-person meetings. *Id.* ¶¶ 114–15. Tierney also processed investment paperwork and handled investor funds on behalf of investors who decided to invest through Merchant. *Id.* ¶ 116. Merchant's PPMs stated that investments involved "a high degree of risk" and that proceeds from the sales of the promissory notes would be used to purchase notes and debt from companies providing merchant cash advance financing. *Id.* ¶ 117. Tierney also told investors and prospective investors that the Merchant offerings complied with the securities laws and that the PPMs contained all the information a person would want to know to make an informed investment decision. *Id.* ¶ 120.

Merchant sent the investor funds that Tierney raised in the Merchant offering to CBSG, which issued to Merchant promissory notes that provided a 20% interest rate to be paid through a "monthly distribution payment." *Id.* ¶¶ 126–27. The difference between the interest CBSG paid to Merchant (20%), and the interest Merchant paid to investors (12% to 14%) was the compensation Merchant received for raising investor funds for CBSG. *Id.* ¶ 128. From Merchant's compensation, at least $603,315.43 was paid to Tierney as compensation. *See* Mot. at 17; Declaration of Crystal Ivory ("Ivory Declaration"), [ECF No. 218-4], at ¶¶ 16-20; Ivory Decl. at Ex. E; Ivory Decl. at Ex. F.

From April 2020 until July 2020, Tierney and Merchant Services Income Fund Parallel, LLC ("Merchant Parallel"), a new agent fund Tierney created, offered new promissory notes to Merchant's existing investors, at lower, 4% interest rates and longer, seven-year, maturity periods. Am. Compl. ¶¶ 110, 129–31. Tierney and Merchant Parallel offered existing Merchant investors the option to: (i) either restructure their Merchant promissory notes into new notes issued by Merchant Parallel that promised 4% annual returns and return of principal in seven years (instead

of the initial Merchant promissory notes which promised 12% to 14% interest with a return of principal in one year) or (ii) face nonpayment on the existing Merchant promissory notes. *Id.* ¶ 130. In about May 2020, Merchant investors exchanged their Merchant promissory notes for promissory notes issued by Merchant Parallel. *Id.* ¶ 131. When soliciting the Merchant investors to invest in Merchant Parallel, Tierney and Merchant touted CBSG but failed to disclose the Texas, Pennsylvania, or New Jersey regulatory actions against CBSG, or LaForte's criminal history. *Id.* ¶¶ 118–22, 132.

By no later than November 2018, Tierney knew about LaForte's criminal record and that LaForte managed CBSG. *Id.* ¶ 119. By April 2020, Tierney knew about the Pennsylvania, New Jersey, and Texas regulatory actions against CBSG. *Id.* ¶ 118. But Tierney did not share this information with investors and prospective investors and instead touted CBSG's record as a leader in the merchant cash advance industry. *See id.* ¶¶ 121–25.

Between August 2018 and July 2020, Tierney was not registered as a broker or dealer with the SEC and was not associated with a broker or dealer registered with the SEC. *Id.* ¶ 144.

## LEGAL STANDARDS

Congress has authorized the SEC to enforce the Securities Act and the Exchange Act and to punish securities fraud through administrative and civil proceedings. *SEC v. Spartan Sec. Grp., Ltd.*, No. 8:19-CV-448, 2022 WL 3224008, at *1 (M.D. Fla. Aug. 10, 2022). Once the Court has determined that securities violations have occurred, the Court has broad discretion to fashion appropriate remedies. *Id.* (citing *SEC v. Lorin*, 76 F.3d 458, 461–62 (2d Cir. 1996)). Appropriate remedies include injunctive relief, as well as monetary remedies—namely disgorgement, prejudgment interest, and civil penalties. The Court proceeds by outlining the legal framework applicable for each remedy.

**I. Injunctive Relief**

"When Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024). Federal Rule of Civil Procedure 65(d) provides that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts sought to be restrained or required." *See* FED. R. CIV. P. 65(d). The Eleventh Circuit has explained that "[a]n injunction 'should clearly let defendant[s] know what [they are] ordered to do or not to do.'" *S.E.C. v. Goble*, 682 F.3d 934, 950 (11th Cir. 2012) (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001)).

In *Goble*, the Eleventh Circuit recognized that "[p]ermitting injunctions of some breadth in the context of civil enforcement actions brought by the SEC is warranted," and as such, "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." *Id.* at 952. Consistent with *Goble*, district courts in this Circuit have entered permanent injunctions restraining and enjoining defendants from violations of broadly construed statutes and rules, including Securities Act Sections 17(a)(2) and (3). *See e.g.*, *SEC v. Natural Diamonds Invest. Co.*, No. 19-cv-80633-RLR (S.D. Fla. Oct. 18, 2023); *SEC v. Filoramo*, No. 23-cv-61858-WPD (S.D. Fla. Jan. 8, 2024); *SEC v. Schneider*, No. 9:17-cv-81142-RLR (S.D. Apr. 5, 2019). For more narrowly constructed statutes and rules, *Goble* acknowledged that an injunction based on a statutory or regulatory provision that "specifically describe[s] the acts required of the person enjoined" can satisfy Rule 65(d)(1). *Goble*, 682 F.3d at 952.

## II. Monetary Remedies

The Supreme Court has made clear that disgorgement is a well-established equitable remedy for recovering "ill-gotten gains." *See Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 79 (2020). Specifically, a disgorgement award that "does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)." *Id.* at 74–75. Importantly, disgorgement is not a punitive remedy—it is simply meant to restore the status quo. *See id.* at 78–81; *SEC v. Tayeh*, 848 F. App'x 827, 828 (11th Cir. 2021) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment from ill-gotten gains and must not be used punitively."). However, a showing of pecuniary loss is not required to justify a disgorgement award. *Sripetch v. Sec. & Exch. Comm'n*, 608 U.S. 555, 569 (2026). Shortly after *Liu*, Congress amended the securities remedies statute to expressly permit courts to order disgorgement. *See Spartan Sec. Grp.*, 2022 WL 3224008, at *8. As a result, current federal law states that "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). Further, "[i]n any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement." 15 U.S.C. § 78u(d)(7).

To be entitled to disgorgement, the SEC must produce a reasonable approximation of a defendant's ill-gotten gains. *S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) (citing *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231–32 (D.C. Cir. 1989)). "Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (citation modified). Once the SEC

produces a reasonable approximation of a defendant's ill-gotten gains, the burden shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation. *Id*.

Importantly, courts must restrict disgorgement awards to "net profits from wrongdoing after deducting legitimate expenses." *Liu*, 591 U.S. at 84. The Supreme Court has carved out a limited exception to this rule when the "entire profit of a business or undertaking" results from the wrongful activity. *Id.* "[W]hen the entire profit of a business or undertaking results from the wrongdoing, a defendant may be denied inequitable deductions such as for personal services." *SEC v. Blackburn*, No. 15-CV-2451, 2020 WL 10787527, at *2 (E.D. La. Nov. 3, 2020) (citation modified). This exception requires a court to determine "whether expenses are legitimate or whether they are merely wrongful gains 'under another name.'" *Id.*

**III. Civil Penalties**

Federal securities law permits the imposition of civil penalties for violations of federal securities law. "Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." *SEC v. Monterosso*, 756 F.3d 1326, 1338 (11th Cir. 2010). "[T]he Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation." 15 U.S.C. §§ 77t(d)(1). The penalties that the SEC can seek provide for three tiers of escalating amounts depending on the severity of the violations:

> **(A) First tier**
> The amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation, the amount of the penalty shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation.
>
> **(B) Second tier**
> Notwithstanding subparagraph (A), the amount of penalty for each such violation shall not exceed the greater of (i) $50,000 for a natural person or

> $250,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.
>
> **(C) Third tier**
> Notwithstanding subparagraphs (A) and (B), the amount of penalty for each such violation shall not exceed the greater of (i) $100,000 for a natural person or $500,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if—
>
> (I) the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
>
> (II) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

15 U.S.C. §§ 77t(d)(2). The "Commission need only make 'a proper showing' that a violation has occurred and a penalty is warranted." *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008). Beyond setting maximum penalties, the statutes leave the amount to be imposed to the discretion of the district judge. *Monterosso*, 756 F.3d at 1338 (citing *Warren,* 534 F.3d at 1369); *see also SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013), *as amended* (Nov. 26, 2013) (*citing SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005)). However, courts commonly calculate civil penalties in two ways—by assessing the gross pecuniary gain or by multiplying the number of violations by a specified dollar amount determined by reference to the applicable tier of offense severity. *SEC v. Am. Growth Funding II, LLC*, No. 16-CV-828, 2019 WL 4623504, at *3 (S.D.N.Y. Sept. 24, 2019). These penalty amounts are laid out in 15 U.S.C. §§ 77t(d)(2) and adjusted for inflation by the Federal Civil Penalties Inflation Adjustment Act of 1990. *See* 17 C.F.R. §§ 201.1001. Some courts look to the number of "violative transactions" or the number of "investors to whom illegal conduct was directed," while others calculate damages based on the number of statutory violations committed. *Am. Growth Funding*, 2019 WL 4623504, at *3 (citation omitted).

Courts also look to the following general factors when imposing penalties under the civil penalty provisions of the securities laws:

> (1) the egregiousness of the violations at issue; (2) defendants' scienter; (3) the repeated nature of the violations; (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

*SEC v. Huff*, 758 F. Supp. 2d 1288, 1364 (S.D. Fla. 2010), *aff'd*, 455 F. App'x 882 (11th Cir. 2012). The Eleventh Circuit has held that, "[a]t most, ability to pay is one factor to be considered in imposing a penalty" and it is not determinative and does not merit significant weight. *Warren*, 534 F.3d at 1370; *see also Monterosso*, 756 F.3d at 1338.

**<u>ANALYSIS</u>**

The SEC requests permanent injunctive relief, disgorgement, prejudgment interest, and civil penalties against each Defendant. *See* Am. Compl. at 24–25. The Court addresses each request in turn.

## I. Permanent Injunctive Relief

This Court has already entered bifurcated judgments providing permanent injunctive relief against all violations alleged in the Amended Complaint, to which Defendants have consented. *See* [ECF Nos. 203–05]; Consent of Defendant Alec Vagnozzi, [ECF No. 195-4]; Consent of Defendant Albert Vagnozzi, [ECF No. 195-2]; Consent of Defendant Michael Tierney, [ECF No. 195-6]. The terms of the injunctions comply with the requirements of Rule 65(d) and *Goble*, as they state the reasons for the entry of permanent injunction, specify the terms of the injunctions, and sufficiently notify Defendants of the restrained conduct. *See* FED. R. CIV. P. 65(d); *Goble*, 682 F.3d at 950. The language enjoining Defendants from violations of Securities Act Sections

17(a)(2) and (3) incorporates the language of the statute while also including prohibitions specific to the Defendants' conduct. *Goble*, 682 F.3d at 952. And the language enjoining Defendants from violations of Securities Act Section 5 and Exchange Act Section 15(a)(1) permissively track the language of these statutes, which "specifically describe the acts required of the person[s] enjoined" and thus "clearly let the defendant[s] know what [they are] ordered to do or not." *Id.* at 950, 952.

Accordingly, consistent with the judgments already entered, *see* [ECF Nos. 203–05], Defendants shall be permanently enjoined from committing further violations of the securities laws.

**II. Disgorgement**

The parties agree that the Court has the authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." *Liu*, 591 U.S. at 75; Mot. at 15; Tierney Resp. at 8; Vagnozzi Resp. at 12. As an initial matter, the Court finds that disgorgement is appropriate in this case. Accepting as true the allegations in the Amended Complaint, Defendants have violated the securities laws, and the SEC is entitled to disgorgement of their ill-gotten gains. *See Liu*, 591 U.S. at 88–90. The SEC has provided bank records of the amounts that Pisces transferred to Alec Vagnozzi, Capricorn transferred to Albert Vagnozzi, and Merchant transferred to Tierney, which meet its burden to provide a reasonable approximation of the proceeds that each Defendant received for his violations of the federal securities laws. *See Calvo*, 378 F.3d at 1217.

The SEC seeks to disgorge the following amounts from each Defendant: (A) $128,500 from Alec Vagnozzi; (B) $920,334.62 from Albert Vagnozzi; and (C) $603,315.43 from Tierney. Mot. at 16–17; Plaintiff Securities and Exchange Commission's Notice of Amended Disgorgement

and Prejudgment Interest Amounts Sought Against Defendant Albert Vagnozzi, [ECF No. 241]. The Court will address each Defendant in turn.

**A. Alec Vagnozzi**

The SEC seeks to disgorge $128,500 from Alec Vagnozzi for violations of the federal securities laws alleged in the Amended Complaint. *See* Mot. at 16. The SEC has provided bank records and analysis demonstrating that this amount is consistent with the amount that Pisces transferred to Alec Vagnozzi. *See* Ivory Decl. at ¶¶ 6–10, Ex. A, Ex. B. Specifically, of the amount transferred from CBSG to Pisces' bank account, Pisces transferred $128,500 to Alec Vagnozzi in two payments. *Id.* The SEC has thus met its burden to provide a reasonable approximation of the proceeds that Alec Vagnozzi received for his violations of the federal securities laws. *See Calvo*, 378 F.3d at 1217. Alec Vagnozzi has not requested or provided evidence of any legitimate business expenses that may be deducted under *Liu.* 591 U.S. at 91–92.

Accordingly, Alec Vagnozzi is **ORDERED** to disgorge **$128,500**.

**B. Albert Vagnozzi**

The SEC seeks to disgorge $920,334.62 from Albert Vagnozzi for violations of the federal securities laws alleged in the Amended Complaint. *See* Plaintiff Securities and Exchange Commission's Notice of Amended Disgorgement and Prejudgment Interest Amounts Sought Against Defendant Albert Vagnozzi, [ECF No. 241].[3] The SEC has provided bank records and analysis demonstrating that this amount is consistent with the amount that Capricorn transferred

---

[3] On October 14, 2026, the SEC filed a Notice of Amended Disgorgement and Prejudgment Interest Amounts Sought Against Defendant Albert Vagnozzi ("SEC Notice of Amended Disgorgement"), [ECF No. 241], reducing the amounts of disgorgement and prejudgment interest it seeks against Defendant Albert Vagnozzi. *See* SEC Notice of Am. Disgorgement at 1. Specifically, the SEC amended its request for disgorgement in Section V.A.ii of its Motion, [ECF No. 218] at 16, from $969,686.29 to $920,334.62 and withdrew its argument in Section III.B of its Reply, [ECF No. 235] at 4. SEC Notice of Am. Disgorgement at 1.

to Albert Vagnozzi, reduced by the amount received prior to September 29, 2018. *See* Ivory Decl. at ¶¶ 11–15, Ex. C, Ex. D; Vagnozzi Resp. 13–14; SEC Notice of Am. Disgorgement at 1. The SEC has thus met its burden to provide a reasonable approximation of the proceeds that Albert Vagnozzi received for his violations of the federal securities laws. *See Calvo*, 378 F.3d at 1217.

Albert Vagnozzi argues that the amount of disgorgement should be further reduced by $336,398.00, as this amount was received as a result of the sale of promissory notes prior to September 29, 2018—five years before the Complaint was filed—and thus falls outside the applicable five-year statute of limitations. *See* Vagnozzi Resp. at 14; Defendant Albert Vagnozzi's Reply in Response to the SEC's Arguments on Statute of Limitations Addressed in [ECF No. 250], [ECF No. 254] at 1–2. The SEC's position is that although the promissory notes may have been sold, and related misrepresentations made, before September 29, 2018, the Section 17(a)(2) violations were not complete, and the statute of limitations did not yet accrue, until Albert Vagnozzi obtained the $336,398. *See* Plaintiff Securities and Exchange Commission's Notice of Filing Proposed Final Judgments and Arguments Addressed at Hearing on Statute of Limitations, [ECF No. 250].

The Securities Exchange Act of 1934 permits the SEC to bring a claim for disgorgement based on a non-scienter violation, "not later than 5 years after the latest date of the violation that gives rise to the action or proceeding." 15 U.S.C. § 78u(d)(8)(A)(i). Securities Act Section 17(a)(2) makes it unlawful, in the offer or sale of securities, "to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made." 15 U.S.C. § 77q(a)(2). Because obtaining money or property is an element of the violation based on the plain language of the statute, Albert Vagnozzi's Section 17(a)(2) violation was not complete until he received the money from the sale of the promissory

notes. As such, the cause of action did not accrue until Albert Vagnozzi received the income, which occurred after September 28, 2019. Accordingly, the Court declines to reduce the disgorgement amount by $336,398.00.

Albert Vagnozzi further argues that the disgorgement amount should be reduced by $43,923.24, as this is the amount he personally paid for the submission of accounting and tax preparation services for Capricorn and Capricorn Parallel from 2021 through 2025. Vagnozzi Resp. at 14. However, Albert Vagnozzi incurred these expenses after the Agent Funds ceased operations; thus, they do not qualify as deductions because they were not "incurred in producing the revenues that are subject to disgorgement." *See Liu*, 591 U.S. at 91–92 (citing Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment h). As such, the Court finds that Albert Vagnozzi has not requested or provided evidence of any legitimate business expenses that may be deducted under *Liu*. *Id.*

Accordingly, Albert Vagnozzi is **ORDERED** to disgorge **$920,334.62**.

### C. Michael Tierney

The SEC seeks to disgorge $603,315.43 from Tierney for violations of the federal securities laws alleged in the Amended Complaint. *See* Mot. at 17. The SEC has provided bank records and analysis demonstrating that this amount is consistent with the amount that Merchant transferred to Tierney. *See* Ivory Decl. at ¶¶ 16–20, Ex. E, Ex. F. The SEC has thus met its burden to provide a reasonable approximation of the proceeds that Tierney received for his violations of the federal securities laws. *See Calvo*, 378 F.3d at 1217. Additionally, based on Tierney's testimony and the evidence presented at the Hearing, it is well-supported that Tierney received more than $700,000 from Merchant in 2019 alone. Hr'g Ex. T-3 (demonstrating that based on Tierney's Form 1040 from 2019, he received $785,177 from Merchant); Hr'g Tr. 41:13–44:4 (same). Accordingly, the

Court finds that the testimony and evidence presented at the Hearing do not rebut the SEC's reasonable approximation for disgorgement; indeed, they only further corroborate what he was paid by Merchant.

Tierney also argues that the disgorgement amount should be reduced for legitimate business expenses, but he has not provided evidence of any legitimate business expenses that may be deducted under *Liu*. *See Liu*, 591 U.S. at 91–92. Tierney asserts that he used the income he received from Merchant for personal living expenses and personal income taxes. Tierney Resp. at 10. However, personal living expenses are not legitimate business expenses that may be deducted under *Liu*. *Id.* at 84; *Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, No. 20-81205, 2024 WL 4826059, at *16 (S.D. Fla. Nov. 18, 2024), *appeal dismissed,* No. 25-10183-JJ, 2025 WL 2046559 (11th Cir. May 5, 2025), and *aff'd,* No. 22-13853, 2025 WL 1639323 (11th Cir. June 10, 2025). Nor are the payment of personal income taxes. *SEC v. Merch. Cap., LLC*, 486 F. App'x 93, 96 (11th Cir. 2012). As such, the Court finds that Tierney has not requested or provided evidence of any legitimate business expenses that may be deducted under *Liu.*

Accordingly, Tierney is **ORDERED** to disgorge **$603,315.43**.

### III. Prejudgment Interest

The Consent Judgments signed by Alec Vagnozzi, Albert Vagnozzi, and Tierney state that "[i]f disgorgement is ordered, Defendant shall pay prejudgment interest thereon, calculated from October 1, 2023 based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." *See* [ECF Nos. 203–05] at Section II. And the SEC seeks prejudgment interest for an even shorter period of time—from October 1, 2023 through February 28, 2025. *See* Mot. at 17–18. Accordingly, Defendants are **ORDERED** to pay prejudgment interest in the following amounts:

- Alec Vagnozzi: **$15,002.82**[4]
- Albert Vagnozzi: **$95,186**[5]
- Michael Tierney: **$70,439.16**[6]

## IV. Civil Penalties

Pursuant to the Consent Judgments, the Court will focus its analysis on the allegations found within the Amended Complaint in determining the proper civil penalties for Defendants. *See* [ECF Nos. 203–05]. Based on the violations of the federal securities laws alleged in the Amended Complaint, the SEC has made a proper showing that civil penalties are appropriate for all Defendants. *Warren*, 534 F.3d at 1370.

The SEC seeks second-tier civil penalties against each Defendant—$75,000 from Alec Vagnozzi, $236,450 from Albert Vagnozzi, and $236,450 from Tierney. Mot. at 20–26. Defendants dispute that second tier penalties are appropriate, arguing that the penalties should be reduced or eliminated altogether. *See* Tierney Resp. at 11–18; Vagnozzi Resp. at 18–22.

First-tier penalties may be imposed for violations of federal securities laws. *Monterosso*, 756 F.3d at 1338 (citing 15 U.S.C. §§ 77t(d)(2)). Second-tier penalties may be imposed when the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.*

The SEC argues that second-tier penalties are warranted for all three Defendants because Defendants' conduct involved fraud violations under Sections 17(a)(2) and 17(a)(3) of the

---

[4] *See* Ivory Decl. at ¶ 21, Ex. G.

[5] This amount reflects prejudgment interest on the SEC's amended request for disgorgement. *See* SEC Notice of Am. Disgorgement at 2; [ECF No. 241-1].

[6] *See* Ivory Decl. at ¶ 23, Ex. I.

Securities Act. *See* Mot. at 19. However, "[t]he statutes leave the amount to be imposed to the discretion of the district judge." As such, the Court proceeds to consider (1) whether second tier penalties are appropriate for each Defendant and (2) whether the penalty that would otherwise be appropriate should be reduced based on the factors articulated in *Huff*.[7]

**A. Alec Vagnozzi**

The SEC asks the Court to impose a second-tier civil penalty of $75,000 for Alec Vagnozzi's violations of the federal securities laws. Mot. at 20. While second-tier penalties may be imposed for violations involving fraud, the Court finds that based on Alec Vagnozzi's credible testimony at the Hearing and equitable considerations under the *Huff* factors, a $75,000 civil penalty is not appropriate against Alec Vagnozzi. Instead, the Court will impose a first-tier penalty of $11,823.

The Court agrees with the SEC that Alec Vagnozzi acted at least negligently in conducting the unregistered offering. Accepting the allegations in the Amended Complaint as true, despite his knowledge of CBSG's regulatory history and LaForte's criminal background, Alec Vagnozzi told investors and prospective investors that the unregistered offering complied with the securities laws and that the PPMs for Pisces and Pisces Parallel contained all the information a person would want to know to make an informed decision. Am. Compl. ¶¶ 9, 85–86, 88, 90, 92, 94, 103–07. There is no doubt that this conduct was an egregious violation of the federal securities laws that created substantial losses to investors. However, Alec Vagnozzi credibly testified that he had a limited role at Pisces and lesser involvement in the sales offering of CBSG investments. *See* Hr'g

[7] (1) The egregiousness of the violations at issue; (2) defendants' scienter; (3) the repeated nature of the violations; (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition. *Huff*, 758 F. Supp. 2d at 1364.

Tr. 140:19–141:18. As such, the Court finds that the *Huff* factors do not support imposing a $75,000 penalty against Alec Vagnozzi. Instead, the Court finds that equitable considerations support reducing the civil penalty amount to a first-tier penalty of $11,823.

Accordingly, it is **ORDERED** that Alec Vagnozzi is assessed **$11,823** in civil penalties.

**B. Albert Vagnozzi**

The SEC asks the Court to impose a second-tier civil penalty of $236,450 for Albert Vagnozzi's violations of the federal securities laws. Mot. at 22. Based on the testimony and evidence presented at the Hearing, and equitable considerations under the *Huff* factors, the Court finds that such a penalty is appropriate.

The Court agrees with the SEC that Albert Vagnozzi acted at least negligently in conducting the unregistered offering. Accepting the allegations in the Amended Complaint as true, despite his knowledge of the three regulatory actions against CBSG, Alec Vagnozzi told investors and prospective investors that the unregistered offering complied with the securities laws and that the PPMs for Capricorn and Capricorn Parallel contained all the information a person would want to know to make an informed decision. Am. Compl. ¶¶ 9, 57, 59–65. There is no doubt that this conduct was an egregious violation of the federal securities laws that created substantial losses to investors.

While the SEC did not allege that Albert Vagnozzi knew of LaForte's criminal history and failed to disclose it, several paragraphs of the Amended Complaint allege that Albert Vagnozzi knew of the regulatory actions against CBSG yet failed to disclose them to investors. *Id.* ¶¶ 60–61. Because these allegations in the Amended Complaint support that Albert Vagnozzi made misrepresentations to investors and prospective investors, his lack of knowledge of LaForte's criminal history does not warrant a reduction in the civil penalty amount.

Additionally, during the conduct that is the subject of this action, Albert Vagnozzi held Series 7 and 66 licenses and was previously registered as an investment adviser representative with Pennsylvania, Florida, New Jersey, and Texas. *See* Mot. at 23 & n.11. To obtain these licenses, Albert Vagnozzi had to take a course and pass an exam covering securities and investment disclosures. *See* Hr'g Tr. 88:11–89:4. These previous affiliations add to the egregiousness of Albert Vagnozzi's conduct. Given his previous training and experience, he either knew or should have known that his failure to disclose CBSG's regulatory history to investors and prospective investors violated the federal securities laws.

Lastly, Albert Vagnozzi's purported reliance on attorney John Pauciulo does not warrant a reduction in the civil penalty amount. Reliance on counsel does not negate the allegations in the Amended Complaint, which Albert Vagnozzi expressly agreed would be accepted and deemed true by the Court for purposes of this Motion. *See* [ECF No. 203] at Section II.

In sum, the Court finds that based on the allegations in the Amended Complaint and Albert Vagnozzi's previous experience as a registered investment adviser representative, a second-tier civil penalty of $236,450 is appropriate and the *Huff* factors do not warrant a reduction of this otherwise appropriate penalty.

Accordingly, it is **ORDERED** that Albert Vagnozzi is assessed **$236,450** in civil penalties.

**C. Michael Tierney**

The SEC asks the Court to impose a second-tier civil penalty of $236,450 for Michael Tierney's violations of the federal securities laws. Mot. at 22. Based on the testimony and evidence presented at the Hearing, and equitable considerations under the *Huff* factors, the Court finds that such a penalty is appropriate.

The Court agrees with the SEC that Tierney acted at least negligently in conducting the unregistered offering. Accepting the allegations in the Amended Complaint as true, despite his knowledge of the three regulatory actions against CBSG and LaForte's past criminal history, Tierney told investors and prospective investors that the unregistered offering complied with the securities laws and that the PPMs for Merchant and Merchant Parallel contained all the information a person would want to know to make an informed decision. Am. Compl. ¶¶ 9, 118–19, 121–25. There is no doubt that this conduct was an egregious violation of the federal securities laws that created substantial losses to investors.

Additionally, Tierney's prior training and experience as an investment adviser representative add to the egregiousness of Tierney's conduct. *See* Mot. at 23–24 & n.11. Like Albert Vagnozzi, Tierney previously held a Series 7 license as well as a license that enabled him to serve as an investment adviser. *See* Hr'g Tr. 34:11–36:18. Obtaining these licenses required him to take a course and pass an exam covering securities and investment disclosures. *Id.* Given his previous training and experience, he either knew or should have known that his failure to disclose CBSG's regulatory history to investors and prospective investors violated the federal securities laws.

Lastly, Tierney's purported reliance on attorney John Pauciulo does not warrant a reduction in the civil penalty amount. Reliance on counsel does not negate the allegations in the Amended Complaint, which Tierney expressly agreed would be accepted and deemed true by the Court for purposes of this Motion. *See* [ECF No. 205] at Section II.

In sum, the Court finds that based on the allegations in the Amended Complaint and Tierney's previous experience as a registered investment adviser representative, a second-tier civil

penalty of $236,450 is appropriate and the *Huff* factors do not warrant a reduction in this otherwise appropriate penalty.

Accordingly, it is **ORDERED** that Michael Tierney is assessed **$236,450** in civil penalties.

## <u>CONCLUSION</u>

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff Securities and Exchange Commission's Motion for Final Judgments Against Defendants Alec Vagnozzi, Albert Vagnozzi, and Michael Tierney, [ECF No. 218], is **GRANTED IN PART** as follows:

- Defendant Alec Vagnozzi is found liable to the SEC for **$128,500** in disgorgement, **$15,002.82** in prejudgment interest, and **$11,823** in civil penalties.
- Defendant Albert Vagnozzi is found liable to the SEC for **$920,334.62** in disgorgement, **$95,186** in prejudgment interest, and **$236,450** in civil penalties.
- Defendant Michael Tierney is found liable to the SEC for **$603,315.43** in disgorgement, **$70,439.16** in prejudgment interest, and **$236,450** in civil penalties.

The Court will enter Final Judgments with respect to each of the aforementioned Defendants by separate order.

**DONE AND ORDERED** in Miami, Florida this 19th day of November, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**